UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION, et al.,<br><br>                    Plaintiffs,<br><br>        v.<br><br>HON HAI PRECISION INDUSTRY CO., LTD.,<br><br>                    Defendant. | Case No. 19-CV-01279-LHK<br><br>**ORDER DENYING MOTION TO DISMISS AND/OR STRIKE PURSUANT TO RULE 12(B)(6) AND RULE 12(F)**<br><br>Re: Dkt. No. 26<br><br>**PUBLIC REDACTED VERSION** |

Plaintiff Microsoft Corporation ("Microsoft") filed this action for breach of contract against Defendant Hon Hai Precision Industry Co., Ltd. ("Hon Hai"). Microsoft alleges that Hon Hai breached several provisions of their license agreement. ECF No. 1 ("Compl."). Hon Hai now moves to dismiss or strike Plaintiff's claim for unpaid royalties and Plaintiff's prayer for supervised discovery and attorney fees. ECF No. 26 ("Def. Mot."). Having considered the parties' briefing, the relevant law, and the record in this case, the Court hereby DENIES Defendant's motion to dismiss and its alternative motion to strike.

## I.      BACKGROUND

Though the Court must accept the allegations in the Complaint as true at the motion to

1
Case No. 19-CV-01279-LHK
ORDER DENYING MOTION TO DISMISS AND/OR STRIKE PURSUANT TO RULE 12(B)(6) AND RULE 12(F)

dismiss stage, *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), the parties do not appear to dispute the basic facts of this case. As part of its global software business, Microsoft licenses software for use in a wide array of computing devices produced by other companies. Compl. ¶¶ 2, 4. Hon Hai, also known as Foxconn, is a contract manufacturer of electronics based in Taiwan; as such, Hon Hai manufactures and assembles products for its various brand name customers in the computer, communication, and consumer-electronics industry. *Id.* at ¶ 3, 15. In 2013, the parties entered into a "Confidential Patent License Agreement" ("the Agreement"), in which Microsoft granted Hon Hai a worldwide license to Microsoft's portfolio of patents for certain "Covered Products" in exchange for specified royalties. *Id.* at ¶¶ 5, 16. Specifically, the Agreement requires Hon Hai to pay Microsoft a "Device Fee" "for each unit of a Covered Product [s]old by Hon Hai or any of its Subsidiaries . . . ." ECF No. 19-4 ("Ex. 1 to Compl.") at 10; *see* Compl. ¶¶ 5, 16-17. The Agreement exempts from Hon Hai's royalty obligations certain "Unlicensed Devices" and any device units for which a brand name customer of Hon Hai has already fully paid royalties to Microsoft. Ex. 1 to Compl. at 8, 13; *see* Compl. ¶ 17.

Of relevance here, Section 4.2.2 of the Agreement spells out the following payment process. Twice a year, "within thirty (30) days after the end of each Royalty Period," Hon Hai "shall submit" a "Royalty Report" calculating its royalty obligations for the preceding six-month Royalty Period. Ex. 1 to Compl. at 10; *see* Compl. ¶ 19. The Device Fee varies depending on the device category ("General Purpose Consumer Device," "Smartphone," or "Smart TV") and the transfer price range in which the unit falls. Ex. 1 to Compl. at 4-5. Accordingly, the Royalty Report—a template for which is included in the Agreement, *id.* at 22-23—must include, *inter alia*, the number of units sold in each category of product and each transfer price range, which of those units are exempt, and "the total amount of Royalties owed by Hon Hai for the Royalty Period." Ex. 1 to Compl. at 10; *see* Compl. ¶ 19. The Agreement then states:

> If the Royalties are greater than zero, MICROSOFT shall thereafter invoice Hon Hai for payment of the Royalties, and within sixty (60)

2

Case No. 19-CV-01279-LHK
ORDER DENYING MOTION TO DISMISS AND/OR STRIKE PURSUANT TO RULE 12(B)(6) AND RULE 12(F)

> days after the date indicated on MICROSOFT'S invoice, Hon Hai shall pay MICROSOFT the amount invoiced for the Royalties owed during such Royalty Period.

Ex. 1 to Compl. at 10.

Section 4.2.4 of the Agreement gives Microsoft the right to audit Hon Hai's compliance with its royalty payment obligations. Ex. 1 to Compl. at 11; *see also* Compl. ¶ 21. The Agreement therefore also requires Hon Hai to "keep and maintain . . . complete and accurate books and records of all information necessary to support Hon Hai's compliance with the terms of this Agreement," including the information necessary to complete Royalty Reports (referred to in the Agreement as "Audit Information"), "for a period of at least two (2) years" after each Royalty Period. Ex. 1 to Compl. at 11; *see also* Compl. ¶ 20. Upon Microsoft's request, Hon Hai must facilitate an audit by "independent certified public accounting . . . designated by MICROSOFT and approved by Hon Hai," "subject to the Auditor's and Hon Hai's execution of a non-disclosure agreement." Ex. Ex. 1 to Compl. at 11; *see also* Compl. ¶ 21. In particular, the audit is to take place "at Hon Hai's principal place of business" and Hon Hai must give the Auditor "full access to all Audit Information," including certain raw data. Ex. 1 to Compl. at 11; *see also* Compl. ¶ 21. Should the audit reveal an underpayment, Hon Hai must "pay MICROSOFT the amount of the underpayment, together with interest" at a rate specified in the Agreement; if the underpayment is greater than a certain percentage "of the actual payable Royalties owed for the Royalty Period(s) subject to the audit, then Hon Hai shall reimburse MICROSOFT within [a specified time frame], upon request, for all costs and expenses (including Auditor and attorney fees) reasonably incurred by MICROSOFT to conduct the audit." Ex. 1 to Compl. at 12; *see also* Compl. ¶ 21.

Microsoft alleges that Hon Hai committed the following breaches of the Agreement over the past five years: submitting inaccurate Royalty Reports for the 2014 Royalty Periods; failing to submit Royalty Reports for any of the 2015, 2016, 2017, or 2018 Royalty Periods; and failing to make royalty payments to Microsoft for those same years. Compl. ¶ 24. In response to these lapses, in March 2017, Microsoft invoked its right to conduct an audit for the period 2013 through June 30, 2017. *Id.* at ¶ 25. Although Hon Hai agreed to the appointment of Deloitte & Touche

3

Case No. 19-CV-01279-LHK
ORDER DENYING MOTION TO DISMISS AND/OR STRIKE PURSUANT TO RULE 12(B)(6) AND RULE 12(F)

("Deloitte") as the Auditor and entered into a non-disclosure with the firm, Hon Hai's cooperation with the audit ended there. *Id*. According to Microsoft, Hon Hai has stonewalled Deloitte's document requests and on-site fieldwork request. *Id*. Microsoft purportedly attempted to negotiate with Hon Hai throughout 2017 and early 2018, to no avail. Finally, in March 2018, Microsoft sent Hon Hai written notice that Microsoft intended to escalate the dispute, as required by the Agreement, Ex. 1 to Compl. at 19.

To put an end to the standstill, Microsoft filed this suit against Hon Hai on March 8, 2019, which asserts a single cause of action for breach of contract. ECF No. 1. The prayer for relief includes: (a) specific performance of the provisions requiring Hon Hai to submit complete and accurate Royalty Reports; (b) specific performance of the provision requiring Hon Hai to cooperate with an audit; (c) "Court-supervised discovery of Hon Hai's books and records"; (d) "damages in the form of royalty payments and interest"; and (e) costs, including attorneys' fees. Compl. ¶ Prayer for Relief (a)-(e). The parties have consented to personal jurisdiction in this Court, which has subject matter jurisdiction under 28 U.S.C. § 1331, diversity of citizenship. *See* Ex. 1 to Compl. at 18-19.

Hon Hai now moves to dismiss—pursuant to Federal Rule of Civil Procedure Rule 12(b)(6)—or strike—pursuant to Rule 12(f)—several discrete portions of the Complaint. Def. Mot. at 1. In particular, Hon Hai challenges (1) the "allegations and prayers for relief related to allegedly unpaid royalties," (2) the "prayer for relief asking for Court-supervised discovery of Hon Hai's books and records and an allegation that mirrors the prayer," and (3) the prayer for relief asking for attorney fees. *Id.* at 2.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure

4

12(b)(6). In ruling on a Rule 12(b)(6) motion, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek*, 519 F.3d at 1031. A complaint must, however, contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the pleadings, *see* Fed. R. Civ. P. 12(d). Exhibits attached to a complaint—such as copies of written instruments—are considered part of the pleadings. Fed. R. Civ. P. 10(c). Hence, a court may consider those materials on a motion to dismiss without treating the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

**B. Motion to Strike Under Federal Rule of Civil Procedure 12(f)**

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). A matter is immaterial if it "has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993), *rev'd on other grounds*, 510 U.S. 517 (1994). Similarly, "'[i]mpertinent' matter consists of statements that do not pertain, and are not necessary, to the issues in question." *Id.* A matter is redundant if it needlessly duplicates other material in the complaint. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010).

At the same time, Federal Rule of Civil Procedure 8 expressly recognizes that a party's demand for relief "may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(b)(3). The Ninth Circuit has also made clear that "Rule 12(f) is not a proper way to procure dismissal of all or part of a complaint," *Brands v. First Transit, Inc.*, 278 F. App'x 722, 724 (9th Cir. 2008) (unpublished); that is the function of a Rule 12(b)(6) motion. *See Whittlestone*, 618 F.3d at 974. Moreover, motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. February 14, 2001). The court therefore will not grant a motion to strike unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. April 19, 2004). A court may also "refuse to grant Rule 12(f) motions unless prejudice would result to the moving party from denial of the motion." *Id.*

"As with motions to dismiss, when ruling on a motion to strike, the Court takes the plaintiff's allegations as true and must liberally construe the complaint in the light most favorable to the plaintiff." *Stearns v. Select Comfort Retail Corp.,* 763 F.Supp.2d 1128, 1140 (N.D. Cal. July 21, 2010). Whether to grant a motion to strike is within the sound discretion of the district court. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 963 (9th Cir. 2018).

### III. DISCUSSION

The Court separately addresses each of the challenged portions of the Complaint: the allegations and claim for unpaid royalties, the prayer for attorney fees, and the prayer for supervised discovery.

Before reaching the merits, however, the Court clarifies which jurisdiction's substantive law applies to Plaintiff's cause of action for breach of contract, which is a state law claim. When a federal court sits in diversity to hear a state law claim, "[t]he conflicts laws of the forum state— here California—are used to determine which state's substantive law applies." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1141 (9th Cir. 2010). The California Supreme Court has held that "a

Case No. 19-CV-01279-LHK
ORDER DENYING MOTION TO DISMISS AND/OR STRIKE PURSUANT TO RULE 12(B)(6) AND RULE 12(F)

valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470 (1992). In this case, the Agreement contains the following choice of law provision:

> The validity, construction, and performance of this Agreement shall be governed by and construed first in accordance with the federal laws of the United States to the extent federal subject matter jurisdiction exists, and second in accordance with the laws of the State of California, exclusive of its choice of law rules.

Ex. 1 to Compl. at 18. The parties have stipulated that, pursuant to this provision, California substantive law governs any issues concerning the "validity, construction, and performance" of the Agreement that may arise in this action. ECF No. 40.

### A. Claim for Unpaid Royalties

The Complaint alleges, *inter alia*, that Hon Hai "breached Section 4.2.2 of the Agreement by failing (a) to submit complete and accurate Royalty Reports when due and, (b) to submit any Royalty Reports at all for multiple Royalty Periods, leading to Hon Hai's failure to pay royalties under the Agreement." Compl. ¶ 32. Hon Hai takes issue with the reference to "Hon Hai's failure to pay royalties under the Agreement," which is also made in two other places in the Complaint. *See* Def. Mot. at 6-7 (quoting Compl. ¶ 24 (". . . leading to Hon Hai's complete failure to make royalty payments to Microsoft when due."); Compl. ¶ 28 (". . . and may result only in additional delay in Hon Hai's payment of overdue royalties.")). In the instant motion, Hon Hai moves to dismiss or strike all three clauses and Microsoft's prayer for "damages in the form of royalty payments and interest as required by the Agreement." Def. Mot. at 4 (quoting Compl. ¶¶ 32, Prayer for Relief (d)). Hon Hai contends the claim for royalties—and thus the associated allegations—are "unripe" because the Agreement "provides that Hon Hai's payment of royalties is not due until 60 days after Microsoft issues an invoice for such royalties." *Id.* at 5 (quoting Ex. 1 to Compl. at 10). Because Microsoft has not alleged that it issued any invoices, Hon Hai argues

1  that "royalties therefore are not 'due.'" *Id.*

2  At the outset, Hon Hai concedes that a motion to dismiss under Rule 12(b)(6) and not a motion to strike under Rule 12(f) is the proper vehicle for its challenge. Def. Mot. at 4-5 n.3 (citing *Whittlestone*, 618 F.3d at 975-76); *see also Yamamoto v. Omiya*, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint") (internal quotation marks omitted). The Court agrees. Accordingly, Hon Hai's motion to strike is denied, and the Court proceeds to consider Hon Hai's motion to dismiss.

Under California law, in order to state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract; (2) that it has performed or that its nonperformance is excused; (3) defendant's breach of the contract; and (4) damages resulting from the breach. *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 66 Cal. App. 4th 1532, 1545 (Cal. Ct. App. 1998). Additionally, and relevantly, "the performance of conditions precedent must be alleged either generally or specifically." *Gordon Bldg. Corp. v. Gibraltar Sav. & Loan Ass'n*, 247 Cal. App. 2d 1, 6 (1966). Here, Hon Hai argues Microsoft "fail[ed] to plead the occurrence of a condition precedent to the alleged obligation to pay royalties," *viz.*, the issuance of invoices. Microsoft counters that the issuance of invoices is not a condition precedent to Hon Hai's obligation to pay royalties and, even if it were, its nonperformance would be excused by Hon Hai's failure to submit Royalty Reports upon which the invoices are based. As set out below, the Court agrees on both counts.

Unless extrinsic evidence is involved, "the interpretation and construction of a written contract present only questions of law, within the province of the court," *Levi Strauss & Co. v. Esprit US Distribution Ltd.*, 588 F. Supp. 2d 1076, 1080 (N.D. Cal. 2008), and is therefore properly reached on a 12(b)(6) motion to dismiss. *See also WYDA Assocs. v. Merner*, 50 Cal. Rptr. 2d 323, 327 (Cal. Ct. App. 1996). Turning to the provision at issue, it is true that Section 4.2.2 of the Agreement requires Microsoft to "invoice Hon Hai for payment of the Royalties." Under California law, however, conditions precedent "are not favored," *JMR Constr. Corp. v. Envtl. Assessment & Remediation Mgmt., Inc.*, 198 Cal. Rptr. 3d 47, 66 (Cal. Ct. App. 2015), and

8

courts will not interpret a contractual provision as a condition precedent unless "such a construction is made necessary by the express terms of the contract." *Baker Aircraft Sales, Inc. v. Cassel*, 200 Cal. App. 2d 563, 568 (1962). Courts are especially inclined to deem contractual terms as covenants rather than conditions precedent "when the latter would result in . . . inequitable consequences in favor of the defendant." *Weinstein v. Moers*, 207 Cal. 534, 541 (1929).

Nothing in the Agreement at hand suggests that Microsoft's responsibility to invoice Hon Hai constitutes a condition precedent. To begin with, as Microsoft points out, Section 4.2.1 lays out the essential bargain reached by the parties:

> <u>Royalties.</u> As consideration for the License, Covenants and other rights granted under this Agreement, for each unit of a Covered Product Sold by Hon Hai or any of its Subsidiaries during the applicable Royalty Period, Hon Hai will pay MICROSOFT the applicable Device Fee for each Covered Product unit ("Royalties").

Ex. 1 to Compl. at 10. This provision makes clear that Hon Hai's obligation to pay arose when it availed itself of the patent rights granted to it by Microsoft; nothing else need occur to trigger the obligation. Section 4.2.2, which contains the invoicing provision, does not purport to alter or limit this essential bargain; it simply describes the process by which royalties are to be determined and paid. To be sure, the Agreement speaks in mandatory terms: "MICROSOFT shall thereafter invoice Hon Hai . . . ." But the parties did not use conditional language such as "if" or "provided that," or otherwise indicate that Hon Hai's obligation to pay exists only once Microsoft furnishes an invoice. *See, e.g.*, *Nomadix, Inc. v. Guest-Tek Interactive Entm't LTD*, No. CV1608033ABFFMX, 2017 WL 7240765, at *5 (C.D. Cal. Oct. 17, 2017). The Court therefore declines Hon Hai's invitation to construe the invoicing provision as a condition precedent.

This conclusion is bolstered by the inequitable consequences that would result if the Court were to do so. The Agreement outlines a three-step process: (1) Hon Hai reports to Microsoft the amount of royalties due, based on its sale data; (2) Microsoft "thereafter" invoices Hon Hai for the amount owed; (3) Hon Hai pays Microsoft the amount invoiced. That is because Hon Hai, and not

Microsoft, possesses the information necessary to determine the amount of its royalty obligation. As Microsoft correctly asserts, "[i]t is hornbook law that where one contracting party prevents the other's performance of a condition precedent, the party burdened by the condition is excused from performing it, and the benefitted party's duty of performance becomes unconditional." *City of Hollister v. Monterey Ins. Co.*, 81 Cal. Rptr. 3d 72, 100 (Cal. Ct. App. 2008). Microsoft brings this suit precisely because Hon Hai's failure to complete Royalty Reports prevented Microsoft from invoicing Hon Hai for the royalties Microsoft was owed. During their months of extended negotiations, Microsoft also "asked Hon Hai to provide Microsoft directly with information that will allow Microsoft to determine the amount of royalties owed . . . ." Compl. ¶ 27. Having thwarted Microsoft's ability to carry out its invoicing responsibilities, Hon Hai cannot now complain that Hon Hai never received an invoice.

Hon Hai responds that it has "not prevented or made impossible Microsoft's performance of the condition precedent" because the "PLA provides a remedy for unpaid royalties in the form of an audit, and Microsoft should be required to pursue that remedy." ECF No. 29 ("Def. Reply") at 3, 5. This argument is galling. As the Complaint lays out in detail, Microsoft has doggedly endeavored to exercise its right to audit Hon Hai, and Hon Hai has refused to comply. Under these circumstances, it is not "premature," *id.*, for Microsoft to seek damages in the form of unpaid royalties. Moreover, although it is true that "a party may not obtain both specific performance and damages for the same breach of contract," *id.* at 2 (quoting *Mycogen Corporation v. Monsanto*, 28 Cal. 4th 888, 905 (2002)), Rule 8 specifically permits a plaintiff to plead "relief in the alternative or different types of relief." Fed. R. Civ. P. 8(b)(3); *see, e.g.*, *JPMorgan Chase Bank, N.A. v. Paramount Residential Mortg. Grp., Inc.*, No. EDCV1300471JGBSPX, 2013 WL 12133894, at *5 (C.D. Cal. May 30, 2013).

In sum, Microsoft has pleaded a plausible claim that it is entitled to unpaid royalties as damages stemming from Defendant's alleged breach of the Agreement. Defendant's motion to dismiss is therefore DENIED.

## B. Prayer for Attorney Fees

Second, Hon Hai asks the Court to dismiss or strike Microsoft's prayer for attorney fees on the ground that "[t]he PLA does not provide for attorney's fees awards." As with its challenge to Microsoft's claim for unpaid royalties, the Court denies Hon Hai's motion to strike pursuant to Rule 12(f) as foreclosed by the Ninth Circuit's decision in *Whittlestone*. *See* 618 F.3d at 975 (denying the defendant's motion to strike the plaintiff's request for "lost profits and consequential damages" because it was "really an attempt to have certain portions of [the plaintiff's] complaint dismissed," which is "better suited for a Rule 12(b)(6) motion."); *see also Harvey v. Bank of Am., N.A.*, 906 F. Supp. 2d 982, 996 (N.D. Cal. 2012) (applying *Whittlestone* to reject defendant's Rule 12(f) motion to strike "the portions of Plaintiff's amended complaint that mention punitive damages or attorney fees").

Turning to the motion to dismiss analysis, the Court concludes Microsoft has plausibly alleged its entitlement to attorney fees. "California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees." *Trope v. Katz*, 11 Cal. 4th 274, 278 (1995) (citations omitted). Specifically, attorney fees are recoverable only if they are authorized by contract, statute, or law. *Santisas v. Goodin*, 17 Cal. 4th 599, 606 (1998); *see* Cal. Civ. Proc. Code §§ 1021, 1033.5. In this case, Microsoft claims Section 4.2.5 of the Agreement provides the requisite contractual authorization for attorney fees. It states in pertinent part:

> [I]f any audit reveals an underpayment of more than ▮▮▮. then Hon Hai shall reimburse MICROSOFT within ▮▮▮, upon request, for all costs and expenses (*including Auditor and attorney fees*) reasonably incurred by MICROSOFT to conduct the audit.

Ex. 1 to Compl. at 12 (emphasis added). It is "reasonable," says Microsoft, to construe "the attorneys' fees 'reasonably incurred to conduct the audit'" as encompassing "the attorneys' fees Microsoft will incur to litigate this case." ECF No. 28. ("Pl. Opp.") at 12. Meanwhile, Hon Hai maintains that the provision does not extend to litigation costs. Def. Reply at 7. Hon Hai offers several cases in support of its view, none of which are directly on point. In *Tire Hanger*

11

Case No. 19-CV-01279-LHK
ORDER DENYING MOTION TO DISMISS AND/OR STRIKE PURSUANT TO RULE 12(B)(6) AND RULE 12(F)

*Corporation v. Rotary Lift*, for instance, the court held "any fees incurred by Plaintiff's counsel in enforcing Plaintiff's right to an audit are reasonably considered attorneys' fees, not audit costs." No. EDCV152347JGBSPX, 2019 WL 1091334, at *8 (C.D. Cal. Jan. 14, 2019) (interpreting clause stating "the cost of such audit shall be borne by THC"). But the contract at hand differs from the one at issue in *Tire Hanger* in a critical respect: Section 4.2.5 refers specifically to "attorney fees." In other words, the provision expressly covers attorney fees; the question then becomes whether fees incurred during a suit to compel an audit are "reasonably incurred."

Construing the pleadings—of which the Agreement is a part—in the light most favorable to Microsoft, the Court cannot agree that "Microsoft's claim for attorneys' fees is baseless as a matter of law." *See Whittlestone, Inc. v. Handi-Craft Co.,* No. C 08-04193 SBA, 2012 WL 3939629, at *7 (N.D. Cal. Sept. 10, 2012) ("Viewing the contract language in the light most favorable to Whittlestone and drawing all justifiable inferences in its favor, Whittlestone's claim for lost profits and consequential damages is not per se barred by the contract as Handi–Craft argues."). The Court finds that the phrase "reasonably incurred to conduct the audit" is ambiguous on its face, and that this ambiguity raises a question of fact as to the parties' intent. *See Tanadgusix Corp. v. Huber*, 404 F.3d 1201, 1205 (9th Cir. 2005) ("A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation."). "The parties may well argue at a later stage of litigation that the intent of the parties or properly admitted extrinsic evidence supports their respective interpretations of the contract." *Whittlestone*, 618 F.3d at 975 n.2. "Such factually based arguments are appropriate . . . at a later stage of litigation, not on the pleadings." *Id.* The parties will also, of course, be able to litigate whether the condition that the "audit reveal[ed] an underpayment of more than ▮▮▮▮▮▮" is satisfied. For now, it is enough that Microsoft has proffered a plausible interpretation of Section 4.2.5 that would permit recovery of attorney fees. Accordingly, Hon Hai's motion to dismiss the prayer for attorney fees is DENIED.

### C. Prayer for Supervised Discovery

Finally, Hon Hai asks the Court to dismiss or strike Microsoft's prayer for "Court-supervised discovery of Hon Hai's books and records, including document and written discovery and witness examinations under oath." Hon Hai takes issue with this aspect of the prayer for relief because it is "partly redundant and duplicative of Microsoft's separate requests for specific performance." Def. Mot. at 6. The Court therefore construes Hon Hai's motion as one to strike under Rule 12(f) as "redundant," rather than as a motion to dismiss. Yet, Hon Hai concedes that the prayer is only "partly, not wholly redundant" because the audit provisions for which Microsoft seeks specific performance "do not allow the full range of discovery mechanisms authorized by the Federal Rules of Civil Procedure." Reply at 6. Consequently, the Court cannot say the material is "redundant" within the meaning of Rule 12(f). *See Whittlestone,* 618 F.3d at 974 ("[T]he claim for damages could not be redundant, as it does not appear anywhere else in the complaint."). Hon Hai asserts no other ground for striking the prayer.

Nor will Hon Hai be prejudiced by this request in the Complaint. Indeed, as Hon Hai acknowledges, discovery is a "procedure pursued during litigation" rather than an independent claim. Def. Reply at 6. For that reason, requests for discovery need not be pleaded in a complaint and are not decided at the motion to dismiss stage. "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters, and it is not clear how any of these purposes are served by striking from the complaint claims that plaintiffs are not even required to plead." *Pension Tr. Fund for Operating Engineers Local 3 v. McMorgan & Co.*, No. CIVS06904 WBS JFM, 2006 WL 2788340, at *4 (E.D. Cal. Sept. 26, 2006). Microsoft will be entitled to court-supervised discovery by virtue of this suit, and the parties will have the opportunity to litigate the scope of that discovery in due course.

Defendant's motion to dismiss or strike plaintiff's prayer for court-supervised discovery is therefore DENIED.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss and/or Strike is DENIED.

13
Case No. 19-CV-01279-LHK
ORDER DENYING MOTION TO DISMISS AND/OR STRIKE PURSUANT TO RULE 12(B)(6) AND RULE 12(F)

**IT IS SO ORDERED.**

Dated: August 16, 2019

　　　　　　　　　　　　　　　　　*Lucy H. Koh*
　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　LUCY H. KOH
　　　　　　　　　　　　　　　　　United States District Judge

Case No. 19-CV-01279-LHK
ORDER DENYING MOTION TO DISMISS AND/OR STRIKE PURSUANT TO RULE 12(B)(6) AND RULE 12(F)