S. Michael Song (State Bar No. 198656)
michael.song@dechert.com
Ryan T. Banks (State Bar No. 318171)
ryan.banks@dechert.com
DECHERT LLP
3000 El Camino Real
Five Palo Alto Square, Suite 650
Palo Alto, CA 94306
Telephone:   +1 650 813 4930
Facsimile:   +1 650 813 4848

Martin J. Black (*pro hac vice*)
martin.black@dechert.com
DECHERT LLP
Cira Centre, 2929 Arch Street
Philadelphia, PA 19104
Telephone:   + 1 215 994 4000
Facsimile:   + 1 215 994 2222

Paul Curran Kingsbery (*pro hac vice*)
paul.kingsbery@dechert.com
DECHERT LLP
1095 Avenue of the Americas
New York, NY 10036
Telephone:   + 1 212 698 3500
Facsimile:   + 1 212 698 3599

*Attorneys for Plaintiffs Microsoft Corporation and Microsoft Licensing GP*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION and MICROSOFT LICENSING, GP,<br><br>Plaintiffs,<br><br>v.<br><br>HON HAI PRECISION INDUSTRY CO., LTD., trading as FOXCONN TECHNOLOGY GROUP,<br><br>Defendant. | Case No. 5:19-cv-01279-LHK-NMC<br><br>**MICROSOFT'S REPLY BRIEF IN SUPPORT OF MOTION FOR SANCTIONS AND TO COMPEL INTERROGATORY RESPONSES**<br><br>Hearing Date:   January 8, 2020<br>Hearing Time:   1:00 p.m.<br>Courtroom:   5, 4th Floor<br>Judge:   Hon. Nathanael Cousins<br><br>JURY TRIAL DEMANDED |

DECHERT LLP

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ii

INTRODUCTION ...........................................................................................................................1

SUPPLEMENTAL STATEMENT OF RELEVANT FACTS .........................................................1

STATEMENT OF ISSUES .............................................................................................................1

ARGUMENT ...................................................................................................................................2

I.    HON HAI HAS FAILED TO COMPLY WITH THE COURT'S NOVEMBER 8, 2019 DISCOVERY ORDER. ..................................................................................................2

     A.    Discovery Order Paragraph 1(a): Number of Units Sold by Hon Hai for Each Royalty Period............................................................................................2

     B.    Discovery Order Paragraph 1(b): Name, Brand Name, Model Name and Number, Invoice Price, and Country of Sale for Each Unit Sold .........................3

     C.    Discovery Order Paragraph 2(a): Documents Sufficient to Determine Transfer Price..........................................................................................................3

     D.    Discovery Order Paragraph 2(b): Number of Unlicensed Devices, China Destined Devices, and Devices Sold to Designated Entities .................................3

     E.    Discovery Order Paragraph 3(a): Contracts Between Hon Hai and Its Customers for Covered Products..............................................................................................4

     F.    Discovery Order Paragraph 3(b): Average Unit Price for Hon Hai Branded Products....................................................................................................4

     G.    Discovery Order Paragraph 3(d): Documents Responsive to Microsoft's Requests for Production Nos. 10, 12, 15-17, 25–30 ...............................................4

     H.    Discovery Order Paragraph 3(e): Management Reports Sufficient to Establish the Total Sales of Smartphones, Smart TVs, and General Purpose Consumer Devices.....................................................................................................................4

II.   HON HAI HAS WAIVED ANY OBJECTION TO PRODUCING THE REQUESTED DOCUMENTS BASED ON FOREIGN LAW. ............................................................5

III.  HON HAI HAS FAILED TO SATISFY ITS BURDEN TO SHOW THAT PRODUCTION OF THE REQUESTED DOCUMETNS WOULD VIOLATE CHINESE LAW. 7

     A.    Hon Hai Has Failed to Make a *Prima Facie* Showing that Foreign Law Bars the Production of the Requested Documents. ..............................................................9

     B.    Hon Hai Has Not Proffered an Analysis of the *Societe Nationale/Richmark Corp.* Factors, Which Weigh Heavily Against Limiting Discovery Here. ...........12

IV.  HON HAI SHOULD BE COMPELLED TO PROVIDE FULL AND COMPLETE RESPONSES TO MICROSOFT'S INTERROGATORIES...........................................14

CONCLUSION ..............................................................................................................................15

# TABLE OF AUTHORITIES

Page

**CASES**

*BrightEdge Techs., Inc. v. Searchmetrics GmbH*,
   No. 14-cv-01009-HSG (MEJ), 2017 WL 5171227 (N.D. Cal. Nov. 8, 2017) ......................... 8

*Finjan, Inc. v. Zscaler, Inc.*,
   No. 17-cv-6946-JST (KAW), 2019 WL 618554 (N.D. Cal. Feb. 14, 2019) .......................... 8

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944-SC, 2014 WL 5462496 (N.D. Cal. Oct. 23, 2014) ........................................ 8

*LegalForce RAPC Worldwide PC v. Demassa*,
   No. 18-cv-00043-MMC (TSH), 2019 WL 5395038 (N.D. Cal. Oct. 22, 2019) .................... 7

*Optrics, Inc. v. Barracuda Networks, Inc.*,
   No. 17-cv-04977-RS (TSH), 2019 WL 5485890 (N.D. Cal. Oct. 25, 2019) ......................... 8

*Philips v. Ford Motor Co.*,
   No. 14-cv-02989 LHK (NC), 2016 WL 8505624 (N.D. Cal. June 10, 2016) ................. 9, 13

*Richmark Corp. v. Timber Falling Consultants*,
   959 F.2d 1468 (9th Cir. 1992) .................................................................................. 6, 8, 9, 12

*Shaw v. Gera*,
   No. 5:18-cv-06765-EJD, 2019 WL 4933636 (N.D. Cal. Oct. 7, 2019) ................................. 9

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S.D. Iowa*,
   482 U.S. 522 (1987) ................................................................................................... 8, 9, 12

*Sun v. Ikea US West, Inc.*,
   No. 15-cv-01146-MEJ, 2015 WL 6734480 (N.D. Cal. Nov. 4, 2015) .................................. 5

*United States v. Real Property and Imprvs. Located at 2366 San Pablo Ave., Berkeley, Cal.*, No. 13-cv-02027-JST, 2014 WL 325151, at *2 (N.D. Cal. Jan. 29, 2014) ..................... 6

*United States v. Vetco, Inc.*,
   691 F.2d 1281 (9th Cir. 1981) ............................................................................................. 8

**STATUTES AND RULES**

18 U.S.C. § 1836 ........................................................................................................................ 14

Fed. R. Civ. P. 11 ......................................................................................................................... 7

Fed. R. Civ. P. 12 ......................................................................................................................... 8

Fed. R. Civ. P. 26 .............................................................................................................................7, 8

Fed. R. Civ. P. 33 .........................................................................................................................2, 5, 15

Fed. R. Civ. P. 34 ................................................................................................................................5

Fed. R. Civ. P. 37 ..........................................................................................................................2, 15

Fed. R. Civ. P. 44.1 .............................................................................................................................1

Fed. R. Civ. P. 45 ..............................................................................................................................13

Fed. R. Civ. P. 72 ................................................................................................................................7

N.D. Cal. Civ. Local Rule 6-3 ............................................................................................................9

**OTHER AUTHORITIES**

R.W. Wigley and X. Jing, "Evidence Collection and Alternative to 'Discovery' in
    P.R.C. Litigation," *China Law Insight* (Apr. 15, 2011) ...........................................................10

DECHERT LLP

## INTRODUCTION

Hon Hai's responsive brief confirms that Hon Hai is in clear breach of the Court's November 8, 2019 Discovery Order (the "Discovery Order") and that sanctions are warranted. Hon Hai's foreign law argument was waived long ago and for good reason—it is frivolous. The deadline for completion of fact discovery is fast approaching, and the Court should put a stop to Hon Hai's transparent effort to "run out the clock." Hon Hai has failed to provide competent evidence of foreign law under Fed. R. Civ. P. 44.1, and Hon Hai cites no precedent supporting the astonishing claim that Chinese trade secret law trumps U.S. discovery rules. Given the shocking disclosures in Hon Hai's responsive brief regarding its failure to produce documents required by the Discovery Order, sanctions are warranted against Hon Hai and its new counsel. Microsoft seeks no sanction against the Rimon Firm, which sought to withdraw rather than be complicit in Hon Hai's obfuscatory tactics.

## SUPPLEMENTAL STATEMENT OF RELEVANT FACTS

Following the filing of Microsoft's motion for sanctions and to compel interrogatory responses, Hon Hai made a limited document production through Kilpatrick Townsend & Stockton LLP on December 21, 2019.[1] That production included some duplicative documents previously produced, agreements with certain customers, and sales data for two customers. (Supp. Decl. of S. Michael Song ("Song Supp. Decl.") Ex. 15.) Microsoft is not aware of any other attempts by Hon Hai to comply with the Discovery Order. Hon Hai has not produced any other documents, served second amended responses and objections to Microsoft's Requests for Production, or served amended interrogatory responses.

## STATEMENT OF ISSUES

1.   Whether Hon Hai breached Paragraphs 1, 2 and 3 of the Discovery Order by failing to produce documents required by the Discovery Order?

---

[1] For purposes of this motion, Microsoft assumes that Hon Hai's references to a production made on "December 20, 2019" are intended to reference the December 21 production. Microsoft received no production from Hon Hai or its counsel on December 20. (*See* Song Supp. Decl. ¶ 3 Ex. 14.) To the extent Hon Hai's opposition papers suggest that Microsoft had received this production before filing its motion for sanctions on December 20, that is incorrect.

2.      Whether Microsoft should be awarded reasonable expenses, including attorneys' fees, under Fed. R. Civ. P. 37(b)(2)(C), given Hon Hai's failure to offer a "substantial justification" or "other circumstances that make an award of expenses unjust"?

3.      Whether the Court should strike Hon Hai's objection to Interrogatory Nos. 1, 2 and 5 and require Hon Hai to provide narrative answers, which do not rely on Fed. R. Civ. P. 33(d), and to certify the response by the General Manager, Chief Financial Officer, or other appropriate officer of Hon Hai with sufficient authority to provide a complete and accurate response?

4.      Whether the Court should award reasonable expenses, including attorneys' fees, under Fed. R. Civ. P. 37(a)(5)(A) for Hon Hai's failure to provide substantive responses to Interrogatory Nos. 1, 2 and 5?

## ARGUMENT

### I. HON HAI HAS FAILED TO COMPLY WITH THE COURT'S NOVEMBER 8, 2019 DISCOVERY ORDER.

Hon Hai has failed to produce numerous documents required by the Discovery Order. The Discovery Order set out the documents to be produced on November 22, December 13, and December 20 in subparagraphs 1(a)–(b), 2(a)–(b), and 3(a)–(e). Hon Hai has failed to produce sufficient documents to satisfy its obligations under any of these subparagraphs—a fact that Hon Hai itself does not dispute.

#### A. Discovery Order Paragraph 1(a): Number of Units Sold by Hon Hai for Each Royalty Period

To date, Hon Hai has produced limited sales information for approximately 15 of its customers, a small portion of the 196 company names in the list of customers Hon Hai produced.[2] (Song Decl. Ex. 13; Song Supp. Decl. ¶ 5.) Based on this list, Microsoft estimates Hon Hai's customers to include approximately 110 unique company names. (Song Supp. Decl. ¶ 5.) Hon Hai has therefore failed to produce any sales information for the vast majority of its customers.

---

[2] On December 18, 2019, Microsoft requested that Hon Hai clarify what its December 13, 2019 production consisted of, but Hon Hai never responded to that request. (Song Decl. Ex. 13.) Indeed, even in its opposition to the Motion for Sanctions, Hon Hai has not confirmed whether this is a complete and accurate list.

Notably, Hon Hai has not even produced complete sales figures for numerous customers included in its 2013 and 2014 royalty reports, many of which are customers for which Hon Hai has failed to make any confidentiality claim. (Song Supp. Decl. ¶ 6, Ex. 16.)

**B.    Discovery Order Paragraph 1(b): Name, Brand Name, Model Name and Number, Invoice Price, and Country of Sale for Each Unit Sold**

The limited sales information Hon Hai has produced is inconsistent. For these approximately 15 customers, many of Hon Hai's documents lack brand name, model name or number, and/or country of sale. (Song Decl. Ex. 10.) Hon Hai has made no effort to explain these inconsistencies or offer to rectify the deficiencies in any way. (Song Supp. Decl. ¶ 7.) For the balance of Hon Hai's customers, it has produced no responsive documents at all. *Id.*

**C.    Discovery Order Paragraph 2(a): Documents Sufficient to Determine Transfer Price**

Hon Hai has failed to produce any documents that provide the means to determine the transfer price for any products sold. (Song Decl. Ex. 13.) Under the License Agreement, this information is critical for determining Hon Hai's royalty obligation because the applicable "Device Fee" for each Covered Product depends on the transfer price information. (*See* Compl. Ex. 1 at 3–4, ECF No. 49.)

**D.    Discovery Order Paragraph 2(b): Number of Unlicensed Devices, China Destined Devices, and Devices Sold to Designated Entities**

Hon Hai has produced limited sales information related to Unlicensed Devices and has provided some insight into which units were sold to China. (Song Supp. Decl. ¶ 8.) However, Hon Hai has failed to produce any documents concerning devices sold to Designated Entities, and its limited information concerning units sold in China are insufficient to determine which, if any, units fall into "China Destined Devices" as defined in the License Agreement. (*Id.*) To the extent Hon Hai intends to mitigate its royalty obligations by arguing that particular units fell within an exception in the License Agreement, it must provide sufficient data to substantiate that exception. Microsoft should not be left to take Hon Hai at its word when discoverable information in Hon Hai's possession, custody, and control would shed light on this the merits of Hon Hai's claim.

**E.     Discovery Order Paragraph 3(a): Contracts Between Hon Hai and Its Customers for Covered Products**

To date, Hon Hai has produced its contracts for approximately 12 of its 110 customers. (Song Supp. Decl. ¶ 9, Ex. 15.)  Hon Hai has offered no explanation for its refusal to produce additional contracts.  *Id.*

**F.     Discovery Order Paragraph 3(b): Average Unit Price for Hon Hai Branded Products.**

Hon Hai failed to produce any documents related to the average unit price for Hon Hai Branded Products.  (Song Supp. Decl. Ex. 15.)  Indeed, Hon Hai's opposition brief does not even address its obligation to produce this information under Paragraph 3 of the Discovery Order.

**G.     Discovery Order Paragraph 3(d): Documents Responsive to Microsoft's Requests for Production Nos. 10, 12, 15-17, 25–30**

To date, Microsoft is unaware of any documents produced by Hon Hai responsive to any of Microsoft's Requests for Production Nos. 10, 12, 15–17, and/or 25–30 other than the limited productions described above.  (Song Supp. Decl. Ex. 15.)  The majority of these requests require at least minimal compliance with the other provisions of the Discovery Order, which Hon Hai has failed to do.  For example, Hon Hai failed to produce—for any of its customers—information related to the total number of Smartphones sold for each transfer price range (Request No. 15) and failed to produce information related to total royalties owed for Smartphone devices (Request No. 28).  (Song Supp. Decl. ¶ 10.)

**H.     Discovery Order Paragraph 3(e): Management Reports Sufficient to Establish the Total Sales of Smartphones, Smart TVs, and General Purpose Consumer Devices**

Hon Hai failed to produce any management reports.  (Song Supp. Decl. Ex. 15.)  It is inconceivable that Hon Hai lacks basic periodic reports to management as to the number of units sold and pricing for those units.  This information could provide a shortcut through much of the thicket here, but Hon Hai has decided to deprive Microsoft of these summary documents.  Again, Hon Hai's opposition brief does not even reference the Discovery Order's command that it provide this information.

## II. HON HAI HAS WAIVED ANY OBJECTION TO PRODUCING THE REQUESTED DOCUMENTS BASED ON FOREIGN LAW.

While Hon Hai has refused to offer any justification at all for its failure to produce several categories of responsive, non-privileged documents required by the Discovery Order, the sole justification it has offered—restrictions purportedly imposed by Chinese trade secret law—was never expressly raised before the meet-and-confer between the parties on December 9, 2019, a month after the Court entered the Discovery Order. Hon Hai initially raised general objections to the production of documents to the extent restricted by foreign law in its July 2019 response to Microsoft's First Set of Requests for Production of Documents. (*See* Song Decl. Ex. 2 at 8.). After Microsoft explained that those objections were invalid, Hon Hai withdrew them in October 2019 by filing its Amended Responses and Objections to Microsoft's First Set of Requests for Production of Documents ("Amended R&Os"). By abandoning its foreign law objection in its Amended R&Os and failing to raise that objection in response to Microsoft's motion to compel, Hon Hai knowingly and intentionally waived that objection. The Court should disregard Hon Hai's foreign law objection and grant the relief requested in Microsoft's motion for sanctions.

Rule 34 of the Federal Rules of Civil Procedure requires a party objecting to requests for production of documents to "state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). The failure to provide a specific and timely objection to a request for production normally results in the waiver of that objection because, "[a]lthough Rule 34 does not contain an express provision that untimely objections are waived, the courts have interpreted the rule regarding waiver consistent with Rule 33." *Sun v. Ikea US West, Inc.*, No. 15-cv-01146-MEJ, 2015 WL 6734480, at *2 (N.D. Cal. Nov. 4, 2015) (quotation omitted). Accordingly, courts may excuse a waiver if the objecting party can show "good cause" for an excuse, which may be established where any delay in raising an objection was brief or did not prejudice the requesting party. *Id.* at *2–3 (excusing waiver of objections served five days late based on findings that objecting party made a "good faith" effort to raise the objection at the earliest possible time and that there was no prejudice to the requesting party); *see* Fed. R. Civ. P. 33(b)(4). However, a party's failure to raise a known objection in response to a request for

production of documents or in response to a motion to compel constitutes a waiver of the objection. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (noting that objection based on foreign law was waived because the objecting party failed to raise it "as an objection to [the requesting party's] discovery request, or at the very least in response to the motion to compel"); *see also United States v. Real Property and Imprvs. Located at 2366 San Pablo Ave., Berkeley, Cal.*, No. 13-cv-02027-JST, 2014 WL 325151, at *2 (N.D. Cal. Jan. 29, 2014) ("District courts need not, and ordinarily should not address arguments raised for the first time in an objection to a magistrate judge's order.") (citing *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638–39 (9th Cir. 1988)).

A full and fair view of the relevant discovery correspondence and the history of these proceedings shows that Hon Hai waived any Chinese law objection.

Microsoft served its First Set of Requests for Production of Documents on June 17, 2019. (Song Decl. ¶ 3, Ex. 1.) Hon Hai served its Responses and Objections to the First Set of Requests for Production on July 17, 2019. (*Id.* ¶ 4, Ex. 2.) Its original Responses and Objections raised a number of objections to the Requests, including objections based on the "applicable law of a foreign jurisdiction." (*See, e.g.*, *id.* Ex. 2 at 8.) Specifically, Hon Hai stated that the Requests "may call for the production of business information that is subject to disclosure restrictions imposed by applicable laws, rules, regulations, or other legally binding authorities of a foreign jurisdiction, such as Taiwan or Hong Kong." (*Id.*). After a series of discussions with Microsoft's counsel about its foreign law objections and others, Hon Hai served its Amended R&Os on October 18, 2019. (*Id.* ¶¶ 5, 9–10, Ex. 8.) The amended responses removed any reference to an objection based on "the applicable law of a foreign jurisdiction." (*Compare, e.g.*, *id.* Ex. 2 at 8, *with id.* Ex. 8 at 8.) While Hon Hai's counsel wrote in a letter dated October 16, 2019, that "discovery may be denied in some instances where it would violate foreign law," no foreign law objection was included in its Amended R&Os.

Hon Hai also failed to raise its foreign law objection in response to Microsoft's motion to compel. This is obvious from a cursory review of the parties' joint discovery letter filed on November 1, 2019 (ECF No. 73), the recordings of the hearing before this Court on November 6,

2019 (ECF Nos. 77–79), and Hon Hai's post-hearing letter (ECF No. 82).  Hon Hai also declined to raise its foreign law objection in its motion for relief from this Court's Discovery Order pursuant to Fed. R. Civ. P. 72.  (ECF No. 89.)  Given that Hon Hai admits it was aware of its potential foreign law objection in October 2019 (*i.e.*, before the filing of Microsoft's motion to compel and the Court's November 6, 2019 hearing on that motion), Hon Hai has offered no excuse for its failure to raise that objection while the parties were actively litigating Microsoft's motion to compel in the first instance.

Disturbingly, Hon Hai asserts that it was aware of the Chinese trade secret law objection in October 2019.  (*See* Decl. of William Chi ¶ 22 ("It was not until end of October, 2019 when we began working more closely with Ms. Pan of Kilpatrick Townsend that we realized if we were to produce any of our brand name customers' information . . . we might be in violation of Chinese trade secret law.").)  Hon Hai has provided no explanation whatsoever for its conduct.  Hon Hai's claim that it preserved the issue is nonsensical and violates Rule 11.

### III.   HON HAI HAS FAILED TO SATISFY ITS BURDEN TO SHOW THAT PRODUCTION OF THE REQUESTED DOCUMETNS WOULD VIOLATE CHINESE LAW.

To the extent this Court is inclined to consider the merits of Hon Hai's foreign law objection, Hon Hai has failed to make the substantial showing necessary to justify an exception to Hon Hai's broad duty to produce responsive, nonprivileged information under Fed. R. Civ. P. 26(b), let alone its failure to comply with a court order compelling the production of documents. A party seeking to avoid sanctions for its failure to comply with a court order has the burden of establishing a "substantial justification" for its conduct.  *LegalForce RAPC Worldwide PC v. Demassa*, No. 18-cv-00043-MMC (TSH), 2019 WL 5395038, at *4 (N.D. Cal. Oct. 22, 2019) ("The burden of establishing a substantial justification lies with the party facing sanctions.") (citations omitted).  Hon Hai has clearly failed to meet that burden here.

All parties subject to the personal jurisdiction of the federal courts of the United States[3]

---

[3]   Hon Hai failed to assert lack of personal jurisdiction as a basis for its motion to dismiss or as a defense in its Answer.  (*See* ECF No. 26 at 5; Answer ¶¶ 34–72, ECF No. 51.)  Pursuant to Fed. R. Civ. P. 12(g)(2) and (h)(1), Hon Hai has waived any objection based on personal jurisdiction.  Hon Hai also expressly consented to the personal jurisdiction of this Court in the

must ordinarily comply with their discovery obligations under the Federal Rules of Civil Procedure.  *Richmark Corp.*, 959 F.2d at 1473; *United States v. Vetco, Inc.*, 691 F.2d 1281, 1287 (9th Cir. 1981).  There is no per se "foreign litigant" exception to the normal discovery rules.  As the Supreme Court announced in *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for the S.D. Iowa*, 482 U.S. 522, 544 n.29 (1987), "[i]t is well-settled that [foreign statutes] do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."  Hon Hai's contrary argument that "it is clearly not the intent of the Federal Rules of Civil Procedure that litigants be required to produce information in discovery in violation of the law under which they live" is precisely wrong.  In fact, the Federal Rules presume that all litigants will ordinarily produce documents and other information within the scope of Fed. R. Civ. P. 26(b), and courts frequently reject claims by litigants that the production of otherwise discoverable documents and information is barred by foreign statutes.  *Optrics, Inc. v. Barracuda Networks, Inc.*, No. 17-cv-04977-RS (TSH), 2019 WL 5485890, at *2–4 (N.D. Cal. Oct. 25, 2019) (rejecting claim that Canadian confidentiality law required issuance of letters rogatory, rather than application of normal discovery procedures); *Finjan, Inc. v. Zscaler, Inc.*, No. 17-cv-6946-JST (KAW), 2019 WL 618554, at *3 (N.D. Cal. Feb. 14, 2019); (rejecting claim that production of documents by defendant was prohibited by EU and UK law); *BrightEdge Techs., Inc. v. Searchmetrics GmbH*, No. 14-cv-01009-HSG (MEJ), 2017 WL 5171227, at *2 (N.D. Cal. Nov. 8, 2017) (rejecting objection premised on German privacy law); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 5462496, at *5–7 (N.D. Cal. Oct. 23, 2014) (rejecting objections grounded in fear of criminal prosecution under French law).

    The broad scope of discovery under the Federal Rules of Civil Procedure may be narrowed based on principles of international comity where an objecting party establishes that production of particular information should be excused.  Where such an objection is properly raised, courts generally follow a two-step process.  First, the objecting party must establish that a

---

License Agreement.  (Compl. Ex. 1 § 7.6, at 17–18, ECF No. 49.)

foreign law actually bars disclosure of the requested information.[4]  Second, assuming the objecting party makes a *prima facie* showing that the foreign law actually conflicts with U.S. discovery law, the objecting party must establish that production should be excused based on a multi-factor test balancing the competing interests of foreign and U.S. law.  *Richmark Corp.*, 959 F.2d at 1474 ("[T]hat the PRC's State Secrets Act barred disclosure of the information in question . . . does not end the inquiry, however.  The PRC's admitted interest in secrecy must be balanced against the interest of the United States and the plaintiffs in obtaining the information.").

Here, Hon Hai has failed to make a *prima facie* showing that Chinese law actually bars production of the documents and information Microsoft requests and has offered no proposed balancing of the relevant comity factors required by *Societe Nationale* and *Richmark Corp*.

### A. Hon Hai Has Failed to Make a *Prima Facie* Showing that Foreign Law Bars the Production of the Requested Documents.

To support its claim that "Chinese law prohibits Hon Hai from disclosing the requested information with respect to [Huawei, Xiaomi, Oppo, Meizu, and Nokia-HMD], under threat of both civil liability and *criminal* penalty," Hon Hai offers an opinion from Jinzhu Liu of Mingdun Law Firm.[5]  (Liu Decl. Ex. 2.)  Mr. Liu's opinion is that, under various Chinese statutes, a person

---

[4] "The party relying on foreign law has the burden of showing such law bars production of documents." *Philips v. Ford Motor Co.*, No. 14-cv-02989 LHK (NC), 2016 WL 8505624, at *2 (N.D. Cal. June 10, 2016) (quoting *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000*, 211 F.R.D. 374, 377 (C.D. Cal. 2002)).

[5] On January 2, 2020—two days after the deadline for its opposition to Microsoft's motion—Hon Hai submitted an additional declaration in support of its opposition without first obtaining the Court's leave.  In light of Hon Hai's failure to comply with N.D. Cal. Civil Local Rule 6-3, the Court should disregard this declaration in its entirety.  *See Shaw v. Gera*, No. 5:18-cv-06765-EJD, 2019 WL 4933636, at *3 (N.D. Cal. Oct. 7, 2019).  To the extent the Court is inclined to consider the untimely Declaration of Chu Zhang, the Court should consider the striking similarities between large portions of Mr. Zhang's and Mr. Liu's opinions as well as Mr. Zhang's failures to:  identify any case in which a company or individual has been prosecuted for producing documents in response to court-ordered discovery; explain how the relevant statutes interact with Chinese courts' own power to compel the production of evidence under the Civil Procedure Law (*see infra* n. 6); or give a plausible account of how the disclosure of the requested documents pursuant to a protective order would cause harm to any of Hon Hai's customers.  (*See* Zhang Decl. ¶ 11–12.)  And of course, like Mr. Liu, Mr. Zhang fails to explain how Hon Hai's position is consistent with its previous production of the requested information in early royalty reports.

who "discloses trade secrets obtained from another person that are protected under an effective non-disclosure agreement governed by Chinese law" may be subject to criminal penalty. (*Id.* at 1, 5.) Mr. Liu does not, however, express any opinion about whether (1) the specific documents and information at issue here constitute "trade secrets" under Chinese law; (2) the agreements at issue here would be deemed "effective non-disclosure agreement[s]" under Chinese law; or (3) the disclosure of "trade secrets" in response to a legitimate court-issued discovery order would constitute "infringement" of any trade secret under Chinese law. Instead, Hon Hai's *U.S. counsel* asserts that the requested information for each customer qualifies as "protected 'trade secret' of that customer under Chinese law" (Hon Hai Opp. Br. at 10–11), and Hon Hai assumes that disclosure in litigation must constitute the infringement of a trade secret because "Chinese courts . . . do not recognize nor provide for discovery during litigation proceedings." (*Id.* at 11.)[6] Tellingly, neither Mr. Liu nor Hon Hai's counsel provide any explanation about how Hon Hai's claim that it faces criminal prosecution under Chinese law is consistent with its disclosure of supposed "trade secret" information of at least four of the relevant customers in its early royalty reports. (Song Supp. Decl. ¶¶ 6, 11, Ex. 16.)

Although Mr. Liu's legal opinion is silent on whether Chinese law actually bars the production of the requested documents here, several statements in his opinion suggest that it does not. First, Mr. Liu states that Article 9 of China's Anti-Unfair Competition Law prohibits "[d]isclosing, using, or allowing another person to use a trade secret in its possession, in violation of its confidentiality obligation or the requirements of the right holder for keeping the trade secret confidential." (Liu Decl. Ex. 2 at 1.) But Mr. Liu does not cite any statute or other guidance

---

[6] The article on which Hon Hai relies for the proposition that "Chinese courts . . . do not recognize nor provide for discovery during litigation proceedings," actually states that, while Chinese courts do not provide for "U.S.-type discovery," there are several mechanisms by which parties *can* obtain documents from their opponents under China's Civil Procedure Law, including by requesting that the court grant an Order for Evidence Preservation or applying for the appointment of a Court-appointed Expert. The article also notes that Chinese courts have the authority to "obtain evidence from the relevant units or individuals, and such units or individuals *may not refuse to provide evidence*." *See* R.W. Wigley and X. Jing, "Evidence Collection and Alternative to 'Discovery' in P.R.C. Litigation," *China Law Insight* (Apr. 15, 2011) (emphasis added), *available at* https://www.chinalawinsight.com/2011/04/articles/dispute-resolution/evidence-collection-and-alternatives-to-discovery-in-prc-litigation/.

indicating that production in response to a foreign court order is a prohibited "disclos[ure]" within the meaning of Article 9 of the AUCL.  Second, Mr. Liu discusses the potential imposition of penalties under Articles 219 and 220 of China's Criminal Law, but notes that criminal penalties only attach when an "infringing" act "causes heavy losses" to the holder of the trade secret.  He further references Article 73 of the Notice of the Supreme People's Procuratorate (the "Notice"), which sets forth the "threshold" requirements for any prosecution under Article 219.  (*Id.* at 4.)  The Notice states that criminal prosecution will be pursued only where:  infringement of a "business secret" "caus[es] direct economic losses of more than 500,000 yuan to the obligee;" the "amount of illegal gains from infringing business secret [are] more than 500,000 yuan;" infringement "caus[es] the obligee to go bankrupt"; or infringement "otherwise caus[es] any serious loss to the obligee."  (*Id.* at 4.)  Hon Hai's opposition brief is silent about how the production of documents in this litigation subject to the "AEO" provision of the protective order is likely to cause a loss that would qualify for criminal prosecution under Chinese law.  Finally, the three cases cited in Mr. Liu's opinion letter all involved the misuse and/or theft of trade secrets in a manner that caused direct competitive harm.  (*See id.* at 4–5).  Hon Hai has cited no case in which a company or individual was prosecuted for disclosing business information in connection with breach of contract litigation—where there is clearly no misuse or theft involved.

Hon Hai's foreign law objection is also quite clearly not motivated by a serious desire to protect its customers from competitive harm.  By Hon Hai's own account, it has put its customers on notice that the requested documents are subject to discovery by Microsoft in this litigation (Chi Decl. ¶ 15), and while Hon Hai represents to this Court that five of its customers object to disclosure of the requested documents (*id.* ¶ 17), not one of those customers has intervened in this case to seek the entry of a protective order.[7]  Nor has it produced the correspondence or demonstrated a threat of criminal prosecution is present.  Moreover, if the data in Hon Hai's

---

[7] As detailed in Microsoft's Motion for Sanctions, certain of these agreements were executed shortly after Microsoft provided its audit notice. (ECF No. 104 at 8.)  Hon Hai's opposition brief makes no effort to explain the suspicious timing of these agreements, which seem motivated by potential litigation rather than legitimate trade secret protection.

possession is truly the proprietary data of third parties, then those third parties should have sought a protective order months ago. (*See* Song Decl. Ex. 7 at 2 ("Hon Hai and its subsidiaries are contacting relevant third parties to request that they either authorize Hon Hai to produce the documents in question with an appropriate confidentiality designation under the protective order, or approach the Court directly to make a showing of why production should not be required.").)

### B. Hon Hai Has Not Proffered an Analysis of the *Societe Nationale/Richmark Corp.* Factors, Which Weigh Heavily Against Limiting Discovery Here.

Of course, even if Hon Hai could establish that the cited provisions of Chinese law barred production of the requested documents and information, it would still have to establish that the *Societe Nationale/Richmark Corp.* comity factors weigh in favor of applying Chinese law rather than U.S. law. Those factors include:

- the importance of the requested documents to the litigation;
- the degree of specificity of the request;
- whether the information originated in the United States;
- the availability of alternative means of securing the information;
- the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located;
- the extent and nature of the hardship that inconsistent enforcement would impose upon the person; and
- the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

*Richmark Corp.*, 959 F.2d at 1475. Here, these factors weigh heavily in favor of requiring Hon Hai to produce all requested information.

Importance of the Requested Documents. This Court has already determined, when it issued the Discovery Order, that the requested documents are relevant to this litigation. The requested documents are critical to Microsoft's ability to determine Hon Hai's royalty obligations under the License Agreement and the information contained in those documents form the core of the royalty reports Hon Hai was supposed to submit on a periodic basis. Thus, the first factors weighs heavily in favor of production.

<u>Degree of Specificity of the Request</u>. It would not be burdensome for Hon Hai to collect and produce the information Microsoft seeks. Hon Hai previously represented to Microsoft and the Court that it had preserved all "Audit Information" that it was contractually required to preserve, and Hon Hai has represented that it is affirmatively withholding the documents and information from production without raising any claim that providing the requested information would be burdensome. Accordingly, the second factor weighs heavily in favor of production.

<u>Whether the Information Originated in the United States</u>. While admittedly, the requested information appears to have originated outside of the United States, the normal presumption that this factor weighs against production does not apply here. First, Hon Hai contractually agreed to provide this information pursuant to the License Agreement, which is governed by California law. Second, Hon Hai has not shown that the requested information is actually located in China, rather than in Taiwan, where Hon Hai is located. Hon Hai has not specified which categories of information are located in China as opposed to Taiwan, and does not rely on any claim that production of information in Taiwan would be barred under Taiwanese law.

<u>Availability of Alternative Means</u>. Hon Hai claims that Microsoft can obtain "the requested information *directly* from Hon Hai's customers via Rule 45 subpoenas." (Hon Hai Opp. Br. at 16.) This is a red herring because Hon Hai cannot assure Microsoft or this Court that any of its customers would be subject to this Court's personal jurisdiction or that their "US operating entities" will be in a position to produce relevant documents located abroad. (*See* Hon Hai Opp. Br. at 9–10, ECF No. 110; Isbester Decl. ¶ 5, Ex. 4, ECF No. 110-1.) This proposed alternative is also impractical because, by definition, Hon Hai possesses all the information necessary to determine its own royalty obligations. If Microsoft is required to serve Rule 45 subpoenas, the end result is likely to be litigation against each of Hon Hai's customers, none of whom have bothered to intervene in this Court for a protective order limiting the disclosure of its "trade secrets." Thus, on balance, this factor weighs in favor of production.

<u>Balancing of National Interests</u>. U.S. discovery laws establish that it has a "substantial interest in vindicating the rights of American plaintiffs." *Philips*, 2016 WL 8505624, at *4. In contrast, the policy that seems to be established by the Chinese laws to which Hon Hai cites

seems to be one of avoiding *competitive* harm caused by the misappropriation of trade secrets. U.S. law also protects against the competitive harms that can result from the disclosure of trade secrets. *See, e.g.*, 18 U.S.C. § 1836. As it does not appear that China has a policy against the proper development of evidence in connection with business litigation as directed by a duly constituted court of law, there does not appear to be any true conflict in the different national interests, which weighs in favor of production.

Hardship and Likelihood of Compliance. Hon Hai has not shown that there has ever been a prosecution under the cited provisions of Chinese law where a party disclosed "trade secret" information in response to a legitimate court order and subject to a protective order. As this Court has noted, when a party fails to provide information regarding "whether parties in its position have been fined or prosecuted for disclosing [responsive documents] under similar circumstances, this factor weighs in favor of compliance" with the normal discovery obligations. *Philips*, 2016 WL 8505624, at *4 (quotations omitted). While a genuine threat of criminal prosecution may be a "weighty" consideration against compelling disclosure, here Hon Hai's assertion that it actually faces a threat of criminal prosecution under these circumstances is wholly unsubstantiated by any reference to actual case law or policy statements of the Chinese government. Accordingly, this factor weighs in favor of production. Further underscoring the lack of any real threat of criminal prosecution, Hon Hai provided certain categories of data that it now claims are "trade secrets" in its early royalty reports under the Licensee Agreement. (Song Supp. Decl. ¶ 6, Ex. 16.) If Hon Hai was criminally prosecuted for making those disclosures in the past, it certainly has not shared information about that prosecution with Microsoft or the Court.

Because each of the factors above ultimately weigh in favor of production, this Court should reject Hon Hai's spurious foreign law objection and enter the Further Discovery Order as requested in Microsoft's motion for sanctions.

**IV. HON HAI SHOULD BE COMPELLED TO PROVIDE FULL AND COMPLETE RESPONSES TO MICROSOFT'S INTERROGATORIES.**

Finally, Hon Hai makes no attempt to defend the inadequacies in its Interrogatory

responses outlined in Microsoft's separate motion to compel under Rule 37(a)(3)(B)(iii). Instead, Hon Hai claims that it is "in the process of preparing amended responses to Microsoft's Interrogatories." In other words, "the check is in the mail." But Hon Hai has not provided any assurances about when these "amended responses" will be forthcoming or whether they will contain substantive responses. Hon Hai also claims that Microsoft's requests for "narrative" responses and certification by an "apex" executive are inappropriate. However, a party does not have an unqualified right to respond to interrogatory responses by referencing documents under Fed. R. Civ. P. 33(d), which permits identification of documents in response to an interrogatory where, among other things, "the burden of deriving or ascertaining the answer will be substantially the same for either party" and the responding party gives "the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries." Given Hon Hai's refusal to produce responsive documents—even in the face of an order compelling Hon Hai to do so—or articulate how the burden of extracting information from those documents would be the "same for either party," Microsoft has advanced reasonable grounds for the requested narrative responses. Moreover, Hon Hai's own opposition to Microsoft's motion for sanctions demonstrates why a certification by a senior officer of Hon Hai is necessary: if Hon Hai's business is structured as alleged in the Chi Declaration, only a very high-level officer will be able to certify Hon Hai's responses to these interrogatories. (*See* Chi Decl. ¶¶ 11–12.)

## CONCLUSION

For the foregoing reasons and the reasons stated in Microsoft's Motion for Sanctions and to Compel Interrogatory Responses, Microsoft respectfully requests that the Court (1) enter a Further Discovery Order under Fed. R. Civ. P. 37(b)(2)(A); (2) order Hon Hai to provide complete narrative answers to Interrogatory Nos. 1, 2 and 5 under Fed. R. Civ. P. 37(a)(3)(B)(iii) with a verification by Mr. Terry Gou, the current Chief Financial Officer of Hon Hai; and (3) order Hon Hai to pay the reasonable expenses, including attorneys' fees, incurred by Microsoft to secure Hon Hai's compliance with the Discovery Order and to obtain substantive interrogatory responses.

| | |
|---|---|
| Dated: January 3, 2020 | Respectfully submitted,<br><br>DECHERT LLP<br><br>By: _____/s/ S. Michael Song_____<br><br>S. Michael Song (State Bar No. 198656)<br>michael.song@dechert.com<br>Ryan T. Banks (State Bar No. 318171)<br>ryan.banks@dechert.com<br>DECHERT LLP<br>3000 El Camino Real, Suite 650<br>Palo Alto, CA 94306<br>Telephone:   +1 650 813 4800<br>Facsimile:    +1 650 813 4848<br><br>Martin J. Black (*pro hac vice*)<br>martin.black@dechert.com<br>DECHERT LLP<br>Cira Centre, 2929 Arch Street<br>Philadelphia, PA 19104<br>Telephone:   +1 215 994 4000<br>Facsimile:    +1 215 994 2222<br><br>Paul Curran Kingsbery (*pro hac vice*)<br>paul.kingsbery@dechert.com<br>DECHERT LLP<br>1095 Avenue of the Americas<br>New York, NY 10036<br>Telephone:   +1 212 698 3500<br>Facsimile:    +1 212 698 3599<br><br>Attorneys for Plaintiffs<br>MICROSOFT CORPORATION<br>and MICROSOFT LICENSING, GP |