1                     UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF CALIFORNIA
2                          SAN JOSE DIVISION

3

4    MICROSOFT CORPORATION and      )  Case No.  19-cv-01279-LHK
     MICROSOFT LICENSING, GP,       )
5                                   )  San Jose, California
              Plaintiffs,           )  Courtroom 5, 4th Floor
6         vs.                       )  Wednesday, January 8, 2020
                                    )
7    HON HAI PRECISION INDUSTRY CO., )
     LTD., trading as FOXCONN       )
8    TECHNOLOGY GROUP,              )
                                    )
9                Defendant.         )
     _____)

10

11                  TRANSCRIPT OF DISCOVERY HEARING
                 BEFORE THE HONORABLE NATHANAEL M. COUSINS
12                  UNITED STATES MAGISTRATE JUDGE

13   APPEARANCES:

14   For Plaintiffs:            MARTIN J. BLACK, ESQ.
                                Dechert LLP
15                              Cira Centre, 2929 Arch Street
                                Philadelphia, Pennsylvania 19104
16                              (215) 994-4000

17                              RYAN T. BANKS, ESQ.
                                S. MICHAEL SONG, ESQ.
18                              Dechert LLP
                                3000 El Camino Real
19                              Five Palo Alto Square, Suite 650
                                Palo Alto, California 94305
20                              (650) 813-4831

21   For Defendant:            A. JAMES ISBESTER, ESQ.
                                Kilpatrick Townsend & Stockton LLP
22                              Two Embarcadero Center, Suite 1900
                                San Francisco, California 94111
23                              (415) 576-0200

24

25   Proceedings recorded by electronic sound recording; transcript
     produced by transcription service.

```
 1   APPEARANCES:  (Cont'd.)

 2   For Defendant:               GRACE L. PAN, ESQ.
                                  Kilpatrick Townsend & Stockton LLP
 3                                1114 Avenue of the Americas
                                  The Grace Building
 4                                New York, New York 10036-7703
                                  (212) 775-8844
 5
     Transcription Service:       Peggy Schuerger
 6                                Ad Hoc Reporting
                                  2220 Otay Lakes Road, Suite 502-85
 7                                Chula Vista, California 91915
                                  (619) 236-9325
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1    SAN JOSE, CALIFORNIA  WEDNESDAY, JANUARY 8, 2020  1:03 P.M.

2                          --oOo--

3            THE   CLERK:    Calling   Civil   19-1279,   Microsoft

4    Corporation, et al. v. Hon Hai Precision Industry Co., Ltd.

5    Counsel, please state your appearances for the record.

6            MR. BLACK:  Martin Black, Michael Song, and Ryan Banks

7    of Dechert on behalf of Microsoft.

8            THE COURT:  Good afternoon, all.

9            MR.  ISBESTER:   James  Isbester  and  Grace  Pan  of

10   Kilpatrick Townsend on behalf of Defendant, Your Honor.

11           THE COURT:  Good afternoon.  All right.  We have before

12   us, just to make sure we're all aligned as to what we're talking

13   about, Discovery Letter Briefs 97 and 98, Joint Status Report at

14   115, and a motion for sanctions with opposition.  That's 104.

15      We are preceding the scheduled settlement conference in the

16   case.  Today's not the settlement conference, but the urgency of

17   the discovery in both directions is in the shorter term.  Maybe

18   the big picture that is relevant to settlement in the longer term,

19   it's necessary to pursue and defend the case.

20      So before we dive into the details, is that a updated summary

21   of what's in dispute?  Any update in your dispute resolution

22   process?  Starting with Mr. Black?

23           MR. BLACK:  Yes, Your Honor.  That's accurate.

24           THE COURT:  All right.

25           MR. ISBESTER:  Your Honor, you were speaking fast or I

4

1  was listening slowly.   Did you include in your list the

2  Defendant's motion to compel further production of documents?

3          THE COURT:  Yes.  Yeah.  So you've both got things you

4  want from each other.  The sanctions with my permission was teed

5  up for a hearing today.

6      All right.  With a prelude to our settlement conference, I'm

7  going to ask you to go meet in my conference room right now, not

8  with me, but right outside the courtroom to see if you can work

9  out some or all of those issues, number one.  And, secondly, to

10 confer as to whether we're ready for the settlement conference.

11 We had a phone call about it to see if we're ready for it, and you

12 had some disputes about who was going to be there from each side.

13 I want you to talk about it directly to see if you can persuade

14 each other and encourage each other and do everything you can to

15 make that an effective conference for your clients.  They're not

16 compelled to be here today, but to make their time well spent next

17 week, I want to get the ball rolling today directly and come back

18 at two o'clock and we'll resolve the discovery issues if still

19 needed.

20     Thank you very much.

21         MR. BLACK:  Thank you, Your Honor.

22         MR. ISBESTER:  Thank you, Your Honor.

23         MS. PAN:  Thank you, Your Honor.

24     (Recess from 1:06 p.m., until 3:43 p.m.)

25         THE COURT:  Let's get launched on our civil matter.  I

1  think at last Microsoft and Hon Hai return, please.

2          THE CLERK:  Recalling Civil 19-1279, Microsoft v. Hon

3  Hai.

4          THE COURT:  All right.  You've gotten a full afternoon's

5  education on what we do here every day in federal court.  I'm sure

6  you probably already knew the need of education, but I appreciate

7  you --

8          MR. BLACK:  It's been educational.  We're ready for Hon

9  Hai's sentencing.

10          THE COURT:  Well, they might be ready for you, so it's

11  going in both directions.

12      All right.  Update me, please, as to your --

13          MR. BLACK:  Yes, Your Honor.

14          THE COURT:  -- posture.

15          MR. BLACK:  So first -- so first of all, with respect to

16  the  mediation,  we  have  some  doubts  as  to  whether  the

17  representative from Hon Hai is sufficient, but we do think we

18  should go forward with the mediation --

19          THE COURT:  Great.

20          MR. BLACK:  -- to make as much progress as we can.

21      With respect to our motion to compel and for sanctions, we

22  were  able  to  have  a  frank  discussion  about  the  customer

23  relationships and this data, and I believe the facts are as

24  follows, but Mr. Isbester can correct me if I'm wrong.

25      They provided a list to us on December 13th with 196 customer

1    names on it.   Many of those are grouped together as they are

2    affiliates.   Our estimate was there are a hundred --

3            THE  COURT:   I'm  sorry.   A  hundred  and  ninety-six

4    includes the affiliates or --

5            MR. BLACK:   There are 196 names, but many of them seem

6    to be affiliates of others on that list.

7            THE COURT:   Okay.

8            MR.  BLACK:   So  we  estimated  there  were  probably  110

9    unique  customers.   Hon  Hai  says  that  there  are  roughly  54

10   customers.    Of  the  54,  we've  received  partial  production  of

11   spreadsheets for 15.   There are 34 for which we have nothing so

12   far.   They are looking hurriedly for information for those 34,

13   although  we  were  informed  today  that  for  some  of  them,  the

14   relationships   with   the   customers   ended   and   the

15   documents/information may have been destroyed, so we may have a

16   spoliation issue.

17       With  respect  to  five  that  are  the  largest  customers,

18   purportedly 90 percent of the sales --

19           THE COURT:   This is five out of the --

20           MR. BLACK:   Five out of the 54.

21           THE COURT:   -- 54.   Okay.

22           MR. BLACK:   Those are the ones that are the focus of the

23   briefing, although I would note that even if there's only ten

24   percent, given the magnitude here, that's over a hundred million

25   dollars in royalties that would be missing.

1      For those five, they have reached an agreement with one of

2  the five to produce the material, and the other four they are in

3  continued discussions.   Those five, they are standing on the

4  foreign law argument, which I can address substantively whenever

5  you think appropriate.

6           THE COURT:  Uh-huh.

7           MR. BLACK:  But that is the basic position.

8           THE COURT:  All right.   So -- and I'll give them an

9  opportunity.   So as to the things you want to tee up today to

10 litigate, foreign law question?

11          MR. BLACK:  Yes, Your Honor.

12          THE COURT:  What do you want to argue about the other

13 parts of the 54 --

14          MR. BLACK:  So --

15          THE COURT:  Or do you want to get back to that later?

16          MR. BLACK:  Yeah.   I would just like to do it all at

17 once so I can get started.   So you issued an order to produce

18 sales information, effectively information necessary to fill out

19 the royalty reporting which the parties agreed to.

20          THE COURT:  Uh-huh.

21          MR. BLACK:  It's undisputed that with respect to dozens

22 of those customers, we do not have that information yet and,

23 therefore, they are in breach.

24      There's a question of substantial compliance.   I would

25 suggest that there has been no substantial compliance.  Even with

1    respect to the five, which are at the heart of the case, they made

2    a foreign law objection, which is groundless for four different

3    reasons.

4        First, the argument was clearly waived both as a matter of

5    procedure, because it wasn't raised in the prior proceedings, and

6    as a matter of substance, because it was discussed and withdrawn

7    by counsel.

8        Second, in order to maintain any such objection, they would

9    have to prove several predicate facts, of which Your Honor has no

10   record.  The first predicate fact is that they have agreements or

11   some other obligation not to produce the information.  Notably,

12   they have not produced to Your Honor the contracts which they say

13   create this obligation.  Several of those contracts have in them

14   provisions that allow production of information in the course of

15   legal proceedings or for under court order.

16       But you don't have any of that in front of you, so they

17   haven't met their burden that they even have an obligation that

18   would be breached.

19       Second, they would have to show that there is some Chinese

20   law problem with producing trade secret information in U.S. court

21   proceedings.  They have not done that.  All they've done is

22   provided some general law on trade secrets and potential criminal

23   liability for theft of trade secrets which, by the way, is the law

24   in the United States as well.  They have not applied the law to

25   the facts of this case, much less shown that there's any real

1    probability of criminal prosecution.  They have admitted that

2    criminal prosecution could only occur when there's actual damage

3    to a party holding the trade secret, which did not happen in this

4    case because the information will be produced to us under a

5    protective order.  And finally, Your Honor would have to go

6    through a balancing test, balancing all the issues and conclude

7    that some speculative potential for a Chinese criminal proceeding

8    would take precedence over a United States federal court

9    interpreting a contract that was agreed to between a U.S. company

10   and a Taiwanese company which as of yet, and hopefully never will

11   be part of actual China, that that contract, which is governed by

12   California law and subject to the jurisdiction and resolution in

13   this court, was insufficient to allow the court to invoke its

14   normal discovery powers.

15       All those things are lacking.  The issue is not substantially

16   justified.  We have some suspicions about what's going on because

17   Counsel withdrew with a very strange withdrawal notice saying --

18   citing provisions stating that they couldn't agree with their

19   client on substantive matters.  And the position is quite clear.

20   We have two large companies in a dispute.  We need to know what

21   the sales figures are and they -- they have not given them to us.

22   They are in violation of the order and they're not substantially

23   justified.

24            THE COURT:  So, therefore, you want me to --

25            MR. BLACK:  Therefore, we are entitled to sanctions of

1  attorneys' fees.  We are entitled to a further order, as we've

2  outlined the details of the order and what we filed, and we think

3  that one way to get through this more quickly would be to order

4  them to, in addition to everything else, order them to answer our

5  Interrogatories No. 1, 2, and 5 and give us a narrative answer,

6  not just point us to some random spreadsheets that we have to

7  figure out ourselves, which is not going to be easy, make them

8  answer those interrogatories, and make them verify it by somebody

9  at a high level at the company.

10       And the reason we've asked for that is because they have

11 stated in their own papers that this business is separated into

12 different subsidiaries throughout the company.  So the only person

13 that's ever going to be able to make sure we get everything we

14 need is someone high up in the food chain.  I would suggest that

15 Mr. Gou, who was the General Manager of the company at the time,

16 or Chief Financial Officer, somebody has to certify under oath

17 that they've done their best to get us this information.  Anything

18 less, we are doubtful.

19       So those are our -- those are our requests, Your Honor.  We

20 do think it's important that -- we did not ask for attorneys' fees

21 in the last matter.  We've not asked for any more stringent

22 sanction here.  But we do think attorneys' fees under the rules

23 are required under Rule 37 in these circumstances and that would

24 get the message across to Hon Hai that this has to end.

25            THE COURT:  All right.  Thank you.  Let me get him on

1  the case.

2           MR. ISBESTER:  Your Honor, thank you for your time this

3  afternoon.  I have witnessed what a busy calendar you have.

4      By and large, I'll be trying to address your issues.  I would

5  like to state in advance that I may need to defer to my colleague,

6  Ms. Pan, in order to address some specifics as she has been more

7  personally involved in some of the investigation.

8      First of all, you asked us for a quick summary of where we

9  stand.

10          THE COURT:  Uh-huh.

11          MR. ISBESTER:  And I'm going to limit this simply to the

12  Microsoft motion as opposed to our counter-motion for the time

13  being, and the one concern I raise about Mr. Black's summary, he

14  quickly jumps to the word "spoliation," and I don't think there's

15  any basis for a suggestion of spoliation.

16      In the ordinary course of business over the course of the

17  many years that this litigation spans, certain customers have no

18  longer -- have become no longer customers of Foxconn.  At that

19  point, in some instances, we believe, there have been times at

20  which the specific and very detailed documentation that Microsoft

21  seeks has no longer been part of what is maintained in the

22  ordinary course of business and in the ordinary course of business

23  may have been lost.  But to suggest that there's spoliation

24  suggests both criminality or intent that there is no evidence of

25  at all.

1      Moreover, I think it's pretty clear that spoliation is

2  something that occurs after there's the threat of litigation.

3          THE COURT:  Hasn't there been the threat of litigation

4  in this case for a long time?  When would you say the threat of

5  litigation began?

6          MS. PAN:  March of last year.

7          MR. ISBESTER:  Well, yeah, the lawsuit was filed in

8  March.

9          THE COURT:  Yeah.  The threat of litigation I would

10  guess is before the lawsuit was filed.

11          MR. ISBESTER:  I -- I would agree.  It was before then.

12  But exactly when, I could not precisely tell you.

13          THE COURT:  All right.  I probably don't need to decide

14  that issue now, but --

15          MR. ISBESTER:  Yeah.

16          THE COURT:  -- based on the record that I know of, it

17  seems like my tentative would be to think that the threat of

18  litigation preceded the filing by quite a period of time.  All

19  right.  But keep going.

20          MR. ISBESTER:  Okay.  So Mr. Black identifies four bases

21  for disputing the reliance of the client on Chinese trade secret

22  law.  The four -- I dig into those.  Let me summarize in a little

23  bit more detail because frankly, Your Honor, this is a somewhat --

24  this is a very consequential motion from my client's point of

25  view.  And in reviewing the papers, it was not clear to us that

1    the Court's ever been fully informed of the kind of business that

2    Foxconn operates.

3        So if I may take five minutes of your time and the Court's

4    time to describe the context in which this problem has arisen, I

5    would appreciate that.

6            THE COURT:  I won't give you five minutes to describe

7    the context.  I'll give you 30 seconds of context before you give

8    me your five minutes.  Hours ago on our calendar, we had the case

9    of *WeRide v. Huang*, 18-7233, which is Judge Davila's case and I'm

10   the discovery judge in the case.  And it's -- just so you know the

11   context -- one of the cases which I have on my calendar.  That's

12   a trade secret misappropriation case, so it's not the same charges

13   -- allegations as in your case, but it's a case in which there was

14   a substantial delay in the first six months of the case, a change

15   in counsel, and ultimately a discovery that there had been

16   spoliation documents that led to a motion for discovery sanctions

17   and terminating sanctions which is pending before the Court now.

18       One of the issues in that case is an assertion that Chinese

19   law prevents disclosure of documents in the case and it goes along

20   with the spoliation motion.  Just because it happened in that case

21   doesn't mean it's happening in this case.  But it gives me quite

22   a bit of recent experience with the law that applies to an

23   objection made to production of documents in this country in a

24   case of hundreds of millions or billions of dollars of magnitude.

25   So I have some very recent experience with dealing with the

14

1    discovery issues in a very large commercial case and the
2    objections and delay in responding to court orders.

3        So you might inform yourself and have your client review the
4    pleadings in that case to see what could happen if there is a
5    spoliation or a violation of the court order to provide discovery
6    responses.

7        Now, go ahead and give your five minutes of context.

8            MR. ISBESTER:   Okay.   Thank you, Your Honor.   As
9    described in the papers, OEMs delay a variety of kinds of services
10   that might give you an idea that Foxconn or Hon Hai -- I'm going
11   to use Foxconn, if I may -- provides a broader set of services
12   than it actually, as we understand it now, does provide in the
13   Android-based smartphone business, which is the huge overwhelming
14   proportion of this particular dispute.

15       Our understanding is that in the Android-based smartphone
16   business, Foxconn is doing -- is working on what is referred to as
17   a build-to-stock basis.   Stock is provided.   The customer, Huawei,
18   Xiaomi, whoever, has product brought in to a Foxconn facility and
19   Foxconn merely assembles that and then charges a price to the
20   customer based on the labor added.

21       So why is this relevant?   One of the things that we
22   understand the Court has ordered -- and we've been working very
23   hard to find -- are bills of material, and we are told why would
24   we even have a bill of material.   We get a kit that we put
25   together.   In some instances, that kit will be a printed circuit

1   board with a number of semiconductors and there's a surface-mount
2   technology soldering of those semiconductors onto the board.  When
3   that's done, the board is then shipped off to somebody else who
4   turns it into a smartphone.

5       So that leads me to the second point.  In trying to figure
6   out what is a covered product, we have to go back in invoice by
7   invoice and figure out what was the labor that was added.  So, for
8   example, one of -- and I have in my computer here some photos of
9   the kits -- but I -- I don't have a way to display it.  I think I
10  can simply describe it.

11      One of the kits is a fully-assembled smartphone with no
12  cover.  And what Foxconn does is snap the cover on.

13      Another kit is a number of components at the board level that
14  get assembled into a product.

15      Now, the first one I described, at the end of the day, you've
16  got a smartphone.

17      The second one, we can't even tell whether you've got a
18  smartphone 'cause we don't know all the components that are on the
19  board.  What we know is we assembled something per the customer's
20  request and then shipped it out.

21      It's a little bit -- so the basic business model of Foxconn
22  in this area is like the assembler service that you get at Ikea.
23  Somebody else has bought the product and this assembly guy comes
24  out and assembles it for that customer.  That's what Foxconn is
25  doing with the Android smartphones.

1    So what that means is that we've been able to identify
2    invoices for labor, but we haven't been able to identify bills of
3    material and that kind of additional detail that occupied a fair
4    bit of the past discussion.

5        What have we been successful in providing?  As Mr. Black
6    notes, we've provided the data that we could identify and locate
7    for now 15 different customers.  We have identified an additional
8    34 as to whom we believe there is no basis for the Chinese trade
9    secret concern.  And that leaves five customers who together
10   constitute, we regret to say, 90 percent of the revenue we believe
11   at issue here.

12       One of -- we're continuing to negotiate with all of those
13   five customers to try to convince them to go forward with allowing
14   us to produce the documents here and taking the Chinese trade
15   secret concern right off the table.  One of those customers, HMD,
16   has already agreed, as of -- as of this morning, as of before
17   breakfast this morning.  We have the material assembled and we'll
18   be producing that by the end of the week.

19       The other four, we do not -- excuse me -- do not have
20   agreements yet, but we're continuing to work with them and we're
21   optimistic.  We can't make a promise.  We can't make that
22   commitment.  But it has now been elevated to the senior management
23   levels of the -- of both Foxconn and the customers and is being
24   discussed.

25       The reality if you happen to be in management at Foxconn and

17

1    living in Shenzhen in China and one of your customers -- for
2    example, Huawei -- who as we all know is being spoken about
3    frequently in the press in the United States -- speaks a
4    vociferous objection to your disclosing trade secrets.  And given
5    the uncertain relationship between Huawei and the Chinese
6    government, you'd have to be very brave to decide that you're
7    going to ignore those objections.

8        So we are attempting, instead of tempting the -- tempting
9    fate, as you will -- we're attempting to resolve this by
10   negotiation and, as I say, we're optimistic that we will be able
11   to do so and at least some, if not all of the remaining four.

12        THE COURT:  All right.  So not to be glib -- I'm not an
13   expert in assembly of Android devices or phones, and I appreciate
14   the context and education into what Foxconn does.  What I do have
15   a lot of experience with is civil discovery.  And so I've
16   previously granted a request for discovery and ordered production
17   of certain materials.  And when it wasn't complied with, I
18   permitted a motion for sanctions, which is very unusual in my
19   cases, but I -- it appeared to me it was necessary in order to
20   meet the deadlines set by Judge Koh, including discovery in this
21   case, to get things moving.

22        I'm hearing on the record that that's not been satisfied and
23   that there's a bit of optimism but there has not been production
24   of material in response to the court order.  So why shouldn't I
25   grant the request of Microsoft to order the things that they have

 1   been putting in their Interrogatories 1, 2, and 5, to award the
 2   attorneys' fees and sanction, to do a written order invalidating
 3   the assertion it's foreign law in this case?  Why shouldn't I do
 4   that?
 5           MR. ISBESTER:  Let me first of all address what I think
 6   is an error in Mr. Black's recitation of the law.  The award of
 7   sanctions is not mandatory.  It is in the Court's discretion and
 8   something for the Court to use to, if I may say, motivate
 9   recalcitrant clients, recalcitrant parties.
10       In this instance --
11           THE COURT:  I don't think I have to make a finding of
12   motivation in order to award sanctions under Rule 37.  But, all
13   right.  I hear what you're saying.  I agree it's not mandatory
14   without limitation.  If there's been substantial compliance, that
15   could be a reason not to grant them.  But go ahead.
16           MR. ISBESTER:  And, Your Honor, you take me to my next
17   point.  There has not been complete compliance.  There's -- I'm
18   not going to stand up here and argue that there has been.  There
19   has been an extraordinary amount of effort.  As you may know, we
20   became involved in the case -- actually, my first contact with the
21   case was the morning that we spoke about the settlement
22   conference, which I believe was December 6.  So my involvement in
23   the case is now something in the area of a month.
24           THE COURT:  A month.
25           MR. ISBESTER:  Of a month.  It's an enormously

1  complicated case, as we just discussed.  Fifty-four customers.

2  Each customer has multiple products.  There are many different

3  facilities.  We are working as hard and as fast as we can to have

4  complete compliance.  But I started off discussing the bill of

5  materials and was careful to bring forth to Mr. Black earlier

6  today the fact that there may be documents that simply in the

7  order and course of business no longer exist and, therefore, it

8  may be that we reach a point where we have not completely 100

9  percent solved the discovery order, the December -- the November

10  8th order, but we've provided everything that we can.

11      So is this substantial compliance?  I'm never quite sure what

12  to make of the word "substantial."  But it sure is good-faith

13  expensive effort to try and do the very best that can be done.

14      The third point I'd like to make is that given the progress

15  that is happening now and the imminency of the -- of the

16  settlement conference, if the Court does believe that sanctions

17  are the appropriate next step in managing this discovery, I would

18  request that at least that be held off until after the settlement

19  conference, until after you have had an opportunity to see what we

20  can get done between now and then in terms of obtaining that

21  substantial compliance.

22      Finally, Your Honor, there's --

23          THE COURT:  And just -- the language of Rule 37 is

24  whether the nondisclosure response or objection was substantially

25  justified.  That's the technical language of Rule 37.

1       All right.

2               MR.  ISBESTER:    And,  Your  Honor,  I  do  think

3   "substantially justified," in the context of the Chinese law

4   objection -- as you've seen from our papers three years -- is a

5   substantial  justification,  especially  since  we  think  there's

6   another way of skinning the cat.

7               THE COURT:  All right.  Ultimately, when it comes to,

8   you know, different ways to skin the cat, it's not me you need to

9   persuade,  although  now  it's  a  motion  before  me.    It's  your

10  adversary who's requested information and you've had negotiations

11  -- and I don't mean you personally.  You came on the case December

12  6 -- but over a period of years, the parties have been discussing

13  the information that they seek and whether it might be provided

14  and could it be in a different format and if they'd been persuaded

15  before  now,  they  wouldn't  be  here  asking  the  Court  to  order

16  something.  And they did come to the Court before and gotten me to

17  order something and I ordered something.  That's the immediate

18  posture -- is there's not been compliance with the court order, so

19  now it's not just persuading them; it's persuading me, too.

20      All right.  I know we've got discovery requests going the

21  other direction, too, and I want to give you a chance to tell me

22  about those.  I'm going to get back to that in a moment so I can

23  get these criminal folks out of here.  So we'll come back in five

24  minutes and finish that off with your --

25              MR.  ISBESTER:    Your  Honor,  with  all  due  respect,  I

1  haven't had an opportunity to respond to Mr. Black's four points

2  on the face of it.

3          THE COURT:  All right.  When we come back, you can do

4  that next.

5          MS. PAN:  Thank you, Your Honor.

6          THE COURT:  Thank you very much.

7      (Recess from 4:09 p.m., to 4:21 p.m.)

8          THE COURT:  All right.  Recalling Microsoft v. Hon Hai.

9          THE CLERK:  Civil 19-1279.

10     (Pause.)

11         THE  COURT:   All  right.   Our  criminal  matters  have

12  concluded.  You're the last -- the last show.  All right.  Pick it

13  up where you left off with your further argument on the trade --

14  excuse me -- I think foreign law.

15         MR. ISBESTER:  Your Honor, with respect to waiver, --

16         THE COURT:  Yeah.

17         MR. ISBESTER:  -- I think it's the complete quote rather

18  than the small portion of the language that was set forth in the

19  Song declaration shows that the intent was not to waive a domestic

20  Chinese law that prohibited a violation of Chinese rights.  There

21  was a reference to "blocking statutes."  "Blocking statutes" is a

22  term that has a fairly well-understood meaning, so I don't think

23  you can argue an express waiver of the -- of the Chinese trade

24  secret law.

25      Even if you could, I'd like to suggest that we be practical

1    because the argument to the senior management of my client that,

2    Yes, you have to go to jail for three years because that

3    particular argument was waived isn't going to result in documents

4    coming out that allows us to move forward in discovery.

5        The second point that Mr. Black raised related to predicate

6    facts.    What we have provided -- I apologize, but with the

7    deadline being December 31st, one of our material -- the Zhang

8    declaration did not get filed with the Court until the morning of

9    January 2nd.  I understand that Microsoft believes that that means

10   that the documents should be ignored in its entirety but, since we

11   are talking about hopefully finding a just resolution here, that

12   document itself explains that the very material sought to be

13   disclosed is in fact trade secret.

14       The Liu declaration that was filed on New Year's Eve concerns

15   the same matters.

16       So I think we have created the predicate from which the Court

17   can determine that -- and can see that there is a real concern

18   here.

19       There was a reference that Mr. Black made to we haven't done

20   anything about Taiwanese law.  Why isn't -- this is all Taiwanese

21   information and, therefore -- or a Taiwanese company and therefore

22   the China law is irrelevant.

23       No.    The customers are in China.    The manufacturing

24   facilities are in China.    The people who -- well, they were

25   subject to Chinese jurisdiction.  We might also note that the MDA

1    specified the application of Chinese national law, not Taiwanese

2    law, not Hong Kong law.

3        And, Your Honor, I've hit all four points, I believe.

4        THE COURT: All right. Thank you. I'll consider those.

5    Now, let's move on to the things you want from Microsoft in

6    discovery, if you don't mind.

7        MR. ISBESTER: Your Honor, I think our brief sets -- our

8    joint letter brief sets forth the topics fairly succinctly. The

9    issue that at the moment, given where we stand in terms of the

10   close of discovery that I'm most concerned about, is that we have

11   not yet been able to obtain the records of license negotiations to

12   enforce the Android patents -- as Microsoft has termed them --

13   against other people.

14       As you will recall, a central premise of Foxconn's position

15   in this case is that it was supposed to be the cleanup when the

16   branded companies hadn't yet been entered into -- they hadn't yet

17   entered into a license or that sort of thing, and Microsoft made

18   those -- those representations that it was an industry-wide

19   licensing program and they were going to enforce these patents

20   against who became Foxconn's customers.

21       But all we have received is a document that lists each

22   communication and the "To" and "From." I think there may also be

23   a date and there may be a company identified. And that we

24   received actually very late last night. I haven't even looked at

25   it yet. But on its face, it's clear that it is not the records

1   of the efforts to enforce the Android patents in a broad-based

2   licensing program that we requested.

3       There are other things that I think are fairly

4   straightforward, like the org. charts.  We need to know who we

5   should be going to to conduct discovery.  We would like to see --

6   and, actually, this may be argument for a later date -- we'd like

7   to see what patents Microsoft actually thinks apply to what

8   Foxconn is doing such that Foxconn needs to take a license.

9       And I believe that Microsoft's response to the first of those

10  points, the org. charts, is that it's too much hassle.  And to the

11  second, they said, We don't need to talk about the patents because

12  your motion to add a patent misuse defense has not yet been

13  granted.  Given the time frame, I think that's inefficient and

14  perhaps a risky approach.

15      So I won't raise any more points specifically about our

16  efforts to compel production.  I think the remainder was stated in

17  our brief.

18          THE COURT:  All right.  Thank you.  Let me get

19  Microsoft's response.

20          MR. SONG:  Yes, Your Honor.  Yesterday -- as we stated

21  in the joint letter, that we would produce by January 7th, which

22  was yesterday, a -- a listing of all communications with customers

23  of Hon Hai that Hon Hai identified to us where it did not result

24  in a license.  We provided that list.  It consists of over 900

25  entries.  It identifies six specific customers of Hon Hai.  It

1    identifies, for example, over 360 communications with Huawei, over

2    300 communications with Oppo, over 160 communications with Nokia,

3    so it's very explicit about who we spoke with, which company we

4    spoke with.  It identifies when the email was sent, who -- who it

5    was sent from, who received it, and the subject line.

6        So based on the sheer amount of communications itself, Your

7    Honor, I believe it shows good-faith effort to negotiate with

8    others.

9        Given -- given where the case is -- as we mentioned

10   previously, their affirmative defense and counter-claim of a

11   breach of the implied covenant of good faith and fair dealing is

12   subject to the motion to dismiss, Microsoft's motion to dismiss.

13   That will be heard in two weeks.

14       So given the need to protect the underlying communications of

15   the negotiations -- I mean, this -- if I can make an analogy, Your

16   Honor, it's like giving the other side your playbook in football.

17   Right?  When you're negotiating the licenses with other parties,

18   the details matter.  So given the need to protect that level of

19   communication -- and as expressed by the Ninth Circuit in the

20   *Robatch* (ph) case -- they recognize that these are sensitive

21   communications that disclose strategy and should be protected.

22       And so given -- balancing the needs to protect that

23   communication with where we are in the case, with a motion to

24   dismiss coming up in two weeks, that the response that Microsoft's

25   proposal of this communications list, and that we defer the issue

1    of whether the underlying communications need to be produced until

2    after the motion to dismiss is heard is entirely appropriate.

3        And the one thing I will note, Your Honor, is that there is

4    no prejudice to Hon Hai because the information that we provide is

5    based on -- is necessarily based on the list of customers that Hon

6    Hai provides to us.  And as you could well see, it was only last

7    week where they confirmed that they in fact provided the customer

8    list in mid-December.

9        You know, even now there's uncertainty as to whether that

10   list is complete, it's accurate as to how many customers it

11   consists of.  And so I would say that, you know, Hon Hai by their

12   own actions have shown that they're in no hurry to get this

13   information out.

14           THE COURT:  Did you ask Judge Koh if you could defer

15   discovery while you waited to respond to the motion to dismiss?

16           MR. SONG:  We have not, Your Honor.  But I will note,

17   though, that even the case they cite -- I believe it's the *Google*

18   case -- the Court has discretion to stay discovery on specific

19   issues.

20           THE COURT:  Oh, it does have discretion.  But that

21   discretion, just to use your football metaphor, Judge Koh is the

22   coach in this case or the owner.  Are you aware of her rulings in

23   other cases where a party has sought to defer discovery while a

24   motion to dismiss is pending?

25           MR. SONG:  Not at the moment, Your Honor.  No.

1          THE COURT:  She's the one who set the deadlines for

2    discovery in this case.

3          MR. SONG:  I see.

4          THE COURT:  My experience with her goes back many years.

5    So you didn't ask for permission to delay discovery while that

6    motion is pending, so she hasn't had an opportunity to grant it or

7    deny it.  But if you had asked her, I think she would have denied

8    it and said, Move ahead with discovery.  Get moving.

9          And in particular in the context -- the reason that would I

10   think be the answer is -- my answer, too -- you've got a

11   settlement conference scheduled next week and a request from the

12   other party to get this done so they can evaluate that information

13   for the settlement conference, number one.

14         Number two, you're asking for a lot of information and you've

15   brought a motion for sanctions with my permission asking them for

16   information.  Just to keep it fair both directions, if I'm going

17   to order them to give things to you on short order over the

18   holidays, it seems fair that I'm going to order your client to

19   provide information to them also on short order.

20         So in a case where there is a counter-claim and a motion

21   about that and discovery is being requested in both directions, I

22   do need to be fair in both directions.  If I'm going to order lots

23   of discovery, it's probably going to be coming upon both of you.

24   If I'm going to say, No discovery is appropriate in this case,

25   well, that would be fine, but it needs to go both directions.

1    So in the context for this particular discovery dispute or

2    distinct to this case, which is the timing of what's going on and

3    the fact that you're asking for discovery of quite a large volume

4    to Hon Hai, so --

5        MR. BLACK:  We understand, Your Honor.  We've collected

6    and logged all of the material, hoping that that would give us

7    some room to negotiate.  But we're prepared, obviously, to produce

8    that material.

9        They've asked -- I'm not sure whether they're asking in this

10   motion but, just to be clear, they've asked for lots of stuff

11   relating to entities that may not be customers of theirs.  We are

12   producing with respect to their current customers the material.

13   If there are other customers they identify where we might claim we

14   had an obligation to negotiate and we didn't, we'll collect that

15   information and we'll work with them on that.

16       MR. ISBESTER:  Your Honor, there's a very important

17   distinction that Mr. Black just made, and that is he's limiting

18   what Microsoft will do to companies who were customers of Foxconn.

19   And what we are seeking is information regarding Microsoft's

20   licensing program at large.

21       Because, of course, if the -- the judge -- if Judge Koh rules

22   our way, that's going to be a critical part of the patent misuse

23   defense.

24       MR. BLACK:  I don't see how that could possibly be.

25   That's not been -- that's not been teed up at any stage.  Their

1    main claim is that we should have been negotiating with their

2    customers, thereby absolving them of the license. It's not in the

3    agreement, but that's their claim and we understand there's going

4    to be discovery on it. But that has to be related to our good-

5    faith negotiations with entities who are their customers. To ask

6    us to produce material related to entities who were not customers

7    and had no commercial relationship with Hon Hai bears no relevance

8    on the case and the other claims in the case.

9        THE COURT: All right. I think you guys need some

10   direction from me, so let me give it now. We're in discovery.

11   It's a referral. So any objection to my rulings will go back to

12   Judge Koh. It must be filed within 14 days of today's date.

13       Microsoft's motion for sanctions will be granted. I will

14   have a written order explaining all the reasons why.

15       The request for attorneys' fees will be granted.

16       The objections based on foreign law are overruled. I don't

17   find that there's been a substantial justification for the failure

18   to comply with my prior court order. I don't hold current counsel

19   in personal responsibility for that because they arrived on

20   December 6. The sanctions will be against their client. And

21   further details as to what I'm ordering will come in writing.

22       Second, the settlement conference scheduled for next week is

23   vacated. From both directions, neither party appears ready for a

24   meaningful settlement conference, given the need for a lot more

25   discovery and shared information between the parties to make that

1  an effective conference to use your time well, your clients' time

2  well, and my time well.  There needs to be a lot more progress in

3  sharing information with each other before the case is positioned

4  to have a meaningful settlement conference.

5      And I will communicate with Judge Koh whether the settlement

6  referral should be vacated in its entirety, but I'm vacating the

7  conference for next week now.  Based on what I've heard today,

8  we're just not ready for that conference to make sense.

9          MR. BLACK:  Your Honor, I can just say from Microsoft's

10  perspective, I think we would be disappointed with that.

11         THE COURT:  Well, I understand the disappointment.  But

12  about five minutes ago, I was hearing that information that the

13  other party's requested has not been provided, so they bear

14  responsibility for that.  We'll schedule something further down

15  the road if there's progress made in discovery, but we're not

16  ready for it right now.

17     I do intend to grant the discovery requests in the other

18  direction.  The contours of that, I'm going to need to put in

19  writing.  I encourage you to continue to confer with each other in

20  both directions as to what you really need.  There's a lot of

21  things, which I am not in a position to well know.

22     For example, Microsoft is requesting information about 35

23  customers who you know nothing about.  You might know who they

24  are, but as far as the detail underneath.  There's a suggestion of

25  spoliation or missing documents.  Again, I don't have anything

more than an allegation.  Which of those are the most important ones, which are less important, I have no idea.  You might prioritize and say -- and you've done some prioritizing -- but to identify the most important ones and to focus on those.  You may be entitled to all of them.  But as far as what you need immediately, perhaps you can prioritize.  Goes the other direction, too.  You've had some dispute here, which I've heard about the parameters of what Hon Hai is seeking from Microsoft, but I don't sense there's been a very detailed back-and-forth about which are the most important ones and what might be a reasonable compromise to get things moving.

And in order to get some movement going towards settlement, there needs to be more collaboration and cooperation in the sharing of information.  And I'm not going into any detail about our settlement conversations, but the colloquy about who's going to be there is further supportive of neither party taking this very seriously in the settlement context.

Overall, if I were to put this in animal terms, it's kind of an ostrich approach to discovery.  You bury your head, hope this will pass, delay, object, wait for a court order, object some more, mutual -- there's an appeal or maybe an appeal from there and a writ as part of the process.  You've got a right to those things, so you can engage in that, but I advise both parties to educate yourself with Judge Koh's history of request of extensions and her expectations are to get this done by the deadlines that

1  she set, and I go along with her approach.  I find it to be an

2  effective case management technique of getting it done.

3      So we'll have a settlement conference when you can get this

4  stuff done.  But there's a lot -- there's a lot of work to be

5  done.  It's a case of, as you said, great magnitude to each party

6  and substantial amount of money is at stake, and also reputations

7  and relationships with customers and suppliers and competitors and

8  -- so I know it's not easy and I'm not pretending it's easy from

9  the business perspective.  But from a legal perspective, the

10 lawyer perspective, these things need to get done in order to get

11 the case in a position to resolve.  And so we'll get it done.

12     And I thank you for your patience in working on it.

13         MR. ISBESTER:  Your Honor, may I make a suggestion on

14 the case management?

15         THE COURT:  Yes.

16         MR. ISBESTER:  And that is that we -- the five of us --

17 reconvene by phone at some period down the road, and I would hope

18 that at that point the parties would be able to reassure the Court

19 that we have engaged in sufficient discovery, knew our positions

20 and the other side's positions well enough that it would warrant

21 your --

22         THE COURT:  Yes.

23         MR. ISBESTER:  -- spending the day with us to see if you

24 could help us to get to settlement.

25         THE COURT:  I come from Missouri which is the "Show Me

1    State."  I'm going to want you to show me, not just give me
2    optimism that you're going to be in a position, but I want to see
3    some evidence of it.  So that's going to be the voluntary -- and
4    now  we're  past  voluntary,  but  the  sharing  of  information,
5    assurance of the other parties that you've got people at a higher
6    level in the organizations who are attending to this and wanting
7    to take it more seriously, that you're not running from it.  And
8    I don't mean any of the counsel present are taking that position,
9    but the clients appear to be kicking this can down the road -- I'm
10   mixing my metaphors now -- but there needs to be engagement at a
11   higher level to get these problems solved.
12        And of course you've got options to go solve these problems
13   with someone else's help, but I'm optimistic that you and I can
14   work on it together, and so I will -- I've got to fashion what the
15   timing is of that.  I will take you up on your proposal and we'll
16   schedule a further conference later in the month to see how things
17   are going.  I don't want to put you to the cost of coming here in
18   person and waiting around until I've got an update from you that
19   things are concluded.
20        So I'm going to set some deadlines in my written order on the
21   motions for discovery.  I'll alert Judge Koh that we're not
22   meeting next week, and she may wish to speak with you further
23   about  alternatives  to  the  current  schedule.   That's  not  a
24   suggestion that she's going to change the schedule, but to give
25   you further encouragement to get moving faster.

1      All right.   Thanks for your attention.

2            ALL:   [Thank you.]

3            THE COURT:   Written orders will come.   Have a good

4   afternoon.   Safe travels.

5         (Proceedings adjourned at 4:42 p.m.)

6

7            I, Peggy Schuerger, certify that the foregoing is a

8   correct transcript from the official electronic sound recording

9   provided to me of the proceedings in the above-entitled matter.

10

11   _____        January 16, 2020
    Signature of Approved Transcriber         Date

12
    Peggy Schuerger
13  *Ad Hoc Reporting*
    Approved Transcription Provider
14  for the U.S. District Court,
    Northern District of California
15

16

17

18

19

20

21

22

23

24

25