KILPATRICK TOWNSEND & STOCKTON LLP
A. JAMES ISBESTER (State Bar No. 129820)
jisbester@kilpatricktownsend.com
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
Telephone: (415) 576-0200
Facsimile: (415) 576-0300

KRISTOPHER L. REED (State Bar No. 235518)
kreed@kilpatricktownsend.com
1400 Wewatta St., Ste. 600
Denver, CO 80202
Telephone: (303) 571-4000
Facsimile: (303) 571-4321

GRACE L. PAN (admitted *pro hac vice*)
gpan@kilpatricktownsend.com
1114 Avenue of the Americas
New York, NY 10036
Telephone: (212) 775-8844
Facsimile: (212) 775-8800

Attorneys for Defendant and Counter-claimant
HON HAI PRECISION INDUSTRY CO., LTD.,
trading as FOXCONN TECHNOLOGY GROUP.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION and MICROSOFT LICENSING, GP, <br><br> Plaintiffs, <br><br> v. <br><br> HON HAI PRECISION INDUSTRY CO., LTD., trading as FOXCONN TECHNOLOGY GROUP, <br><br> Defendant. <br> AND RELATED COUNTERCLAIMS | Case No.  5:19-cv-01279-LHK <br><br> **DEFENDANT HON HAI PRECISION INDUSTRY CO., LTD'S FIRST AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIMS** <br><br> JURY TRIAL DEMANDED |

Defendant Hon Hai Precision Industry Co., Ltd. ("Hon Hai") hereby submits its first

amended answer, affirmative defenses, and counterclaims in response to the Complaint filed by

Microsoft Corp. and Microsoft Licensing, GP (collectively, "Microsoft"). Hon Hai denies each and every allegation of the Complaint not specifically admitted herein. Hon Hai repeats the section headings of the Complaint below for convenience without admitting any facts expressly or impliedly stated therein.

## HON HAI'S ANSWER

### NATURE OF THE ACTION

1.      Paragraph 1 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Hon Hai admits that the Complaint purports to assert a claim for breach of contract against Hon Hai. Except as so admitted, Hon Hai denies the allegations of paragraph 1.

2.      Hon Hai lacks sufficient knowledge to admit or deny the allegations of paragraph 2 of the Complaint, and on that basis denies them.

3.      Hon Hai admits that it is also known to some by the name Foxconn; its business activities include electronics contract manufacturing; it is incorporated in Taiwan; and it (and/or its direct or indirect subsidiaries) engages in, among other things, the manufacture, assembly, and/or sale of electronic equipment and products, including, but not limited to, computers and communication devices. Except as so admitted, Hon Hai denies the allegations of paragraph 3 of the Complaint.

4.      Hon Hai lacks sufficient knowledge to admit or deny the allegations of paragraph 4 of the Complaint, and on that basis denies them.

5.      Paragraph 5 of the Complaint contains conclusions of law and other statements to which no response is required. To the extent a response is required, Hon Hai admits that in 2013, representatives of Microsoft and Hon Hai signed a "Confidential Patent License Agreement" (the "PLA"); and Exhibit 1 to the Complaint appears to include a true and correct copy of the PLA and the exhibits thereto, as well as other documents. Except as so admitted, Hon Hai denies the allegations of paragraph 5. Hon Hai refers the Court to the PLA for a full, complete, and accurate statement of its terms.

1         6.      Hon Hai admits that some of the products it has sold since 2013 fall within the

2   PLA's definition of "Covered Products." Except as so admitted, Hon Hai denies the allegations of

3   paragraph 6 of the Complaint.

4         7.      Hon Hai admits that in 2017, Microsoft notified Hon Hai that it wanted to conduct an

5   audit pursuant to the PLA; Microsoft selected an accounting firm to conduct the audit; and after initial

6   negotiations with Microsoft, Hon Hai declined to allow the audit to proceed in view of, among other

7   things, Microsoft's breaches of the PLA and its conduct rendering the PLA unenforceable. Except as

8   so admitted, Hon Hai denies the allegations of paragraph 7 of the Complaint.

9         8.      Hon Hai admits that Microsoft sent Hon Hai a letter in March 2018 stating, in

10  part, that Microsoft was "invok[ing] the escalation procedures under Section 7.11 of the PLA";

11  Hon Hai thereafter negotiated with Microsoft in good faith; and Hon Hai eventually declined to

12  allow the requested audit to proceed, declined to provide requested sales and manufacturing

13  information, and proposed to renegotiate the PLA in view of, among other things, Microsoft's

14  breaches of the PLA and its conduct rendering the PLA unenforceable. Except as so admitted,

15  Hon Hai denies the allegations of paragraph 8 of the Complaint.

16        9.      Hon Hai admits that the PLA provides that "[w]ith respect to all civil actions or

17  other legal or equitable proceedings directly arising between the Parties or any of their Affiliates

18  under this Agreement, the Parties and their Affiliates consent to exclusive jurisdiction and venue in

19  the United States District Court for the Northern District of California (the 'Forum'), unless no

20  federal jurisdiction exists, in which case the Parties and their Affiliates consent to exclusive

21  jurisdiction and venue in the state courts in the Northern District of California (the 'Alternate

22  Forum')." Except as so admitted, Hon Hai denies the allegations of paragraph 9 of the Complaint.

23                                                            **PARTIES**

24        10.      Hon Hai admits the allegations of paragraph 10 of the Complaint.

25        11.      Hon Hai lacks sufficient knowledge to admit or deny the allegations of paragraph 11

26  of the Complaint, and on that basis denies them.

27

28

12.     Hon Hai admits that it is a Taiwanese corporation with its principal place of business at No. 2 Ziyou St., Tucheng Dist., New Taipei City 256, Taiwan (R.O.C.). Except as so admitted, Hon Hai denies the allegations of paragraph 12 of the Complaint.

**JURISDICTION AND VENUE**

13.     Paragraph 13 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Hon Hai denies the allegations of paragraph 13.

14.     Paragraph 14 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, denies the allegations of paragraph 14.

**GENERAL ALLEGATIONS**

15.     Hon Hai admits that Hon Hai and/or its subsidiaries have manufactured, including in factories in mainland China, certain consumer electronics devices for certain companies to sell under their own brand names; and Hon Hai and/or its subsidiaries have manufactured certain Android devices by assembling them, installing third party software, and delivering the assembled devices. Except as so admitted, Hon Hai denies the allegations of paragraph 15 of the Complaint.

16.     Hon Hai admits that Microsoft and Hon Hai signed the PLA on or before April 1, 2013; the PLA states it is "effective as of January 1, 2013"; and Microsoft and Hon Hai were represented by counsel in connection with the contract negotiations. Except as so admitted, Hon Hai denies the allegations of paragraph 16 of the Complaint. Hon Hai refers the Court to the PLA for a full, complete, and accurate statement of its terms.

17.     Hon Hai denies the allegations of paragraph 17 of the Complaint. Hon Hai refers the Court to the PLA for a full, complete, and accurate statement of its terms.

18.     Hon Hai denies the allegations of paragraph 18 of the Complaint. Hon Hai refers the Court to the PLA for a full, complete, and accurate statement of its terms.

19.     Hon Hai denies the allegations of paragraph 19 of the Complaint. Hon Hai refers the Court to the PLA for a full, complete, and accurate statement of its terms.

20.     Hon Hai denies the allegations of paragraph 20 of the Complaint. Hon Hai refers the Court to the PLA for a full, complete, and accurate statement of its terms.

21.     Hon Hai admits that Microsoft has requested an audit pursuant to the PLA. Except as so admitted, Hon Hai denies the allegations of paragraph 21 of the Complaint. Hon Hai refers the Court to the PLA for a full, complete, and accurate statement of its terms.

22.     Hon Hai denies the allegations of paragraph 22 of the Complaint. Hon Hai refers the Court to the PLA for a full, complete, and accurate statement of its terms.

23.     Hon Hai admits that in 2017 and 2018, Microsoft requested an audit and certain royalty reports pursuant to the PLA; Hon Hai denied those requests in view of, among other things, Microsoft's breaches of the PLA and its conduct rendering the PLA unenforceable; Microsoft sent a letter to Hon Hai dated March 21, 2018, with a subject line that stated, in part, "Escalation Notice"; representatives of Microsoft and Hon Hai thereafter spoke by phone regarding the dispute; and the parties made efforts for several more months to resolve the dispute. Except as so admitted, Hon Hai denies the allegations of paragraph 23 of the Complaint. Hon Hai refers the Court to the PLA for a full, complete, and accurate statement of its terms.

24.     Hon Hai admits that it did not submit royalty reports to Microsoft pursuant to the PLA for calendar years 2015-2018, inclusive. Except as so admitted, Hon Hai denies the allegations of paragraph 24 of the Complaint.

25.     Hon Hai admits that Microsoft sent a letter to Hon Hai dated March 31, 2017, stating, in part, that "Microsoft is exercising its right to conduct an audit of Hon Hai" pursuant to Section 4.2.4 of the PLA; Hon Hai initially informed Microsoft that it would not object to Microsoft's selection of Deloitte & Touche ("Deloitte") for purposes of the requested audit; Deloitte and Hon Hai signed a non-disclosure agreement for purposes of the requested audit; Deloitte sent a letter to Hon Hai dated October 16, 2017, identifying certain records and information that Deloitte said it wanted to see in connection with the requested audit; and Hon Hai ultimately declined to provide audit information to Deloitte in view of, among other things, Microsoft's breaches of the PLA and its conduct rendering the PLA unenforceable. Except as so admitted, Hon Hai denies the allegations of paragraph 25 of the Complaint.

26.     Hon Hai admits that Microsoft sent a letter to Hon Hai dated March 21, 2018 with a subject line that stated, in part, "Escalation Notice"; the March 21, 2018 letter from Microsoft to

1   Hon Hai demanded, in part, that Hon Hai "fully cooperat[e] with Deloitte's audit team…."; and

2   Hon Hai ultimately declined to provide audit information to Deloitte in view of, among other things,

3   Microsoft's breaches of the PLA and its conduct rendering the PLA unenforceable. Except as so

4   admitted, Hon Hai denies the allegations of paragraph 26 of the Complaint.

5          27.    Hon Hai admits that on May 10, 2018, Microsoft sent an email to Hon Hai

6   demanding, as a condition of engaging with Hon Hai "to better understand Hon Hai's concerns

7   regarding the [PLA] and to explore ways to address those concerns," that "Hon Hai must first

8   provide Microsoft with information that will allow it to determine the amount of royalties owed

9   under the Agreement for Hon Hai's activities through the end of 2017." Hon Hai further admits that

10  Hon Hai declined to provide such information to Microsoft in view of, among other things,

11  Microsoft's breaches of the PLA, its conduct rendering the PLA unenforceable, and the

12  confidentiality of the information requested. Except as so admitted, Hon Hai denies the allegations

13  of paragraph 27 of the Complaint.

14         28.    Hon Hai denies the allegations of paragraph 28 of the Complaint.

15                      **COUNT ONE: BREACH OF CONTRACT**

16         29.    Hon Hai incorporates by reference its answers in Paragraphs 1 to 28 above,

17  inclusive, as if fully set forth herein.

18         30.    Hon Hai denies the allegations of paragraph 30 of the Complaint.

19         31.    Hon Hai denies the allegations of paragraph 31 of the Complaint.

20         32.    Hon Hai denies the allegations of paragraph 32 of the Complaint.

21         33.    Hon Hai denies the allegations of paragraph 33 of the Complaint.

22                      **HON HAI'S AFFIRMATIVE DEFENSES**

23                          **FIRST AFFIRMATIVE DEFENSE**
                                **(Failure to Mitigate)**
24

25         34.    Microsoft's claims are barred and/or its remedies are limited, in whole or in part, by

26  Microsoft's failure to mitigate its alleged damages, including, without limitation, as set forth in Hon

27  Hai's other defenses and counterclaims, *infra*, which Hon Hai incorporates herein by reference.  By

28  way of example, Hon Hai's business model is to design and manufacture products branded for

1   resale by its customers, most of whom are major electronics corporations. The identities of

2   electronics corporations that sell products that run the Android or Chrome operating systems are

3   well known and Microsoft could easily have filed a complaint for any infringement of its patents

4   against these companies, entered into patent licenses with them directly, and collected the royalties

5   Microsoft believes to be appropriate from the branded electronics companies. Instead, Microsoft

6   appears to have made little to no effort to license the branded electronics companies who actually

7   acquire and sell the products manufactured by Hon Hai.

**SECOND AFFIRMATIVE DEFENSE**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing / Bad Faith)**

10   35.   Microsoft's claims are barred, in whole or in part, by Microsoft's bad faith breach of

11   the implied covenant of good faith and fair dealing, which has frustrated and interfered with Hon

12   Hai's enjoyment of the intended benefits of the PLA and Hon Hai's ability to comply with its

13   alleged royalty-related obligations thereunder.

14   36.   A covenant of good faith and fair dealing is implied in the PLA, as in any contract

15   under applicable law. Pursuant to the implied covenant of good faith and fair dealing, Microsoft was

16   obligated to take reasonable and expected steps to allow Hon Hai to enjoy the benefits of the PLA

17   and to accomplish the PLA's purposes. Hon Hai incorporates by reference the PLA in its entirety, a

18   copy of which is included in Exhibit 1 to the Complaint.

19   37.   On many occasions during the PLA negotiations, Hon Hai stressed to Microsoft that

20   it should seek Android licenses and corresponding royalties from the brand name companies that

21   sell Android devices rather than from Hon Hai and its subsidiaries, which merely manufacture

22   Android devices for brand name companies. Hon Hai explained that, unlike Microsoft, Hon Hai and

23   its subsidiaries lacked the leverage to get most of their brand name customers—especially in

24   China—to bear the cost of the royalties demanded by Microsoft, particularly if Hon Hai's

25   competitors were not subject to comparable royalty obligations. Hon Hai also explained that if Hon

26   Hai and its subsidiaries were unable to pass the royalties through to their brand name customers,

27   their pricing structures and profit margins would make paying the royalties financially untenable.

28

38.     Microsoft sought to allay these concerns by (1) providing in the PLA that Hon Hai did not have to pay royalties for Android devices sold to brand name companies that paid royalties to Microsoft under their own Android licenses, (2) listing known Android licensees in the PLA and providing in the PLA that Microsoft was obligated to identify new Android licensees from time to time upon request, (3) representing that it was engaged with other Android manufacturers and brand name companies in an effort to get them to sign licenses with Microsoft, (4) promising that it would continue those efforts, and (5) agreeing to certain other provisions to ease the burden on Hon Hai during the initial years of the PLA.

39.     For example, on or about May 6, 2011 (Taipei time), representatives of Microsoft and Hon Hai participated in a conference call regarding the Android license negotiations. During that call, Microsoft representatives stated that Microsoft was negotiating with other Android manufacturers and brand name companies such that Hon Hai would face a level playing field.

40.     For example, on or about March 26, 2012, Leo Novakoski and Robert Braun of Microsoft met with Hon Hai's outside counsel, David McCombs of Haynes & Boone, LLP, in Irvine, California. At that meeting, Microsoft's representatives told Mr. McCombs that Microsoft was engaged in active discussions with almost all Android industry participants in China, Taiwan, and Europe and that those discussions were producing new licensees.

41.     During the PLA negotiations, to address Hon Hai's concerns described above, Microsoft assured Hon Hai that after the PLA was signed it would continue its efforts to get other Android manufacturers and brand name companies (including in China) to sign Android license agreements.

42.     The PLA memorializes the parties' agreement to minimize Hon Hai's royalty obligations by, among other things, excluding Designated Units from those obligations, whereby Designated Units are units sold to brand name companies that have Android license agreements with Microsoft (provided that the brand name companies pay the royalties they owe under the agreements). This agreement reflected the parties' understanding, as discussed during the PLA negotiations, that the last entity in the supply chain—namely, a brand name customer—was the most appropriate entity to pay Android royalties. The PLA also memorialized the parties'

agreement that Microsoft would continue its efforts to get additional Android players to sign license agreements with Microsoft by, among other things, providing that Microsoft would identify new licensees from time to time upon request and allow Hon Hai's sales to those new licensees to be excluded from Hon Hai's royalty obligations.

43.     Section 4.7.4 of the PLA, for example, requires—in business terms—Microsoft to license brand name sellers of Android products. It gives Hon Hai the right to request from Microsoft the identity of any brand name entity that executed an Android license with Microsoft after the effective date of the PLA. If Microsoft indeed licensed such a company, the process would result in Exhibit C to the PLA being deemed amended with the addition of that company. The business intent of the parties in agreeing to this section (as well as Section 4.7.1) was to reduce to writing Microsoft's promises to identify new Android licensees periodically, and to identify new Android licensees that Hon Hai identified, such that Hon Hai could avoid paying royalties on sales to those licensees. Indeed, Hon Hai could only benefit from Microsoft's promise to exempt Hon Hai from paying royalties on sales to Microsoft's new Android licensees if Microsoft actually signed up new Android licensees after the parties executed the PLA.

44.     As Microsoft has known at all relevant times, including based on conversations with Hon Hai before and after the PLA was signed, the PLA's purposes could be achieved and Hon Hai could enjoy the benefits of the above-described PLA provisions only if Microsoft continued its efforts, in good faith, to sign up new Android licensees. Microsoft was and remains in a unique position to create the conditions under which Hon Hai's customers would agree to pay Android royalties, either to Hon Hai or directly to Microsoft, because, on information and belief, Microsoft is and at all relevant times has been the sole owner of its alleged Android patent portfolio and thus only Microsoft can enforce (or threaten to enforce) its patent rights against alleged users of the claimed inventions thereof, including Hon Hai's competitors and brand name customers.

45.     Hon Hai and its subsidiaries have made reasonable and good faith efforts to persuade their brand name customers to allow Hon Hai and its subsidiaries to pass on to the customers the cost of the royalties provided by the PLA. Most of the customers have refused. Hon Hai and its subsidiaries simply lack the leverage to get most of their brand name customers—especially in

China—to bear the cost of the royalties demanded by Microsoft without support from Microsoft, particularly when the customers can simply turn to Hon Hai's competitors who have not signed Android license agreements.

46.     On information and belief, Microsoft breached the implied covenant of good faith and fair dealing by failing to use reasonable or good faith efforts to pursue Android license agreements with most of Hon Hai's competitors and brand name customers (particularly in China) after the PLA was signed, instead unreasonably shifting to Hon Hai and its subsidiaries the entire burden of either paying royalties or persuading their customers to do so.

47.     Hon Hai has, from time to time, provided information to Microsoft to facilitate Microsoft's efforts to pursue Android license agreements with other Android players. However, on information and belief, Microsoft in most cases did not act on that information and/or unreasonably delayed in acting on that information.

48.     For example, on or about June 20, 2013, Peri Wang of Hon Hai sent an email to Microsoft identifying certain "Chinese contract manufacturers" that Hon Hai believed were manufacturing Android products for "Chinese mobile phone brand name companies." Ms. Wang stated that she was providing this information to Microsoft because "[d]uring our previous meetings, we emphasized that our competitiveness will be impaired if few Chinese contract manufacturers are licensed" and "MS [Microsoft] agreed to improve the ecosystem of this license program in China and increase such licensees in the near future." On information and belief, Microsoft did not dispute the accuracy of Ms. Wang's email yet failed to make reasonable or good faith efforts to pursue Android license discussions with the named Hon Hai competitors, or others.

49.     As another example, on or about January 2, 2014, Justin Huang of Chiun Mai Communication Systems, Inc., a Hon Hai affiliate, sent an email to Microsoft identifying certain Hon Hai brand name customers and their "2nd source supplier[s]," all of whom Hon Hai believed were not Microsoft licensees. On or about January 16, 2014, Conrad Huang of Hon Hai sent a follow-up email to Microsoft reiterating that (1) Hon Hai could not get its brand name customers to agree to let Hon Hai pass on Android royalties to them "if Microsoft do[es] not engage in any dialogue with them" and "if we are handicapped against our competition," whom Microsoft had

failed to sign up to Android licenses, and (2) Hon Hai's purported royalty obligations under the PLA would soon become financially untenable without support from Microsoft. Yet, on information and belief, Microsoft thereafter continued its failure to make reasonable or good faith efforts to pursue Android license discussions with the named Hon Hai brand name customers, "2d source supplier[s]," or others.

50.     Hon Hai has suffered injury as a result of Microsoft's breaches, including claims by Microsoft for payment of excessive royalties. Microsoft cannot recover royalties from Hon Hai when those royalties are purportedly owed by Hon Hai under the PLA solely due to Microsoft's own breaches and bad faith conduct and/or omissions.

## THIRD AFFIRMATIVE DEFENSE
### (Failure of Consideration)

51.     Microsoft's claims are barred, in whole or in part, by a material failure of consideration, including for the reasons and based on the facts and allegations set forth in Hon Hai's Second Affirmative Defense, which Hon Hai incorporates herein by reference. A further material failure of consideration arises from the fact that Microsoft has provided no license, per the terms of the Agreement sections 3.1 and 4.7.1, on product for which no device fee has been paid.

## FOURTH AFFIRMATIVE DEFENSE
### (Frustration of Performance)

52.     Microsoft's claims are barred, in whole or in part, because Microsoft's actions and omissions prevented, frustrated, and obstructed Hon Hai's performance under the PLA, including for the reasons and based on the facts and allegations set forth in Hon Hai's Second Affirmative Defense, which Hon Hai incorporates herein by reference. But for Microsoft's actions and omissions, Hon Hai was ready, willing, and able to perform its contractual obligations, if any.

## FIFTH AFFIRMATIVE DEFENSE
### (Fraudulent Inducement)

53.     Microsoft's claims are barred, in whole or in part, by Microsoft's fraudulent misrepresentations that were intended to, and in fact did, induce Hon Hai to enter into the PLA and that render the PLA subject to rescission.

54.     On or about March 26, 2012, Leo Novakoski and Robert Braun of Microsoft met with Hon Hai's outside counsel, David McCombs of Haynes & Boone, LLP, in Irvine, California. At that meeting, one of Microsoft's representatives—on information and belief, Mr. Braun—told Mr. McCombs that Microsoft's Android royalty rates were well set with other ODMs, that Microsoft did not have flexibility on those rates, and that Microsoft would provide its current pricing schedule to Hon Hai in its next draft of the PLA (collectively, "Representation #1").

55.     Microsoft provided the next draft of the PLA to Hon Hai on or about May 16, 2012. The draft was dated May 14, 2012. With only two exceptions that resulted in small reductions in rates, the royalty rates for Smartphones and General Purpose Consumer Devices in that draft were the same as in the final PLA.

56.     The two exceptions do not change the outcome of Hon Hai's Fraudulent Inducement defense and related counterclaim. It cannot be assumed that the small reduction in rates reflects Hon Hai's ability or Microsoft's willingness to negotiate the rates downward. To the contrary, Microsoft implemented the small rate change as a token gesture when it imposed a much more onerous provision on Hon Hai in early 2013.

57.     On information and belief, Microsoft made Representation #1 with the intent of causing Hon Hai to believe—and Hon Hai reasonably did believe—that Microsoft was offering Hon Hai substantially the same Android royalty rates as Microsoft had granted to prior Microsoft Android licensees and that those royalty rates would be set forth in the next draft of the PLA (*i.e.*, the draft dated May 14, 2012).

58.     On or about August 9, 2012, Mr. Novakoski and Mr. Braun of Microsoft met with several representatives of Hon Hai and/or Hon Hai subsidiaries in Taipei. The Hon Hai representatives included Justin Huang, John Hui, Danny Teng, Vivian Thai, Peri Wang, and Peter Yang. At that meeting, one of Microsoft's representatives—on information and belief, Mr. Braun—represented to Hon Hai, in response to Hon Hai's argument that Microsoft's proposed Android royalty rates were too high, that Microsoft's prior licensees had set the pricing and Microsoft would not play favorites (collectively, "Representation #2").

59.     On information and belief, Microsoft made Representation #2 with the intent of causing Hon Hai to believe—and Hon Hai reasonably did believe—that Microsoft was offering Hon Hai substantially the same Android royalty rates as Microsoft had granted to prior Microsoft Android licensees.

60.     At the time of the August 9, 2012 meeting, the May 14, 2012 draft of the PLA was still the most recent draft that had been exchanged between the parties.

61.     On or about August 10, 2012, Microsoft provided a new draft of the PLA to Hon Hai that contained the same royalty rates as the May 14, 2012 draft.

62.     On information and belief, Representations #1 and #2 were false in that Microsoft had previously entered into one or more Android license agreements with other licensees containing materially better royalty rates.

63.     On information and belief, Microsoft made Representations #1 and #2 to Hon Hai knowing that the representations were false, or exhibiting recklessness or negligence as to their truth or falsity, for the purpose and with the intent of inducing Hon Hai (a) to accept the royalty rates in the May 14, 2012 and August 10, 2012 drafts, (b) to stop attempting to negotiate for lower rates, and (c) to enter into the PLA containing mostly the same rates.

64.     Representations #1 and #2 were material to Hon Hai in that, as Hon Hai repeatedly informed Microsoft during the PLA negotiations, Hon Hai needed comparable royalty rates in order not to be placed at a competitive disadvantage with other manufacturers of Android devices. Hon Hai relied on its belief that it was being granted comparable royalty rates in deciding to stop pressing Microsoft to lower the rates and to enter into the PLA.

65.     Microsoft never corrected its false representations, stating only that it would not agree to a most-favored-nation (*i.e.*, forward-looking) provision.

66.     This is an important distinction about the most-favored-nation provision. The eventual deletion of that provision from the PLA does not undercut Hon Hai's justifiable reliance on Microsoft's misrepresentations. The *forward-looking* nature of the provision would have assured Hon Hai that it would benefit from more favorable terms granted to as-yet unknown future licensees.  The removal of the provision does not impact the reasonableness of Hon Hai's reliance

on Microsoft's *backwards-looking* misrepresentations that indicated Hon Hai was receiving the same royalty rates as pre-PLA licensees.

67.     Hon Hai has suffered injury resulting in monetary damage as a result of Microsoft's misrepresentations, including claims by Microsoft for payment of excessive royalties, legal fees associated with defending against Microsoft's royalty claims, and reputational harm.

68.     Hon Hai hereby gives notice of its intent to rescind the PLA based on Microsoft's false Representations #1 and #2 described above. Microsoft previously had constructive notice of Hon Hai's intent to rescind the PLA based on, *inter alia*, correspondence between the parties from 2017 to 2019 and the fact that Hon Hai did not submit royalty reports to Microsoft pursuant to the PLA for the period 2015 to the present. Hon Hai received no money, property, or other value pursuant to the PLA requiring restoration to Microsoft; but to the extent this allegation is found not to be true, Hon Hai offers to restore to Microsoft any value received by Hon Hai under the PLA, upon the condition that Microsoft do likewise.

69.     Additional factual allegations relevant to this defense are set forth in Hon Hai's counterclaims, *infra*, which Hon Hai incorporates herein by reference.

**SIXTH AFFIRMATIVE DEFENSE**
**(Mistake of Fact)**

70.     For the reasons and based on the facts and allegations set forth Hon Hai's Fifth Affirmative Defense, which Hon Hai incorporates herein by reference, Microsoft's claims are barred, in whole or in part, by virtue of a mistake of fact; namely, the fact of whether Microsoft had granted prior Android licensees materially better royalty rates than Hon Hai. But for Hon Hai's mistake of fact, it would not have entered into the PLA. In addition, Microsoft's claims are barred, in whole or in part, by virtue of another mistake of fact: namely the fact of whether Microsoft had a licensing program that it was pursuing against all major electronics corporations offering product that operated on the Android or Chrome operating systems. It was Hon Hai's understanding that Microsoft did have such a program, Microsoft knew that Hon Hai held that understanding, yet Microsoft did not have any such program and did not dissuade Hon Hai from believing that it did. Had Hon Hai known that Microsoft was not going to negotiate licenses with the branded companies

that make up its customers, Hon Hai would not have entered into the PLA. As one example of Microsoft's inactive licensing efforts, Microsoft listed two URLs in the "Covered Patents" definition describing prior licensing programs for other uncovered patents. However, although both URLs describing Microsoft licensing efforts for these other patents were active at some point during the period the parties negotiated the PLA, shortly after the PLA was signed by the parties, Microsoft removed both URLs and apparently discontinued those licensing efforts.

## SEVENTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

71.     Microsoft's claims are barred, in whole or in part, by the applicable statute(s) of limitations, including, but not limited to, the four-year statute of limitations of California Code of Civil Procedure section 337(1).

## EIGHTH AFFIRMATIVE DEFENSE
### (Setoff)

72.     Microsoft's claimed damages, if any, should be set off, in whole or in part, by the damages to Hon Hai for which Microsoft is liable, as pled in Hon Hai's counterclaims.

## NINTH AFFIRMATIVE DEFENSE
### (Unenforceability)

73.     A contract that is so ambiguous that it reflects no meeting of the minds of the contracting parties is void and unenforceable. The PLA is ambiguous in certain, specific instances such that cumulatively, it is not possible to conclude that the parties had, in fact, reached an agreement. For example, the definition of the licensed products appears to include laptop computers that can run the Chrome browser app. This would include any laptop computer running a current version of the Windows operating system. Yet the contract also suggests that it is limited to devices running the Android or Chrome operating systems.

74.     Similarly, the definition of "Covered Patents" in the PLA is impermissibly vague – it identifies all Microsoft patents except for those excluded under two URLs owned by Microsoft. However neither of those URLs identified any patents by patent number such that Hon Hai and Microsoft could agree on which patents were included and which were excluded from the license.

Further, Microsoft deleted the web pages located at these URLs around the time the parties signed the PLA, further obscuring the precise scope of coverage. In addition, the Android operating system and Chrome browser have passed through many versions and major releases since the parties signed the PLA. Microsoft patents that may have applied to past versions of the Android operating systems and Chrome browser may not apply to later versions of the Android operating system and Chrome browser. It is not possible to tell from the PLA which patents apply to each version of the Android operating system and Chrome browser such that the parties could not know the scope of the license.

75.     The scope of the licensed product and obligations of the license are such material terms of a license that the ambiguity as to those provisions of the PLA renders the PLA void and unenforceable.

**TENTH AFFIRMATIVE DEFENSE**
**(Patent Misuse)**

76.     Microsoft is precluded from enforcement of the PLA or any of its licensed patents by virtue of its patent misuse. Microsoft is one of the world's largest technology firms, and is one of only a couple of companies that has attained a market value of one trillion dollars.[1] Microsoft holds a correspondingly impressive number of patents. Currently, Microsoft holds approximately 53,634 U.S. patents and patent applications and many times that number outside the United States.[2] The vast majority of Microsoft's patents relate to software and many of those specifically to operating system software or features related thereto.

77.     There exists a market for the intellectual property necessary to develop or use operating system software. While there has been an effort to develop alternatives to proprietary operating systems through open source products such as Linux, even an open source solution may, in turn, practice technology that is covered by a patent.

---

[1] *See* https://www.marketwatch.com/story/microsoft-market-cap-tops-1-trillion-as-stock-surges-to-record-high-2019-06-07 (last visited March 23, 2020).

[2] *See* https://insights.patsnap.com/reports/company/0b73b094-c568-11e5-ad4a-1916ce9f2421 (last visited March 23, 2020).

78.     Many companies offer licenses to the intellectual property necessary to develop or use operating system software. But in this market, Microsoft is by far the biggest player. This is particularly true of the Android sub-market. While Google originally developed and continues to maintain Android, because Google includes a license to any Google patents in its grant of an Android license, Microsoft remains the largest patent holder in the Android sub-market. Indeed, by Microsoft's own averments, one may not install the Android operating system on a piece of consumer electronics without infringing at least some of its patents. Microsoft therefore has market power in the market for the intellectual property necessary to, in particular, the Android sub-market.

79.     But Microsoft does not have such comprehensive patents that it would not be possible to avoid them, at least in some markets. And Microsoft cannot know whether future versions of Android and Chrome will continue to infringe any of its patents or only a much smaller portion of its patents. In other words, depending upon the features and the geography, some products running the Android operating system will not infringe Microsoft patents or will infringe only certain Microsoft patents in certain jurisdictions.

80.     Microsoft used its power in the market for Android operating system intellectual property to force manufacturers such as Hon Hai to take a license that is disconnected from the actual patents Microsoft holds. Microsoft used its market power to expand both the geographic and product scope of the license beyond that covered by its patents.

81.     Microsoft misuses its patents to expand the geographic scope of its patents beyond the United States. For example, when Hon Hai delivers a product to the United States it pays the exact same device fee as when it delivers a product to Singapore. Yet Microsoft has far fewer and far less valuable patents in Singapore than it has in the United States. Microsoft conditioned the license it provided to Hon Hai in the United States upon Hon Hai being willing to pay for a license it does not need (or is worth much less) in Singapore. During the negotiations on multiple occasions, the last time in August 2012, Hon Hai asked Microsoft for a U.S.-only license in lieu of a worldwide license because only a small portion of Hon Hai's business is within the United States. Further, Microsoft recognized it lacked extra-territorial patent coverage of the 2013 versions of the Android/Chrome Platform when it claimed it would be applying for patents in geographies beyond

the U.S. Despite Microsoft's lack of non-U.S. patent coverage of the 2013 versions of the Android/Chrome platform, in September 2012 Microsoft refused to offer Hon Hai anything other than a worldwide license. As a result, Microsoft was able to leverage its U.S. patents to force Hon Hai to pay royalties in geographies where Microsoft held no patents or very limited patents.

82.    Microsoft further exercised market power improperly to expand the coverage of its patents beyond their actual scope by including products under the license that may not infringe any Microsoft patent. The definition of "Covered Products" under the PLA includes various devices that include the Android/Chrome Platform, regardless of whether Microsoft's patents cover those products. Although Microsoft may have believed that it had patents covering the 2013 versions of the Android/Chrome Platform (at the time the parties entered the PLA), Microsoft could not have known that any of its patents would cover future versions of the Android/Chrome Platform. Instead of limiting the PLA to known existing versions of the Android/Chrome Platform or to just products that did fall within the scope of at least one Microsoft patent, Microsoft used its market power to force Hon Hai to take a license to future versions of the Android/Chrome platform, regardless of whether Microsoft had patents applicable to those versions. Indeed, the Android/Chrome Platform has had major new releases nearly every year since the parties entered the PLA.

83.    In pursing this licensing policy, Microsoft used its market dominance in the 2013 U.S. market for the versions of the Android/Chrome Platform available at that time to obtain greater benefit from its patents than is afforded by the U.S. patent statute. Specifically, Microsoft is able to force companies such as Hon Hai to pay a toll on activity that is geographically outside where Microsoft has patent rights, to pay royalties on products that do not, in fact, infringe any patents or infringe far fewer patents in non-U.S. geographies, and to pay royalties on products using newer versions of the Android/Chrome Platform within the U.S. regardless of whether or not Microsoft has patents covering those products.

84.    Microsoft's conduct thereby constitutes patent misuse and renders the patents unenforceable until the patent misuse is cured.

1

2

## HON HAI'S COUNTERCLAIMS

### INTRODUCTION

3

4

5

6

7

8

9

10

11

12

13

14

85.     After three years of negotiations in which Hon Hai participated in good faith despite Microsoft's unrelentingly heavy-handed tactics, Hon Hai reluctantly agreed to enter into an Android license agreement with Microsoft: the Confidential Patent License Agreement ("PLA"). Before doing so, however, Hon Hai obtained assurances from Microsoft that it would work to create a level playing field in the Android market by (1) signing Hon Hai's competitors and/or brand name customers up to Android licenses and (2) granting Hon Hai substantially the same royalty rates that Microsoft was charging prior licensees. Hon Hai's ability to pay the high royalty rates demanded by Microsoft while surviving in a highly competitive industry, and thus Hon Hai's willingness to enter into the PLA, was premised on obtaining these assurances—points that Hon Hai emphasized during the negotiations. Nevertheless, once the PLA was signed, Microsoft sat on its hands and reneged on its assurances despite Hon Hai's pleas. Microsoft should be held accountable for this situation, uniquely of its own making, by which Hon Hai has suffered great harm.

15

### PARTIES

16

17

18

86.     Counterclaimant Hon Hai Precision Industry Co., Ltd. ("Hon Hai") is a Taiwan corporation with its principal place of business at No. 2 Ziyou St., Tucheng District, New Taipei City 256, Taiwan (R.O.C.).

19

20

21

87.     On information and belief, counterclaim defendant Microsoft Corporation is a Washington corporation with its principal place of business at One Microsoft Way, Redmond, Washington 98052.

22

23

24

25

88.     On information and belief, counterclaim defendant Microsoft Licensing, GP (collectively with Microsoft Corporation, "Microsoft") is a Nevada general partnership, is a subsidiary of Microsoft Corporation, and has its principal place of business at 6100 Neil Road, Suite 100, Reno, Nevada 89511.

26

27

28

## JURISDICTION AND VENUE

89.     The Court has jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, excluding interest and costs, and this action is between a citizen of Taiwan (Hon Hai) and citizens of the United States (the counterclaim defendants).

90.     The Court has personal jurisdiction over Microsoft by virtue of its Complaint.

91.     Venue is proper in this District (1) under 28 U.S.C. § 1391(b)-(c), (2) as the District in which Microsoft filed the Complaint, and (3) pursuant to Section 7.6 of the PLA, a copy of which is included in Exhibit 1 to the Complaint and which Hon Hai incorporates by reference in its entirety.

## BACKGROUND FACTS

92.     Hon Hai and Microsoft have a business relationship dating back to well before 2010, pursuant to which Hon Hai has, for example, manufactured Xbox products for Microsoft.

93.     Beginning in or about 2010, Microsoft pressured its business contacts at Hon Hai to facilitate discussions with Microsoft related to an Android patent license.

94.     From approximately March 2010 to March 2011, Hon Hai and/or FIH Mobile Ltd. ("FIH"), a Hon Hai subsidiary that is an independently-traded public company, engaged in good faith negotiations with Microsoft regarding Microsoft's proposal that Hon Hai enter into an Android patent license.

95.     On or about March 21, 2011, Microsoft surprised Hon Hai by commencing baseless patent infringement proceedings against Hon Hai, several of its affiliated companies, and others in the United States District Court for the Western District of Washington and the U.S. International Trade Commission ("ITC"). Microsoft claimed that the accused products, which were sold by Barnes & Noble, infringed its asserted patents based on the products' Android functionality. Hon Hai denied, among other things, that it was even the manufacturer of the accused products.

96.     Soon after Microsoft initiated litigation, Hon Hai suspended the license negotiations.

97.     In or about November 2011, Microsoft dropped its patent infringement claims against Hon Hai and its affiliated companies, which were dismissed as parties to the district court and ITC proceedings.

98.     Eventually, Hon Hai and Microsoft resumed Android patent license negotiations at Microsoft's insistence. During the negotiations, Microsoft repeatedly engaged in heavy-handed tactics including, but not limited to, threatening to refile a patent lawsuit against Hon Hai and applying pressure to Microsoft's business contacts at Hon Hai.

99.     During the negotiations, Microsoft focused on its U.S. patent portfolio while demanding that Hon Hai pay royalties on its worldwide sales, even though Hon Hai does not manufacture Android products in the United States and only a small percentage of the Android devices that Hon Hai manufactures are destined for the U.S. market. Microsoft claimed to have Android patents in China and certain other relevant countries, but never established that it had substantial or credible Android-related patent assets covering non-U.S. products. Hon Hai was therefore reluctant to agree to a worldwide license and Microsoft needed a way to overcome that reluctance.

100.    On many occasions during the PLA negotiations, Hon Hai also stressed to Microsoft that it should seek Android licenses and corresponding royalties from the brand name companies that sell Android devices rather than from Hon Hai and its subsidiaries, which merely manufacture Android devices for brand name companies. Hon Hai explained that, unlike Microsoft, Hon Hai and its subsidiaries lacked the leverage to get most of their brand name customers—especially in China—to bear the cost of the royalties demanded by Microsoft, particularly if Hon Hai's competitors were not subject to comparable royalty obligations. Hon Hai also explained that if Hon Hai and its subsidiaries were unable to pass the royalties through to their brand name customers, their pricing structures and profit margins would make paying the royalties financially untenable.

101.    Microsoft sought to allay these concerns by (1) providing in the PLA that Hon Hai did not have to pay royalties for Android devices sold to brand name companies that paid royalties to Microsoft under their own Android licenses, (2) listing known Android licensees in the PLA and providing in the PLA that Microsoft was obligated to identify new Android licenses from time to time upon request, (3) representing that it was engaged with other Android manufacturers and brand name companies in an effort to get them to sign licenses with Microsoft, (4) promising that it would continue those efforts, (5) representing that the royalty rates it was offering Hon Hai were

comparable to those it had granted to prior Android licensees; and (6) agreeing to certain other provisions to ease the burden on Hon Hai during the initial years of the PLA.

102.    The PLA memorializes the parties' agreement to minimize Hon Hai's royalty obligations by, among other things, excluding Designated Units from those obligations, whereby Designated Units are units sold to brand name companies that have Android license agreements with Microsoft (provided that the brand name companies pay the royalties they owe under the agreements). This agreement reflected the parties' understanding, as discussed during the PLA negotiations, that the last entity in the supply chain—namely, a brand name customer—was the most appropriate entity to pay Android royalties. The PLA also memorialized the parties' agreement that Microsoft would continue its efforts to get additional Android players to sign license agreements with Microsoft by, among other things, providing that Microsoft would identify new licensees from time to time upon request and allow Hon Hai's sales to those new licensees to be excluded from Hon Hai's royalty obligations.

103.    As Microsoft has known at all relevant times, including based on conversations with Hon Hai before and after the PLA was signed, the PLA's purposes could be achieved and Hon Hai could enjoy the benefits of the above-described PLA provisions only if (1) Microsoft's representations about the royalty rates it had granted to prior licensees were true and (2) Microsoft continued its efforts, in good faith, to sign up new Android licensees. Microsoft was and remains in a unique position to create the conditions under which Hon Hai's customers would agree to pay Android royalties, either to Hon Hai or directly to Microsoft, because, on information and belief, Microsoft is and at all relevant times has been the sole owner of its alleged Android patent portfolio and thus only Microsoft can enforce (or threaten to enforce) its patent rights against alleged users of the claimed inventions thereof, including Hon Hai's competitors and brand name customers.

104.    Hon Hai and its subsidiaries have made reasonable and good faith efforts to persuade their brand name customers to allow Hon Hai and its subsidiaries to pass on to the customers the cost of the royalties provided by the PLA. Most of the customers have refused. Hon Hai and its subsidiaries simply lack the leverage to get most of their brand name customers—especially in China—to bear the cost of the royalties demanded by Microsoft without support from Microsoft,

particularly when the customers can simply turn to Hon Hai competitors who have not signed Android license agreements.

105.   Hon Hai has, from time to time, provided information to Microsoft to facilitate Microsoft's efforts to pursue Android license agreements with other Android players. However, on information and belief, Microsoft in most cases did not act on that information and/or unreasonably delayed in acting on that information.

106.   For example, on or about June 20, 2013, Peri Wang of Hon Hai sent an email to Microsoft identifying certain "Chinese contract manufacturers" that Hon Hai believed were manufacturing Android products for "Chinese mobile phone brand name companies." Ms. Wang stated that she was providing this information to Microsoft because "[d]uring our previous meetings, we emphasized that our competitiveness will be impaired if few Chinese contract manufacturers are licensed" and "MS [Microsoft] agreed to improve the ecosystem of this license program in China and increase such licensees in the near future." On information and belief, Microsoft did not dispute the accuracy of Ms. Wang's email yet failed to make reasonable or good faith efforts to pursue Android license discussions with the named Hon Hai competitors, or others.

107.   As another example, on or about January 2, 2014, Justin Huang of Chiun Mai Communication Systems, Inc., a Hon Hai affiliate, sent an email to Microsoft identifying certain Hon Hai brand name customers and their "2nd source supplier[s]," all of whom Hon Hai believed were not Microsoft licensees. On or about January 16, 2014, Conrad Huang of Hon Hai sent a follow-up email to Microsoft reiterating that (1) Hon Hai could not get its brand name customers to agree to let Hon Hai pass on Android royalties to them "if Microsoft do[es] not engage in any dialogue with them" and "if we are handicapped against our competition," whom Microsoft had failed to sign up to Android licenses, and (2) Hon Hai's purported royalty obligations under the PLA would soon become financially untenable without support from Microsoft. Yet, on information and belief, Microsoft thereafter continued its failure to make reasonable or good faith efforts to pursue Android license discussions with the named Hon Hai brand name customers, "2d source supplier[s]," or other relevant Android players.

**FIRST COUNTERCLAIM**
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

108.   Hon Hai incorporates by reference as if fully set forth herein each of its allegations in Paragraphs 1-107 above.

109.   Subject to Hon Hai's defenses set forth above, the PLA is a valid, existing, and enforceable contract between Microsoft and Hon Hai.

110.   Hon Hai has complied with its obligations, if any, under the PLA.

111.   A covenant of good faith and fair dealing is implied in the PLA, as in any contract under applicable law.

112.   Microsoft breached the implied covenant of good faith and fair dealing by, among other things, failing to take reasonable and expected steps to get other manufacturers and brand name sellers of Android products to enter into comparable patent license agreements with Microsoft with respect to such products. Microsoft's acts and omissions denied Hon Hai the benefits of the PLA and interfered with and prevented accomplishment of the PLA's purposes, including, without limitation, as set forth in Sections 4.7.1 and 4.7.4 of the PLA.

113.   Section 4.7.4 of the PLA, for example, requires—in business terms—Microsoft to license brand name sellers of Android products. It gives Hon Hai the right to request from Microsoft the identity of any brand name entity that executed an Android license with Microsoft after the effective date of the PLA. If Microsoft indeed licensed such a company, the process would result in Exhibit C to the PLA being deemed amended with the addition of that company. The business intent of the parties in agreeing to this section (as well as Section 4.7.1) was to reduce to writing Microsoft's promises to identify new Android licensees periodically, and to identify new Android licensees that Hon Hai identified, such that Hon Hai could avoid paying royalties on sales to those licensees. Indeed, Hon Hai could only benefit from Microsoft's promise to exempt Hon Hai from paying royalties on sales to Microsoft's new Android licensees if Microsoft actually signed up new Android licensees after the parties executed the PLA.

114.   Microsoft's breaches have directly and proximately caused Hon Hai to incur damages in an amount according to proof, which damages are likely to continue to accrue after the

date hereof. Such damages include, but are not limited to, the excessive royalties claimed by Microsoft in this action and certain legal expenses.

**SECOND COUNTERCLAIM**
**(Fraud)**

115.    Hon Hai incorporates by reference as if fully set forth herein each of its allegations in Paragraphs 1-114 above.

116.    Microsoft made false representations of fact to Hon Hai. Specifically:

(a)    On or about March 26, 2012, Leo Novakoski and Robert Braun of Microsoft met with Hon Hai's outside counsel, David McCombs of Haynes & Boone, LLP, in Irvine, California. At that meeting, one of Microsoft's representatives—on information and belief, Mr. Braun—told Mr. McCombs that Microsoft's Android royalty rates were well set with other ODMs, that Microsoft did not have flexibility on those rates, and that Microsoft would provide its current pricing schedule to Hon Hai in its next draft of the PLA.

(b)    On or about August 9, 2012, Mr. Novakoski and Mr. Braun of Microsoft met with several representatives of Hon Hai and/or Hon Hai subsidiaries in Taipei. The Hon Hai representatives included Justin Huang, John Hui, Danny Teng, Vivian Thai, Peri Wang, and Peter Yang. At that meeting, one of Microsoft's representatives—on information and belief, Mr. Braun—represented to Hon Hai, in response to Hon Hai's argument that Microsoft's proposed Android royalty rates were too high, that Microsoft's prior licensees had set the pricing and Microsoft would not play favorites.

117.    On information and belief, Microsoft made these representations knowing they were false. Microsoft never corrected the false information.

118.    On information and belief, Microsoft made these representations with the intent of inducing Hon Hai to accept Microsoft's proposed royalty rates and enter into the PLA containing those rates.

119.    Hon Hai did not know Microsoft's representations were false and relied on them in deciding not to make further attempts to negotiate the royalty rates downward and to enter into the PLA containing those rates. Hon Hai's reliance was reasonable.

120.    Hon Hai has suffered and will continue to suffer injury resulting in monetary damage as a result of Microsoft's misrepresentations, including claims by Microsoft for payment of excessive royalties, legal fees associated with defending against Microsoft's royalty claims, and reputational harm.

## THIRD COUNTERCLAIM
### (Negligent Misrepresentation)

121.    Hon Hai incorporates by reference as if fully set forth herein each of its allegations in Paragraphs 1-120 above.

122.    Microsoft made false representations of fact to Hon Hai. Specifically:

(a)    On or about March 26, 2012, Leo Novakoski and Robert Braun of Microsoft met with Hon Hai's outside counsel, David McCombs of Haynes & Boone, LLP, in Irvine, California. At that meeting, one of Microsoft's representatives—on information and belief, Mr. Braun—told Mr. McCombs that Microsoft's Android royalty rates were well set with other ODMs, that Microsoft did not have flexibility on those rates, and that Microsoft would provide its current pricing schedule to Hon Hai in its next draft of the PLA.

(b)    On or about August 9, 2012, Mr. Novakoski and Mr. Braun of Microsoft met with several representatives of Hon Hai and/or Hon Hai subsidiaries in Taipei. The Hon Hai representatives included Justin Huang, John Hui, Danny Teng, Vivian Thai, Peri Wang, and Peter Yang. At that meeting, one of Microsoft's representatives—on information and belief, Mr. Braun—represented to Hon Hai, in response to Hon Hai's argument that Microsoft's proposed Android royalty rates were too high, that Microsoft's prior licensees had set the pricing and Microsoft would not play favorites.

123.    On information and belief, Microsoft made these representations negligently, without any reasonable ground to believe they were true. Microsoft never corrected the false information.

124.    On information and belief, Microsoft made these representations with the intent of inducing Hon Hai to accept Microsoft's proposed royalty rates and enter into the PLA containing those rates.

125.     Hon Hai did not know Microsoft's representations were false and relied on them in deciding not to make further attempts to negotiate the royalty rates downward and to enter into the PLA containing those rates. Hon Hai's reliance was reasonable.

126.     Hon Hai has suffered and will continue to suffer injury resulting in monetary damage as a result of Microsoft's misrepresentations, including claims by Microsoft for payment of additional royalties, legal fees associated with defending against Microsoft's royalty claims, and reputational harm.

## PRAYER FOR RELIEF

WHEREFORE, Hon Hai prays for the following against Microsoft:

1.     Judgment dismissing Microsoft's Complaint and all claims therein with prejudice and providing that Microsoft take nothing by way of the Complaint;

2.     Judgment in favor of Hon Hai and against Microsoft on Hon Hai's counterclaims;

3.     An order rescinding the PLA and directing Microsoft to return to Hon Hai all monies and other value received from Hon Hai pursuant to the PLA;

4.     An award of Hon Hai's actual damages, including, but not limited to, compensatory, consequential, and incidental damages;

5.     An award of punitive and/or exemplary damages for Microsoft's fraudulent, malicious, and oppressive conduct;

6.     An award of pre- and post-judgment interest;

7.     An award of Hon Hai's attorney fees pursuant to Section 4.2.5 of the PLA and/or any other applicable contract provision, statute, rule, or other legal authority, as well as Hon Hai's costs;

8.     Such other relief as the Court may deem proper.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Hon Hai Precision Industry Co., Ltd. respectfully demands a trial by jury on all issues so triable.

1    DATED:  March 23, 2020          Respectfully submitted,

2                                    KILPATRICK TOWNSEND & STOCKTON LLP

3

4                                    By: */s/ A. James Isbester*
                                         A. JAMES ISBESTER
5                                        KRISTOPHER L. REED
                                         GRACE L. PAN
6                                    Attorneys for Defendant and Counter-claimant
                                     HON HAI PRECISION INDUSTRY CO., LTD.,
7                                    trading as FOXCONN TECHNOLOGY GROUP

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT HON HAI PRECISION INDUSTRY CO., LTD'S FIRST AMENDED ANSWER
TO COMPLAINT AND COUNTERCLAIMS                                          - 28 -