1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11

12

13

14

15

16

17

| | |
|---|---|
| MICROSOFT CORPORATION, et al., | Case No. 19-CV-01279-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | |
| HON HAI PRECISION INDUSTRY CO., LTD., | |
| Defendant. | Re: Dkt. Nos. 242, 245 |
| | **PUBLIC REDACTED VERSION** |

18

Plaintiffs Microsoft Corporation and Microsoft Licensing GP ("Microsoft") filed this

19

20

action for breach of contract against Defendant Hon Hai Precision Industry Co., Ltd. ("Hon Hai").

21

ECF No. 1 ("Compl."). Microsoft now moves for summary judgment on its breach of contract

claim, and Hon Hai moves for partial summary judgment on the basis that the statute of limitations

22

23

bars damages for Hon Hai's alleged breaches that occurred more than four years before Microsoft

24

filed suit.[1] ECF Nos. 242, 245. Having considered the parties' briefing, the relevant law, and the

25

26

27

---

[1] Both parties' motions contain a notice of motion that is separately paginated from the memorandum of points and authorities in support of the motion. *See* ECF Nos. 242, 245. Civil Local Rule 7-2(b) provides that the notice of motion and the points and authorities in support of the motion must be contained in one document with a combined limit of 25 pages.

1

28

United States District Court
Northern District of California

record in this case, the Court GRANTS in part and DENIES in part Microsoft's motion for summary judgment and DENIES Hon Hai's motion for partial summary judgment.

## I.  BACKGROUND

### A.  Factual Background

#### 1.  The Confidential Patent License Agreement ("PLA")

On or before April 1, 2013, Microsoft and Hon Hai entered into a "Confidential Patent License Agreement" ("PLA") with an effective date of January 1, 2013.  ECF No. 19-4 ("PLA").  Pursuant to the PLA, Microsoft agreed to grant Hon Hai and Hon Hai's subsidiaries a worldwide license in "all Patents owned by [Microsoft] or its Subsidiaries that cover" a number of devices ("Covered Products"), including the "Android/Chrome Platform" (the "Android License").  *See id*. § 1 at 3.  Among other things, Hon Hai agreed to report its sale of Covered Products, submit to audits, and pay royalties based on the number of Covered Products sold.  *Id*. §§ 4.2.1, 4.2.2(a), 4.2.4.

With respect to calculating royalties, the PLA required Hon Hai to submit a "completed and accurate royalty report" to Microsoft twice a year by January 30 and July 30 for the prior six-month period.  *Id*. § 4.2.2(a).  Therefore, for example, Hon Hai's royalty reports for the first two years of the PLA (from 2013 to 2014) were due on July 30, 2013; January 30, 2014; July 30, 2014; and January 30, 2015.  *Id*.; ECF No. 243-6 ("Gonzalez Dep.") at 74:16–75:19.  Hon Hai was required to pay royalties based on the submitted royalty reports.  *Id*. § 4.2.2(a).

In terms of Covered Products, the PLA excluded a number of products from royalties.  Specifically, Hon Hai would not have to pay a royalty for certain "Unlicensed Devices" even though those devices would have otherwise qualified as royalty-bearing products.  PLA § 1, at 7; *id*. § 4.8, at 14.  "Unlicensed Devices" included, among other things, devices sold to specifically named companies (*id*. § 1, at 7) and certain devices sold to Hon Hai customers who already possessed an Android license with Microsoft and who were identified on Exhibit C to the PLA (*id*. § 4.7).

United States District Court
Northern District of California

Additional products were also subject to exemptions for royalties.  Most relevant here, the PLA allows an exemption from royalties for a percentage of products destined for consumers in China ("Exempt CO Units").  *Id.* § 1, at 7; *id.* § 4.8.  However, to qualify as an Exempt CO Unit, the device at issue had to satisfy the criteria for the PLA's definition of a "CO Unit."  Specifically, to qualify for the exemption:

> [a] Smartphone, General Purpose Consumer Device or Smart TV [must] (i) include[] the Android/Chrome Platform, (ii) [be] a China Destined Device, (iii) [be] Sold by Hon Hai or its Subsidiaries to a CO Entity *that has represented in writing to Hon Hai* that such Smartphone, General Purpose Consumer Device or Smart TV, respectively, is for subsequent resale to, and activation and use by, an end User exclusively in Mainland China, and (iv) . . . not [be] a Hon Hai Branded Product.

*Id.* § 1 (emphasis added).  In other words, under element (iii) of the definition for a CO Unit, the parties agreed that Hon Hai was required to obtain a specific written representation from its customers in order to avail itself of the CO Unit Exemption.  Hon Hai concedes that it never obtained such written representations from its customers.  ECF No. 252 at 11 (acknowledging that "Hon Hai does not have any explicit written representations from its customers").

In the event that contractual disagreements arose, the PLA included an audit provision and a mandatory dispute resolution provision.  Pursuant to the audit provision, Hon Hai was required to maintain relevant books and records "during the Term and for a period of at least two (2) years thereafter," and Microsoft had the right to have an independent certified public accounting firm audit Hon Hai's compliance with its royalty payment obligations.  PLA § 4.2.4, at 10–11.  If the independent auditor determined Hon Hai had overpaid, Microsoft would grant Hon Hai a credit.  *Id.* § 4.2.5, at 11.  If Hon Hai underpaid, Hon Hai would "pay . . . the amount of the underpayment, together with interest . . . within sixty (60) days after the date of the final Auditor's report.  *Id.*

Pursuant to the mandatory dispute resolution provision, Microsoft and Hon Hai were first required to "negotiate in good faith to resolve such a dispute" before "pursu[ing] any other remedy or action to which such Party is entitled under this Agreement, at law, or in equity."  *Id.* § 7.11(a), at 18–19.  Then, "[a]t any time during such negotiations, either Party [could] provide written

United States District Court
Northern District of California

United States District Court
Northern District of California

notice to the other party that it [was] escalating the dispute." *Id*. at 18.  The parties were then required to "continue such good faith negotiations for thirty (30) days from the Notice Date." *Id*. Negotiations would conclude if the dispute was resolved or if the 30-day Escalation Period expired, including any extension of the Escalation Period agreed to by the parties. *Id*. at 18–19. At that point, and only at that point, could "either Party [] pursue any other remedy or action to which such Party is entitled under this Agreement, at law, or in equity." *Id*. at 19.

### 2.  The Parties' Conduct

Hon Hai sold Covered Products during the 2013 and 2014 Royalty Periods.  ECF No. 250-2 ("Hon Hai Resps. to Microsoft's RFAs") at 12 ("Hon Hai admits that Hon Hai sold one or more Covered Products during the 2013 Royalty Periods. . . . Hon Hai admits that Hon Hai sold one or more Covered Products during the 2014 Royalty Periods.").  Furthermore, Hon Hai submitted royalty reports from 2013 to 2014.

Nonetheless, during this period, Microsoft asserted that Hon Hai was underreporting and underpaying its royalty obligations.  On September 24, 2014, Microsoft's Assistant General Counsel, Michael Traino, sent an email to Hon Hai attorneys and noted that "Hon Hai is currently not in compliance with its royalty reporting and payment obligations under the Confidential Patent License Agreement between Hon Hai and Microsoft."  ECF No. 243-7 at 7.  Traino followed up with another email on November 11, 2014 and asserted that "Hon Hai is now more than six months past due on royalties owed to Microsoft under the Confidential Patent License Agreement between our two companies."  *Id*. at 4–5.  Traino further explained that "Microsoft's patience and flexibility are now close to an end" and that "Hon Hai [must] pay all royalties owed, as invoiced, by December 1, 2014."  *Id*. at 5.

Instead, starting with the royalty report due on July 30, 2015, Hon Hai stopped submitting royalty reports altogether.  ECF No. 190 ("Amended Answer") ¶ 24 ("Hon Hai admits that it did not submit royalty reports to Microsoft pursuant to the PLA for calendar years 2015–2018, inclusive.").  Following Hon Hai's failure to submit royalty reports for 2015 to 2016, on March

31, 2017, Microsoft requested an audit of Hon Hai's records from 2013, 2014, 2015, 2016, and the first half of 2017 through an independent accounting firm.  *Id*. ¶ 25.  Hon Hai acknowledges that it did not object to Microsoft's selection of Deloitte & Touche ("Deloitte"), and "Deloitte and Hon Hai signed a non-disclosure agreement for the purposes of the requested audit."  *Id*.  "Deloitte sent a letter to Hon Hai dated October 16, 2017, identifying certain records and information that Deloitte said it wanted to see in connection with the requested audit," but "Hon Hai ultimately declined to provide audit information to Deloitte."  *Id*.

As a result, on March 21, 2018, Microsoft sent Hon Hai an Escalation Notice and demanded that Hon Hai cooperate with the independent audit.  ECF No. 245-9; Amended Answer ¶ 26.  The Escalation Period, however, expired on April 20, 2018 without a resolution of the dispute.

### 3.   The Open Invention Network ("OIN")

In October 2018, Microsoft joined a patent pool called the Open Invention Network ("OIN").  ECF No. 252-4 ("Microsoft OIN License").  In December 2018, two Hon Hai subsidiaries, Execustar International Limited ("Execustar") and FIH Co. Ltd. ("FIH") also joined OIN.  ECF Nos. 252-5, 252-6.  Pursuant to Microsoft's agreement with OIN, Microsoft granted other OIN licensees—including Execustar and FIH—and their subsidiaries "a royalty-free, worldwide, nonexclusive, non-transferable license under [Microsoft's] Patents for making, having made, using, importing, and Distributing any Linux System," which includes Android products.  Microsoft OIN License § 1.2.  The OIN Agreement also states that "[t]his Agreement shall not affect any provision in other patent license agreements between You or Your Affiliates and any third party."  *Id*. § 5.3.

### B.   Procedural History

#### 1.   Substantive Motions

On March 8, 2019, Microsoft filed the instant lawsuit against Hon Hai and asserted a single cause of action for breach of contract.  ECF No. 1.  Microsoft sought (1) specific

Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

performance of the provisions requiring Hon Hai to submit complete and accurate Royalty Reports; (2) specific performance of the provision requiring Hon Hai to cooperate with an audit; (3) "Court-supervised discovery of Hon Hai's books and records"; (4) "damages in the form of royalty payments and interest"; and (5) costs, including attorneys' fees.  *Id*.

On May 3, 2019, Hon Hai moved to dismiss or, in the alternative, to strike several portions of the complaint.  ECF No. 26.  The Court denied Hon Hai's motion on August 16, 2019.  ECF No. 46.  In response, on August 30, 2019, Hon Hai filed an answer to Microsoft's Complaint.  ECF No. 51.  Hon Hai's Answer included 11 affirmative defenses and four counterclaims. Hon Hai pleaded the following affirmative defenses: (1) failure to state a claim; (2) "Plaintiff's conduct;" (3) failure to mitigate; (4) breach of the implied covenant of good faith and fair dealing; (5) failure of consideration; (6) frustration of performance; (7) fraudulent inducement; (8) mistake of fact; (9) statute of limitations; (10) mootness; and (11) "setoff."  *Id*. at 5-13.  Hon Hai's four counterclaims were for (1) breach of the implied covenant of good faith and fair dealing; (2) fraudulent inducement; (3) negligent misrepresentation; and (4) rescission.  *Id*. at 18-22.

On September 20, 2019, Microsoft filed a motion to dismiss Hon Hai's counterclaims and to strike Hon Hai's affirmative defenses.  ECF No. 52.  Specifically, Microsoft sought to dismiss Hon Hai's four counterclaims and to strike Hon Hai's fourth, sixth, seventh, and eighth affirmative defenses.

On October 31, 2019, the last day for the parties to amend the pleadings, Hon Hai filed a motion for leave to file a first amended answer and counterclaims.  ECF No. 72.  Hon Hai sought to add two new affirmative defenses of "unenforceability" and "patent misuse" and to add additional material to its third, fifth, and eighth affirmative defenses.  *Id*. at 3.

On February 20, 2020, the Court granted Microsoft's motion to dismiss Hon Hai's counterclaims with prejudice in part and with leave to amend in part.  ECF No. 148.  The Court also granted in part and denied in part Microsoft's motion to strike affirmative defenses.  *Id*.  The Court also granted Hon Hai leave to amend the answer and counterclaims.  *Id*.

6

On March 23, 2020, Hon Hai filed an amended answer.  ECF No. 190.  On April 13, 2020, Microsoft filed a motion to dismiss Hon Hai's counterclaims and to strike Hon Hai's affirmative defenses in its amended answer.  ECF No. 212.  Hon Hai filed an opposition on April 27, 2020, ECF No. 220, and Microsoft filed a reply on May 4, 2020, ECF No. 227.  That motion is fully briefed and will be decided in a subsequent order.

As relevant here, Microsoft filed a motion for summary judgment on June 23, 2020.  ECF No. 245 ("Microsoft MSJ").  That same day, Hon Hai filed a motion for partial summary judgment on the basis that the statute of limitations bars Microsoft's breach of contract claim for breaches that occurred more than four years before Microsoft filed suit.  ECF No. 242 ("Hon Hai MSJ").  Microsoft and Hon Hai both filed oppositions, ECF Nos. 250 ("Microsoft Opp."), 252 ("Hon Hai Opp."), on July 7, 2020, and both parties filed replies on July 14, 2020, ECF Nos. 255 ("Hon Hai Reply"), 257 ("Microsoft Reply").

### 2.  Discovery Disputes

As discussed below, United States Magistrate Judge Nathanael Cousins addressed the parties' substantial discovery disputes.

On November 1, 2019, Microsoft and Hon Hai filed a joint discovery letter brief regarding a dispute over Hon Hai's responses and objections to Microsoft's June 17, 2019 request for production of documents.  ECF No. 73.  Judge Cousins set and held a hearing on November 6, 2019.  ECF Nos. 74, 76.

On November 8, 2019, Judge Cousins concluded that the discovery requested by Microsoft was "relevant and proportional to the needs of the case" and ordered Hon Hai to produce documents with the sales information necessary for Microsoft to calculate royalty payments from January 1, 2013 onwards.  ECF No. 83.  Hon Hai was given staggered deadlines in November 2019 and December 2019 to complete a rolling production of documents.  *Id*.  Judge Cousins also "cautioned" Hon Hai that "any of the sanctions listed in Fed. R. Civ. P. 37 may be awarded against it if it does not timely comply with this order."  *Id*. at 4.

United States District Court
Northern District of California

Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    Hon Hai filed a motion for relief from Judge Cousins's order on November 22, 2019, ECF

2    No. 89, and the Court denied that motion on December 2, 2019, ECF No. 91.

3    On December 13, 2019, Microsoft and Hon Hai filed another joint discovery letter brief.

4    ECF No. 97.  Microsoft explained that Hon Hai still "ha[d] not produced its most basic sales

5    information."  *Id*.  Though Hon Hai "produced limited sales information for a few customers,"

6    Hon Hai "has continued to withhold other information, including information relating to its largest

7    customers . . . .  Particularly egregious is Hon Hai's refusal to identify the scope of what it has

8    produced and what it has withheld or even to identify its full list of customers."  *Id*.  Indeed,

9    Microsoft argued that during a December 9 meet-and-confer, Hon Hai continued to refuse to

10   provide sales information by any specific date, would not provide a complete list of its customers

11   nor agree to do so by Judge Cousins's deadline, would not identify those companies for whom it

12   was withholding sales information, and would not confirm whether it produced all sales

13   information for remaining customers.  *Id*. at 3.  For its part, Hon Hai contended that it was

14   diligently pursuing the relevant information but argued, for the first time, that Chinese law

15   "prohibited [Hon Hai] from producing trade secret information of its customers."  *Id*. at 4.

16   Additionally, on December 13, 2019, the parties filed another joint discovery letter brief

17   regarding Microsoft's refusal to produce certain documents.  ECF No. 98.  Those documents

18   included sensitive patent licensing information with respect to open negotiations with third parties.

19   *Id*. at 4.

20   On December 20, 2019, Microsoft also filed a motion for sanctions and to compel Hon Hai

21   to respond to certain interrogatory responses.  ECF No. 104.  Hon Hai filed an opposition to

22   Microsoft's motion, ECF No. 110, and Microsoft filed a reply, ECF No. 117.

23   On January 8, 2020, Judge Cousins held a discovery hearing regarding the parties'

24   discovery disputes and the motion for sanctions.  ECF No. 120.  At the hearing, Judge Cousins

25   vacated the January 14, 2020 settlement conference because "neither party appear[ed] ready for a

26   meaningful settlement conference."  *Id*.; ECF No. 133 at 29 (Tr. of Jan. 8, 2020 hearing).

27

28   Case No. 19-CV-01279-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1

2

3

United States District Court
Northern District of California

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

On February 4, 2020, Hon Hai filed a motion to continue the February 12, 2020 case management conference.  ECF No. 128.  On February 5, 2020, the Court denied Hon Hai's motion due to the considerable discovery disputes present in the instant case.  ECF No. 130.

On February 12, 2020, this Court held a case management conference.  ECF No. 141.  The Court noted that it was inclined to bifurcate Hon Hai's counterclaims and affirmative defenses into a second separate trial.  ECF No. 145 at 36–37 (Tr. of Feb. 12, 2020 Hearing).

The Court then ordered Hon Hai's counsel to serve a declaration on Microsoft's counsel identifying the total sales numbers for Hon Hai from 2013 to 2019.  ECF No. 140 at 1.  In light of Hon Hai's recalcitrance in producing such information, the Court noted that the declaration must be signed under penalty of perjury and that if any information was inaccurate, sanctions could issue.  Tr. of Feb. 12, 2020 Hearing at 31.

Furthermore, at the hearing, Hon Hai asserted that some of the relevant documents may not have been preserved but that Hon Hai should not be disciplined because it was not under the threat of litigation.  *Id*. at 13.  Noting that the PLA had an audit provision and reporting requirements, the Court required Hon Hai's counsel to file a declaration under penalty of perjury that identified what relevant documents from the time period from 2013 to 2019 were not preserved and when such documents ceased to be in Hon Hai's possession.  *Id*. at 13–14; ECF No. 140 at 1–2.

Additionally, the Court required Hon Hai's counsel to file a declaration regarding Hon Hai's belated argument that Chinese law barred disclosure of the relevant sales figures and information.  Specifically, the Court explained that Hon Hai only attempted to raise the foreign law argument months after Judge Cousins issued his November 2018 discovery order requiring production of relevant sales figures and documents.  Tr. of Feb. 12, 2020 Hearing at 16–21.  The Court noted that it was "unacceptable" that Hon Hai had not started any production or review of documents after Judge Cousins issued his order in November 2018 and that Hon Hai was now attempting, three months later, to circumvent and flout Judge Cousins's discovery order by raising a belated and entirely new argument that Chinese law barred disclosure.  *Id*. at 19.  The Court

9

therefore required Hon Hai's counsel to file a declaration regarding when it first became aware of its argument regarding foreign law.  Tr. of Feb. 12, 2020 Hearing at 20–21.

The Court then denied Hon Hai's request to extend case deadlines.  ECF No. 140 at 2.  Finally, in light of Hon Hai's considerable discovery gamesmanship, the Court set a further case management conference for March 4, 2020 at 2:00 p.m. and prohibited telephonic appearances.  *Id*.

That same day, on February 12, 2020, Judge Cousins issued his discovery order regarding the disputes raised at the January 8, 2020 hearing.  ECF No. 144.  Judge Cousins granted Microsoft's request to compel Hon Hai's responses to interrogatories needed to complete the royalty reports at issue in the instant case.  *Id*. at 4.  Judge Cousins also rejected Hon Hai's argument that it had substantially complied with the November 8, 2019 discovery order and instead ordered Hon Hai to produce all responsive documents as required by that order by February 26, 2020.  *Id*.  Judge Cousins also found that Hon Hai had not met its burden to establish that Chinese law barred disclosure of the requested information, and that Hon Hai had waived that argument in any case by failing to raise it despite multiple opportunities to do so.  *Id*. at 6–8.  In light of these findings, Judge Cousins concluded that Microsoft was entitled to reasonable expenses, including attorney's fees, due to Hon Hai's failure to comply with the November 8, 2019 discovery order.  *Id*. at 8.  Finally, as to Hon Hai's motion to compel, Judge Cousins ordered Microsoft to produce the relevant, non-privileged documents regarding Microsoft's sensitive patent licensing information with respect to open negotiations with third parties.  *Id*. at 8–9.  Judge Cousins then set February 28, 2020 as the deadline for the parties to file a joint discovery status report.  *Id*.

On February 26, 2020, the parties filed a joint case management statement that indicated that the parties were amenable to a bifurcated trial.  ECF No. 158.  Additionally, Hon Hai's counsel filed a declaration in response to the Court's prior order regarding document retention.  ECF No. 152.  Hon Hai's counsel retreated on its earlier position that some documents may have

Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1   been inadvertently destroyed and instead stated that "there is no evidence that there is information

2   or documents that were once in the possession of relevant business units of Hon Hai's but no

3   longer are." *Id*. ¶ 2.  Rather than checking whether documents were destroyed throughout all of

4   Hon Hai, counsel narrowed the search to just certain business units.  The declaration also only

5   stated that "[o]ur investigation has revealed no evidence that any relevant documents . . . were

6   destroyed or deleted *since the circulation of the litigation hold memorandum*." *Id*. ¶ 5 (emphasis

7   added).

8       The Court therefore ordered Hon Hai's counsel to file a supplemental declaration

9   clarifying when Hon Hai circulated the litigation hold memorandum to its business units and

10  whether any documents were destroyed prior to Hon Hai's circulation of the litigation hold

11  memorandum.  ECF No. 154 at 1–2.  Only after the Court filed its additional order, did Hon Hai

12  certify that it was not aware "of any instance in which information and data necessary for an audit

13  under the PLA has been lost or destroyed since 2013 to the present."  ECF No. 165 ¶ 9.

14      On February 28, 2020, the parties filed their joint discovery status report pursuant to Judge

15  Cousins's order.  ECF No. 156.  Microsoft argued that Hon Hai had again flouted Judge Cousins's

16  discovery orders and refused to respond to interrogatories.  *Id*.  On March 4, 2020, Judge Cousins

17  held a hearing and issued an order finding that "Hon Hai has not complied with the February 12

18  order as to interrogatory requests" and granted Microsoft leave to file a further motion for

19  sanctions.  ECF No. 167 at 1–2.

20      On March 4, 2020, the Court also held a further case management conference.  ECF Nos.

21  169, 170.  Given the parties' agreement, the Court bifurcated Hon Hai's answer, counterclaims,

22  and affirmative defenses and set a separate case schedule for them.  ECF No. 169.  Bifurcation

23  was necessary to prevent further delays in discovery regarding Hon Hai's sales information and to

24  permit Hon Hai and Microsoft to conduct discovery regarding Hon Hai's counterclaims and

25  affirmative defenses.  Fact discovery for Hon Hai's answer, counterclaims, and affirmative

26  defenses closes on November 20, 2020, and expert discovery concludes on February 1, 2021.  *Id*.

27

28  Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

On March 13, 2020, Microsoft filed a motion for further sanctions.  ECF No. 185.  Hon Hai filed an opposition on March 27, 2020, ECF No. 196, and Microsoft filed a reply on April 3, 2020, ECF No. 202.  Judge Cousins held a hearing on the motion for further sanctions on April 22, 2020.  ECF No. 217.  The motion for further sanctions remains pending.

On April 1, 2020, Hon Hai filed a motion to extend time to complete third party discovery.  ECF No. 200.  Notably, fact discovery had already concluded by the time Hon Hai filed the motion.  *Id*.  Microsoft opposed the motion, ECF No. 204, and Hon Hai filed a reply, ECF No. 208.  On April 14, 2020, the Court denied the motion to extend time for lack of good cause and lack of diligence.  ECF No. 213.

## II.    LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *See id.*

The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Id*. at 324 (internal quotations omitted).  If the nonmoving party fails to make this showing, "the moving party is

Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    entitled to judgment as a matter of law." *Id*. at 323.

2        For purposes of summary judgment, the Court must view the evidence in the light most

3    favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

4    evidence produced by the nonmoving party, the Court must assume the truth of the evidence

5    submitted by the nonmoving party. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

6    The Court's function on a summary judgment motion is not to make credibility determinations or

7    weigh conflicting evidence with respect to a disputed material fact. *T.W. Elec. Serv. v. Pac. Elec.*

8    *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

9    **III.    DISCUSSION**

10       Microsoft moves for summary judgment on all of Hon Hai's counterclaims and affirmative

11   defenses. Microsoft MSJ at 10–19. Similarly, Hon Hai moves for partial summary judgment on

12   its seventh affirmative defense regarding the statute of limitations. Hon Hai MSJ at 2–5. The

13   Court addresses these cross summary judgment motions first. Finally, the Court addresses

14   Microsoft's motion for summary judgment on its breach of contract claim. Microsoft MSJ at 5–9.

15       **A. Hon Hai's Counterclaims and Affirmative Defenses**

16       Microsoft moves for summary judgment on all of Hon Hai's affirmative defenses and

17   counterclaims. Microsoft MSJ at 10–19. Such a motion is premature. Similarly, Hon Hai moves

18   for partial summary judgment on its affirmative defense regarding the statute of limitations. Hon

19   Hai MSJ at 1 n.1. However, Hon Hai acknowledges that its "affirmative defense of statute of

20   limitations has been separated into the second phase of the case" and mainly raises the defense

21   here "[o]ut of an abundance of caution." *Id*.

22       As previously noted, the parties' February 26, 2020 joint case management statement

23   indicated that the parties were amenable to a bifurcated trial. ECF No. 158. On March 4, 2020,

24   the Court bifurcated Hon Hai's answer, counterclaims, and affirmative defenses and set a separate

25   case schedule for them. ECF No. 169; Tr. of Feb. 12, 2020 Hearing at 36–37. Fact discovery for

26   Hon Hai's answer, counterclaims, and affirmative defenses closes on November 20, 2020, and

27

28   Case No. 19-CV-01279-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

13

expert discovery concludes on February 1, 2021.  *Id.*  In other words, discovery with respect to

Hon Hai's answer, counterclaims, and affirmative defenses is still ongoing.

"[S]ummary judgment is disfavored where relevant evidence remains to be discovered."

*Kauffman-Stachowiak v. Omni Hotels Mgmt. Corp.*, No. 15-CV-05186-WHO, 2016 WL 4269504,

at *7 (N.D. Cal. Aug. 15, 2016) (quoting *Jones v. Blanas*, 393 F.3d 918, 930 (9th Cir. 2004)).

"Thus[,] summary judgment in the face of requests for additional discovery is appropriate only

where such discovery would be 'fruitless' with respect to the proof of a viable claim."  *Blanas*,

393 F.3d at 930.

Moreover, "Federal Rule of Civil Procedure 56(d) provides that if a party opposing

summary judgment demonstrates a need for further discovery to obtain facts essential to justify the

party's opposition, the court may deny the motion for summary judgment or continue the hearing

to allow for such discovery."  *Haney v. Sullivan*, No. 17-CV-3808 LHK, 2019 WL 1024409, at

*17 (N.D. Cal. Mar. 4, 2019), *appeal dismissed*, No. 19-15458, 2019 WL 8222519 (9th Cir. Dec.

19, 2019).  "Rule 56(d) requires that the requesting party show (1) it has set forth in affidavit form

the specific facts it hopes to elicit from further discovery, (2) the facts sought exist, and (3) the

sought-after facts are essential to oppose summary judgment."  *Id.*

Here, Microsoft's motion for summary judgment mainly relies on Hon Hai's pleadings,

even though Microsoft's motion to dismiss covers those same arguments and is currently pending

before this Court.  Additionally, Hon Hai does not suggest why discovery would be "fruitless"

with respect to Hon Hai's counterclaims and affirmative defenses.  *See Blanas*, 393 F.3d at 930.

Moreover, Hon Hai filed a declaration noting that its Rule 30(b)(6) depositions and

discovery requests remain outstanding.  ECF No. 252-1 ¶ 19.  Furthermore, in its declaration, Hon

Hai explained specific facts it hopes to elicit from further discovery, why it believes those facts

exist, and how those facts may be material and essential to oppose summary judgment.  *Id.* ¶ 20–

26.  Especially because discovery remains ongoing after (1) Microsoft agreed to bifurcate this case

and (2) the Court extended fact and expert discovery for Hon Hai's answer, counterclaims, and

Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    affirmative defenses, the Court concludes that it would be premature to grant Microsoft's motion

2    for summary judgment on Hon Hai's counterclaims and affirmative defenses.

3         Accordingly, the Court DENIES Microsoft's motion for summary judgment with respect

4    to Hon Hai's counterclaims and affirmative defenses.  Additionally, the Court also DENIES Hon

5    Hai's motion for partial summary judgment for the same reasons—namely, that discovery is

6    ongoing, and therefore, Hon Hai's motion is also premature.

7    **B. Microsoft's Breach of Contract Claim**

8         The Court now addresses Microsoft's motion for summary judgment on Microsoft's

9    breach of contract claim.  Under California law, the elements for a claim for breach of contract are

10   "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

11   defendant's breach, and (4) the resulting damages to the plaintiff."  *eOnline Glob., Inc. v. Google*

12   *LLC*, 387 F. Supp. 3d 980, 985 (N.D. Cal. 2019) (quoting *Oasis W. Realty, LLC v. Goldman*, 51

13   Cal. 4th 811, 821, (2011) (citation omitted)).  A contract "must be so interpreted as to give effect

14   to the mutual intention of the parties as it existed at the time of contracting, so far as the same is

15   ascertainable and lawful."  Cal. Civ. Code § 1636.  "Where contract language is clear and explicit

16   and does not lead to absurd results, we ascertain intent from the written terms and go no further."

17   *Ticor Title Ins. Co. v. Employer's Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (1995).

18        Here, only the third element—whether Hon Hai breached the PLA—is truly at issue.  First,

19   it is undisputed that a contract, the PLA, exists.  Both Microsoft and Hon Hai agree that they

20   entered into the PLA with an effective date of January 1, 2013.  Hon Hai MSJ at 1; Microsoft MSJ

21   at 2, 5.

22        Second, there is no genuine issue of material fact regarding Microsoft's performance with

23   respect to the PLA.  Microsoft's primary obligations under the PLA were to grant Hon Hai a

24   license to use its patents in exchange for royalty payments and to "refrain from suing Hon Hai for

25   patent infringement."  ECF No. 245-2 ("Traino Decl.") ¶ 3.  "Microsoft has not sued Hon Hai for

26   patent infringement," *id.*, and "Hon Hai admits that Hon Hai sold one or more Covered Products"

27

28   Case No. 19-CV-01279-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

15

United States District Court
Northern District of California

during the life of the PLA.  Hon Hai Resps. to Microsoft's RFAs at 12.  Moreover, Hon Hai has not argued in the instant briefing or even alleged in its amended answer that Microsoft expressly breached the PLA.

Third, assuming that Hon Hai did in fact breach the PLA, it is undisputed that Microsoft is entitled to damages in the form of unpaid royalty obligations.  Indeed, Hon Hai's own expert calculated Microsoft's damages in the range of ████████ to ████████ .  ECF No. 245-4 at 3–4 ("Webster Expert Report").

Accordingly, as both parties recognize, the determinative issue with respect to Microsoft's breach of contract claim is whether Hon Hai breached the PLA.  Under the PLA, Hon Hai was obligated to submit complete and accurate royalty reports in a prescribed manner by January 30 and July 30 of each year.  PLA § 4.2.2(a).  The evidence indicates that Hon Hai, however, issued materially inaccurate royalty reports that underreported Hon Hai's royalty obligations until July 2015, when Hon Hai stopped submitting royalty reports altogether.  ECF No. 242-5 ("Gonzalez Supp. Expert Report") at 3 (calculating royalty underpayments for 2013 to 2014 in ████████ ████████ and total royalty underpayments for 2013 to 2019 as over ████████ ); Amended Answer ¶ 24 ("Hon Hai admits that it did not submit royalty reports to Microsoft pursuant to the PLA for calendar years 2015–2018, inclusive."); Webster Expert Report (calculating total royalty underpayments in the range of ████████ to ████████ )

Hon Hai disagrees that it breached the PLA and raises three arguments in response.  First, Hon Hai does not dispute that it did not include certain royalty calculations in its 2013 and 2014 royalty reports or that it stopped submitting royalty reports starting in July 2015.  Hon Hai, however, contends that there is a genuine issue of material fact with respect to contract interpretation and whether the PLA required Hon Hai to purchase a license for each and every Covered Product it sold.  Second, Hon Hai argues that because Microsoft granted certain Hon Hai subsidiaries an Open Invention Network ("OIN") license, Hon Hai was not obligated to pay royalties for sales of products to customers with such licenses, and therefore, Hon Hai did not

16

Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

breach the PLA by failing to report and pay those royalties.  Finally, Hon Hai argues that because the PLA provides an exemption from royalties for Hon Hai's sales of products destined for consumers in China ("Exempt CO Units"), Hon Hai did not breach the PLA when it failed to report and pay royalties for these products.

The Court addresses each of Hon Hai's arguments in turn and concludes that none of them raise triable issues of material fact that preclude granting Microsoft's motion for summary judgment on the breach of contract claim.

### 1. There Is No Genuine Issue Of Material Fact Regarding Whether The PLA Required Hon Hai To Report And Pay Royalties to Microsoft

Hon Hai first argues that "Microsoft's motion for summary judgment should be denied because the PLA gives Hon Hai the option to purchase a license for a Covered Product at agreed-upon royalty rates but does not require Hon Hai to purchase a license for each and every product." Hon Hai Opp. at 4.  Specifically, Hon Hai contends that the PLA's text provides an option for Hon Hai to purchase a Covered Product, but if Hon Hai chooses not to purchase a license, that simply leaves Hon Hai exposed to potential claims of patent infringement.  *Id.* at 5.  In other words, according to Hon Hai, the PLA does not require Hon Hai to pay any royalties for Covered Products.

Hon Hai's argument fails because it overlooks other provisions of the PLA.  The PLA states that for each royalty period, "Hon Hai shall submit to Microsoft . . . a completed and accurate royalty report in the form attached as Exhibit A."  PLA § 4.2.2(a).  The royalty report must include all "Reported Products" sold during the royalty period, and Reported Products "means Reportable Unlicensed Units and Covered Products."  *Id.* § 1, at 7.  Covered Products, as noted previously, "means Smartphones, Smart TVs and General Purpose Consumer Devices that include the Android/Chrome Platform."  *Id.* § 1, at 3.  Royalties are calculated based on the total Units Sold, which includes Covered Products, and the PLA unmistakably requires that after Hon Hai submits "complete[] and accurate royalty reports[,] . . . Hon Hai shall pay Microsoft" that amount of royalties.  *Id.* § 4.2.2(a).  In other words, the PLA required Hon Hai to pay royalties to

17

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Microsoft for Hon Hai's sale of products that included the Android/Chrome Platform, subject to

2  carefully defined exemptions.  Hon Hai's argument that the PLA gave Hon Hai the option to pay

3  is therefore meritless.

4  Perhaps recognizing the futility of this argument, Hon Hai asserts an alternative argument

5  that "[a]t a minimum, it should be left to the jury to ascertain the intent of the parties as to whether

6  Hon Hai was required to purchase a license under the PLA for each and every Covered Product."

7  Hon Hai Opp. at 6.  According to Hon Hai, extrinsic evidence—in the form of a July 7, 2020

8  signed declaration from Hon Hai's witness, Justin Huang—reveals a latent ambiguity that suggests

9  Hon Hai had the option to pay for Covered Products.  *Id*. at 6–7.

10  Under California law, a contract "must be so interpreted as to give effect to the mutual

11  intention of the parties as it existed at the time of contracting, so far as the same is ascertainable

12  and lawful."  Cal. Civ. Code § 1636.  "Where contract language is clear and explicit and does not

13  lead to absurd results, we ascertain intent from the written terms and go no further."  *Ticor Title*

14  *Ins. Co. v. Employer's Ins. of Wausau*, 40 Cal. App. 4th 1699, 1707 (1995).

15  However, when parties dispute the meaning of contractual language, California law

16  outlines a "two-step process" for interpreting the contract.  *Winet v. Price*, 4 Cal. App. 4th 1159,

17  1165 (1992).  "First, the court provisionally receives (without actually admitting) all credible

18  evidence concerning the parties' intentions to determine 'ambiguity,' *i.e.*, whether the language is

19  'reasonably susceptible' to the interpretation urged by a party."  *Id.*  "If in light of the extrinsic

20  evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the

21  extrinsic evidence is then admitted to aid in the second step—interpreting the contract."  *Id.*

22  Importantly, "California recognizes the objective theory of contracts, under which it is the

23  objective intent, as evidenced by the words of the contract, rather than the subjective intent of one

24  of the parties, that controls interpretation."  *Founding Members of the Newport Beach Country*

25  *Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) (quotation marks

26  and citations omitted).  California courts have consistently held that "[t]he parties' undisclosed

27

28  Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

18

intent or understanding is irrelevant to contract interpretation." *Id.* (citations omitted); *San Pasqual Band of Mission Indians v. State of California*, 241 Cal. App. 4th 746, 757 (2015) ("Evidence of the *undisclosed subjective intent of the parties is irrelevant* to determining the meaning of contractual language.  Rather, it is the outward manifestation or expression of assent that is controlling." (quotation marks, citations, and internal alterations omitted) (emphasis in original)).

Here, because Microsoft and Hon Hai dispute the meaning of the PLA, the Court provisionally receives extrinsic evidence concerning the parties' intention to determine whether the PLA's language is "reasonably susceptible" to either interpretation.  *Winet*, 4 Cal. App. 4th at 1165.

Extrinsic evidence supports Microsoft's position that the PLA required Hon Hai to pay royalties to Microsoft for Hon Hai's sale of products that included the Android/Chrome Platform, subject to carefully defined exemptions.  As noted previously, on September 24, 2014, Microsoft's Assistant General Counsel, Michael Traino, sent an email to Hon Hai attorneys and noted that "Hon Hai is currently not in compliance with its royalty reporting and payment obligations under the Confidential Patent License Agreement between Hon Hai and Microsoft."  ECF No. 243-7 at 7.  Traino followed up with another email on November 11, 2014 and asserted that "Hon Hai is now more than six months past due on royalties owed to Microsoft under the Confidential Patent License Agreement between our two companies."  *Id.* at 4–5.  Traino further explained that "Microsoft's patience and flexibility are now close to an end" and that "Hon Hai [must] pay all royalties owed, as invoiced, by December 1, 2014."  *Id.* at 5.

After Hon Hai failed to make royalty payments and stopped submitting any royalty reports, Microsoft requested an audit on March 31, 2017 for Hon Hai's records from 2013, 2014, 2015, 2016, and the first half of 2017.  Amended Answer ¶ 25.  Hon Hai did not object to Microsoft's selection of Deloitte as an independent auditor, and "Deloitte and Hon Hai signed a non-disclosure agreement for the purposes of the requested audit."  *Id.*  "Deloitte sent a letter to Hon Hai dated

Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

1    October 16, 2017, identifying certain records and information that Deloitte said it wanted to see in

2    connection with the requested audit," but "Hon Hai ultimately declined to provide audit

3    information to Deloitte." *Id.*

4         As a result, on March 21, 2018, Microsoft sent Hon Hai an Escalation Notice and

5    demanded that Hon Hai cooperate with the independent audit.  ECF No. 245-9; Amended Answer

6    ¶ 26.  The Escalation Period, however, expired on April 20, 2018 without a resolution of the

7    dispute.  Taken together, this course of conduct strongly supports Microsoft's interpretation of the

8    PLA.

9         Against this extrinsic evidence, Hon Hai mainly relies on the declaration of Justin Huang,

10   a Hon Hai witness.  Hon Hai Opp. at 7; ECF No. 252-2 ("Huang Decl.").  In his declaration,

11   Huang notes that "[his] understanding of the PLA was and is that Microsoft agreed to grant a

12   license only for those products for which Hon Hai paid a Device Fee."  Huang Decl. ¶ 5.  This

13   declaration, which only discloses Huang's subjective understanding, is insufficient to establish

14   that the PLA is "reasonably susceptible" to Hon Hai's interpretation.

15        Courts have consistently explained that under California law, "[e]vidence of *undisclosed*

16   *subjective intent . . . is irrelevant* to determining the meaning of contractual language." *San*

17   *Pasqual Band of Mission Indians*, 241 Cal. App. 4th at 757 (finding that a proffered declaration

18   regarding plaintiff's subjective intent "fails, under the first step of our analysis, to qualify as

19   relevant evidence") (emphasis in original); *Integral Dev. Corp. v. Tolat*, No. 12-CV-06575-JSW-

20   JSC, 2016 WL 8929073, at *9 (N.D. Cal. Dec. 23, 2016) ("The declarations are not credible

21   extrinsic evidence because although the [Plaintiff's] executives state their beliefs that [Plaintiff]

22   would not have approved contractual language that did not require payment to effectively exercise,

23   there is no evidence showing that any of the declarants communicated that belief to [Defendant].

24   Thus, the declarants' statements of their understanding have no bearing on the Court's analysis."

25   (citations omitted)); *SCC Alameda Point LLC v. City of Alameda*, 897 F. Supp. 2d 886, 897 (N.D.

26   Cal. 2012) ("Undisclosed communications and understandings are not credible extrinsic evidence

27

28   Case No. 19-CV-01279-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
     JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

20

United States District Court
Northern District of California

and may not be used by the Court to determine the parties' mutual intent.  Thus, testimony

regarding what the parties thought about the meaning of the language, or plans they did not

discuss with the other side, cannot be taken into account in determining the parties' mutual intent

and the meaning of the contract language." (citation omitted)); *Coremetrics, Inc. v. Atomic

*Park.com, LLC*, No. 04-CV-0222 EMC, 2005 WL 3310093, at *5 (N.D. Cal. Dec. 7, 2005)

("[T]he Declaration is not *credible* extrinsic evidence . . . because although Mr. Boldin states his

belief that [Defendant] would not be responsible for [Plaintiff's] 'lost profits' if [Defendant]

breached the contract, there is no evidence showing that Mr. Boldin communicated his belief to

[Plaintiff]."); *Founding Members of the Newport Beach Country Club*, 109 Cal. App. 4th at 956

("The parties' undisclosed intent or understanding is irrelevant to contract interpretation."

(citations omitted)).

Here, Huang's declaration "is simply evidence of [Hon Hai's] interpretation and

understanding of the terms of the contract well after the agreement was executed.  Even if

[Huang's] testimony was probative of [Hon Hai's] subjective intent, there is no indication that

[Hon Hai] communicated or expressed this intent."  *See Stanford Hosp. & Clinics v. Humana,

Inc.*, No. 13-CV-04924-HRL, 2015 WL 5590793, at *5 (N.D. Cal. Sept. 23, 2015).  Therefore,

Huang's declaration "fails, under the first step of [the] analysis, to qualify as relevant evidence,"

*San Pasqual Band of Mission Indians*, 241 Cal. App. 4th at 757, and "ha[s] no bearing on the

Court's analysis, *Tolat*, 2016 WL 8929073, at *9.

As a result, after provisionally receiving extrinsic evidence concerning the parties' intent,

the Court concludes that as a matter of law, the PLA requires Hon Hai to report and pay royalties

to Microsoft and that the PLA's language is not "reasonably susceptible" to Hon Hai's contrary

interpretation.  *Winet*, 4 Cal. App. 4th at 1165; *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975,

990 (9th Cir. 2006) ("If, after considering the language of the contract and any admissible

extrinsic evidence, the meaning of the contract is unambiguous, a court may properly interpret it

on a motion for summary judgment.").  Accordingly, the Court now turns to Hon Hai's remaining

Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

arguments that genuine issues of material fact regarding Hon Hai's breach preclude granting Microsoft summary judgment.

**2.   There Is No Genuine Issue of Material Fact that Hon Hai Breached the PLA With Respect to OIN Licensees**

Hon Hai's next argument is narrow.  Hon Hai argues that because Microsoft granted Hon Hai's subsidiaries an OIN license, there is a genuine issue of material fact as to whether Hon Hai was required to pay royalties on units sold through OIN licensees.  Hon Hai Opp. at 9–11. Specifically, Hon Hai asserts that because its subsidiaries, FIH and Execustar, were granted OIN licenses by Microsoft to use Android products, Hon Hai was not required to pay royalties on Covered Products sold through FIH and Execustar.  *Id*.

To make this argument, Hon Hai relies on Section 4.7.1 of the PLA.  That provision states that "Hon Hai shall have no obligation to pay MICROSOFT a second Royalty under this Agreement for any such specific Covered Product units that are fully licensed by Microsoft." PLA § 4.7.1.  This argument fails, however, for two independent reasons.

First, the OIN license does not affect Hon Hai's obligation to pay Microsoft royalties under the PLA.  Section 5.3 of Microsoft's OIN License explicitly explains its effect on prior license agreements: "this Agreement shall not affect any provision in other patent license agreements between You or Your Affiliates and any third party."  Microsoft OIN License § 5.3.  As explained above, the PLA requires Hon Hai to pay Microsoft royalties for units sold, and the OIN License, by its own terms, does nothing to affect or alter that requirement.

Second, Hon Hai itself concedes that "Hon Hai did not comply with the technical requirements in [S]ection 4.7.1 of the PLA for Hon Hai" to claim exemptions from royalty payments.  Hon Hai Opp. at 10.  In order to claim a royalty exemption for a "Designated Unit"— that is, a unit covered under a separate Android license—the PLA sets forth a number of technical, non-waivable requirements.  PLA §§ 1, 4.7.1.  Among other things, "Designated Units" must be distributed to a "Designated Entity," which "means a Brand Name Entity that has executed an Android License with MICROSOFT and is identified in Exhibit C."  *Id*. § 1, at 3.

22

1       Here, Hon Hai has not proffered any evidence that it complied with these requirements to

2   claim an exemption for "Designated Units."  Indeed, Hon Hai explicitly concedes that it did not do

3   so.  Hon Hai Opp. at 10.  Hon Hai nevertheless relies on the novel argument that it substantially

4   performed "those provisions by *providing discovery* to Microsoft identifying the units sold to its

5   brand name customers, the brand name, the model numbers, and the Covered Product categories

6   for each royalty period."  Hon Hai at 10 (emphasis added).  According to Hon Hai, because the

7   issue of substantial performance is a factual issue for the jury to decide, the Court must deny

8   Microsoft's motion for summary judgment.

9       Hon Hai's argument is frivolous.  California courts recognize that "[w]hat constitutes

10  substantial performance is a question of fact, but it is essential that there be no wil[l]ful departure

11  from the terms of the contract."  *Magic Carpet Ride LLC v. Rugger Inv. Grp., L.L.C.*, 41 Cal. App.

12  5th 357, 364 (2019).  "[W]hen a party performs but misses a deadline," a court may find that the

13  party substantially performed its obligations if the party did so "within a reasonable time after the

14  due date stated in the contract."  *Id*.  Hon Hai cites no authority whatsoever that suggests mere

15  compliance with court-ordered discovery years after the fact can constitute substantial

16  performance.

17      Moreover, Hon Hai's litigation conduct during the pendency of the instant case belies any

18  argument that Hon Hai substantially performed its obligations "within a reasonable time" or that it

19  did not "wi[llfully] depart[] from the terms of the [PLA]."  *Id*.  Time and time again, Hon Hai

20  defied Judge Cousins's discovery orders requiring Hon Hai to produce the relevant sales

21  information necessary to claim an exemption for "Designated Units."

22      On November 8, 2019, Judge Cousins ordered Hon Hai to produce documents sufficient to

23  support any royalty exemptions.  ECF No. 83.  Hon Hai was given staggered deadlines in

24  November 2019 and December 2019 to complete a rolling production of documents.  *Id*.  Judge

25  Cousins also "cautioned" Hon Hai that "any of the sanctions listed in Fed. R. Civ. P. 37 may be

26  awarded against it if it does not timely comply with this order."  *Id*. at 4.

27

28
Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

1    After Microsoft filed a discovery letter that indicated Hon Hai had failed to comply with

2    Judge Cousins's November 8, 2019 order, ECF Nos. 97, 104, Judge Cousins held a hearing on

3    January 8, 2020.  ECF No. 120.  On February 12, 2020, Judge Cousins issued his discovery order

4    regarding the disputes raised in the January 8, 2020 hearing.  ECF No. 144.  Judge Cousins

5    granted Microsoft's request to compel Hon Hai's responses to interrogatories needed to complete

6    the royalty reports at issue in the instant case.  *Id*. at 4.  Judge Cousins also rejected Hon Hai's

7    argument that it had substantially complied with the November 8, 2019 discovery order and

8    instead ordered Hon Hai to produce all responsive documents as required by that order by

9    February 26, 2020.  *Id*.  In light of these findings, Judge Cousins concluded that Microsoft was

10   entitled to reasonable expenses, including attorney's fees, due to Hon Hai's failure to comply with

11   the November 8, 2019 discovery order.  *Id*. at 8.  Judge Cousins then set February 28, 2020 as the

12   deadline for the parties to file a joint discovery status report.  *Id*. at 9.

13   On February 28, 2020, the parties filed their joint discovery status report.  ECF No. 156.

14   Microsoft argued that Hon Hai had again flouted Judge Cousins's discovery order and refused to

15   respond to interrogatories.  *Id*.  On March 4, 2020, Judge Cousins held a hearing and issued an

16   order finding that "Hon Hai has not complied with the February 12 order as to interrogatory

17   requests" and granted Microsoft leave to file a further motion for sanctions.  ECF No. 167 at 1–2.

18   Microsoft's motions for attorney's fees and sanctions remain pending.

19   In light of this procedural history and Hon Hai's repeated defiance of Judge Cousins's

20   orders, Hon Hai's argument that it "substantially performed" its contractual obligations by

21   "complying" with court-ordered discovery is galling.  Hon Hai did not substantially perform its

22   obligations "within a reasonable time," and the record in the instant case establishes that Hon Hai

23   "wi[llfully] depart[ed] from the terms of the [PLA]" by failing to submit the relevant information

24   necessary to claim exemptions for "Designated Units."  *See Magic Carpet Ride LLC*, 41 Cal. App.

25   5th at 364.

26   Accordingly, there is no genuine issue of material fact regarding Hon Hai's breach of the

27

28
Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PLA with respect to OIN licensees.  It is undisputed that Hon Hai did not comply with the PLA's requirements to claim an exemption for "Designated Units," and as a result, Microsoft is entitled to summary judgment.

### 3. There Is No Genuine Issue Of Material Fact That Hon Hai Breached The PLA With Respect To Products Destined For Consumers In China ("Exempt CO Units")

Hon Hai's final argument in opposition to Microsoft's motion for summary judgment is similar and also fails.  Hon Hai argues that "[t]he PLA allows an exemption for royalties for products destined for a consumer in China" and that information produced during discovery establishes that Hon Hai cannot owe royalties on such "Exempt CO Units."  Hon Hai Opp. at 11–12.  However, just as the PLA included specific technical requirements to claim an exemption for "Designated Units," the PLA also specifically defines "Exempt CO Units."  PLA § 1, at 2.

To qualify as an Exempt CO Unit, the device at issue must satisfy the criteria for the PLA's definition of a "CO Unit."  Specifically, to qualify for the exemption:

> [a] Smartphone, General Purpose Consumer Device or Smart TV [must] (i) include[] the Android/Chrome Platform, (ii) [be] a China Destined Device, (iii) [be] Sold by Hon Hai or its Subsidiaries to a CO Entity *that has represented in writing to Hon Hai* that such Smartphone, General Purpose Consumer Device or Smart TV, respectively, is for subsequent resale to, and activation and use by, an end User exclusively in Mainland China, and (iv) . . . not [be] a Hon Hai Branded Product.

*Id*. § 1, at 2 (emphasis added).  In other words, under element (iii) of the definition for a CO Unit, the parties agreed that Hon Hai was required to obtain a specific written representation from its customers in order to avail itself of the CO Unit Exemption.

As before, Hon Hai concedes that it never obtained and "does not have any explicit written representations from its customers."  Hon Hai Opp. at 11.  Nevertheless, Hon Hai again argues that "there still remains an issue for the jury to decide whether Hon Hai has substantially performed under the PLA by providing evidence during discovery."  *Id.*

As the Court previously concluded with respect to exemptions for "Designated Units," the procedural history in the instant case and Hon Hai's repeated defiance of Judge Cousins's discovery orders contradicts any argument that Hon Hai "substantially performed" its contractual

Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
Northern District of California

obligations by "complying" with court-ordered discovery.  Hon Hai did not substantially perform its obligations "within a reasonable time," and the record in the instant case establishes that Hon Hai "wi[llfully] depart[ed] from the terms of the [PLA]" by failing to submit the relevant information necessary to claim "Exempt CO Units."  *See Magic Carpet Ride LLC*, 41 Cal. App. 5th at 364.

Therefore, there is no genuine issue of material fact regarding Hon Hai's breach of the PLA with respect to "Exempt CO Units."  It is undisputed that Hon Hai did not comply with the PLA's requirements to identify "Exempt CO Units," and as a result, Microsoft is entitled to summary judgment.

## IV.    CONCLUSION

For the foregoing reasons, the Court DENIES Microsoft's motion for summary judgment with respect to Hon Hai's counterclaims and affirmative defenses.  The Court GRANTS Microsoft's motion for summary as to its breach of contract claim.  The Court DENIES Hon Hai's motion for partial summary judgment with respect to Hon Hai's statute of limitations affirmative defense.

**IT IS SO ORDERED.**

Dated: August 25, 2020

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 19-CV-01279-LHK
ORDER GRANTING IN PART AND DENYING IN PART MICROSOFT'S MOTION FOR SUMMARY
JUDGMENT AND DENYING HON HAI'S MOTION FOR PARTIAL SUMMARY JUDGMENT