United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICROSOFT CORPORATION, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>HON HAI PRECISION INDUSTRY CO., LTD.,<br><br>        Defendant. | Case No. 19-CV-01279-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE AFFIRMATIVE DEFENSES WITH PREJUDICE**<br><br>Re: Dkt. No. 212 |

Plaintiffs Microsoft Corporation and Microsoft Licensing GP ("Microsoft") filed this action for breach of contract against Defendant Hon Hai Precision Industry Co., Ltd. ("Hon Hai"). ECF No. 1 ("Compl."). After the Court denied Hon Hai's motion to dismiss or strike Microsoft's complaint, ECF No. 46, Hon Hai filed an answer and counterclaims, ECF No. 51. The Court granted in part and denied in part Microsoft's motion to dismiss Hon Hai's counterclaims; granted in part and denied in part Microsoft's motion to strike Hon Hai's affirmative defenses; and granted Hon Hai's motion for leave to amend. ECF No. 190. Microsoft now moves to dismiss and strike

1   Hon Hai's amended counterclaims and affirmative defenses.  ECF No. 212.[1]  Having considered

2   the parties' briefing, the relevant law, and the record in this case, the Court GRANTS Microsoft's

3   motion to dismiss Hon Hai's counterclaims with prejudice and GRANTS in part and DENIES in

4   part Microsoft's motion to strike Hon Hai's affirmative defenses.

5   **I.      BACKGROUND**

6       **A.  Factual Background**

7          Microsoft is a Washington corporation.  Amended Answer ¶ 10; Compl. ¶ 10.  Hon Hai is

8   a Taiwanese corporation, and Hon Hai and its subsidiaries manufacture certain consumer

9   electronic devices for companies to sell under their own brand names.  Amended Answer ¶¶ 12,

10  15.  These consumer electronic devices include devices whose patents belong to Microsoft.  *Id.*

11  ¶¶ 15, 93, 100.

12         On or before April 1, 2013, Microsoft and Hon Hai entered into a "Confidential Patent

13  License Agreement" ("PLA"), in which Microsoft granted Hon Hai a worldwide license to

14  Microsoft's portfolio of patents for certain "Covered Products" in exchange for specified royalties.

15  *Id*. ¶¶ 5, 6, 16.  Microsoft and Hon Hai entered into the PLA following three years of negotiations

16  where "Microsoft and Hon Hai were represented by counsel in connection with the contract

17  negotiations."  *Id*. ¶¶ 16, 85.  Hon Hai alleges that it "obtained assurances from Microsoft that it

18  would work to create a level playing field in the Android market by (1) signing Hon Hai's

19  competitors and/or brand name customers up to Android licenses and (2) granting Hon Hai

20  substantially the same royalty rates that Microsoft was charging prior licensees."  *Id.* ¶ 85.  Hon

21  Hai explained that such assurances were important because "unlike Microsoft, Hon Hai and its

22  subsidiaries lacked the leverage to get most of their brand name customers—especially in China—

23  to bear the cost of the royalties demanded by Microsoft, particularly if Hon Hai's competitors

24  

_____

25  [1] Microsoft's motion to dismiss and strike contains a notice of motion that is separately paginated
from the memorandum of points and authorities in support of the motion.  *See* ECF No. 212 at i.

26  Civil Local Rule 7-2(b) provides that the notice of motion and points and authorities should be
contained in one document with a combined limit of 25 pages.  *See* Civ. Loc. R. 7-2(b).

27

Case No. 19-CV-01279-LHK

28  ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
PREJUDICE

United States District Court
Northern District of California

United States District Court
Northern District of California

1  were not subject to comparable royalty obligations." *Id.* ¶ 100.

2      Hon Hai does not allege that any specific contractual provision in the PLA explicitly

3  requires Microsoft to either grant Hon Hai substantially the same royalty rates that Microsoft was

4  charging prior licensees or to sign up Hon Hai's competitors or brand name customers to Android

5  licenses. *Id.* ¶¶ 101–103.  Indeed, Hon Hai concedes that Hon Hai included a most-favored-nation

6  provision in a draft of the PLA, but Microsoft rejected it.  *Id.* ¶¶ 56, 64, 65; ECF No. 53-3

7  ("Traino Decl. Ex A") at 9 § 4.2.2.[2]  The rejected most-favored-nation provision would have read

8  as follows:

9          MICROSOFT and its Affiliates shall treat Hon Hai as its most favored EMS
           Company licensee.  MICROSOFT represents, warrants and covenants to Hon Hai
10         that the net price for each category of Covered Product ***shall be as low or lower***, after
           taking into account all credits, discounts and other offsets, ***than the net price***
11         ***MICROSOFT offers or provides at any time during the Term to any EMS***
           ***Company for licensing of substantially similar types of covered products***.  If
12         MICROSOFT offers or provides to any other EMS Company licensing net prices or
           terms that cause the representation, warranty or covenant in this section to be untrue,
13         then MICROSOFT shall notify Hon Hai of, and offer to Hon Hai, the same aggregate
           better net pricing and terms.  MICROSOFT shall, upon Hon Hai's acceptance of the
14         better net pricing and terms, promptly credit or reimburse Hon Hai, at Hon Hai's
           option, any amounts Hon Hai paid in excess of the better net pricing and terms after
15         they were offered or provided to any other EMS Company.  An officer of
           MICROSOFT shall annually certify to Hon Hai in writing that MICROSOFT is in
16         compliance with this section.

17

18  _____

19  [2]  Previously, the Court granted Microsoft's request for judicial notice to consider a draft of the
    PLA dated May 14, 2012.  ECF No. 148 at 3 n.2.  That May 14, 2012 draft was referenced in Hon
20  Hai's prior Answer, ECF No. 51 ¶¶ 56–57, and is again referenced in Hon Hai's Amended Answer
    at paragraphs 55–57.  Previously, Hon Hai did not oppose Microsoft's request for judicial notice
21  and even relied on Microsoft's exhibit containing the May 14, 2012 draft in opposing Microsoft's
    motion to dismiss.  Now, Hon Hai argues that the May 14, 2012 draft of the PLA cannot be
22  judicially noticed because doing so would "introduce[] factual assertions outside the pleadings in
    order to manufacture [factual] disputes."  ECF No. 220 at 7.  Hon Hai's argument fails, however,
23  because—as Hon Hai previously recognized—its pleadings incorporate by reference the May 14,
    2012 draft of the PLA.  Accordingly, the Court will consider the May 14, 2012 draft of the PLA.
24  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider
    certain materials—documents attached to the complaint, documents incorporated by reference in
25  the complaint, or matters of judicial notice—without converting the motion to dismiss into a
    motion for summary judgment.");  *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1160 (9th
26  Cir. 2012) ("Under the 'incorporation by reference' doctrine in this Circuit, a court may look
    beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary
27  judgment." (quotation marks omitted)).

                                                3
28  Case No. 19-CV-01279-LHK
    ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
    PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
    PREJUDICE

1   Traino Decl. Ex A at 9 (deleted Section 4.2.2.)  Such a provision would have guaranteed that Hon

2   Hai would get the lowest net price offered or provided by Microsoft to another company during

3   the term of the license.  *Id.*

4         Instead of a most-favored-nation provision, Hon Hai alleges that Microsoft agreed to grant

5   Hon Hai substantially the same royalty rates that Microsoft was charging prior licensees or to sign

6   up Hon Hai's competitors or brand name customers to Android licenses based on two alleged oral

7   misrepresentations made during PLA negotiations.  First, on March 26, 2012, Hon Hai alleges that

8   one of Microsoft's representatives allegedly told Hon Hai's "outside counsel" from "Haynes &

9   Boone, LLP" that "Microsoft's Android royalty rates were well set with other ODMs, that

10  Microsoft did not have flexibility on those rates, and that Microsoft would provide its current

11  pricing schedule to Hon Hai in its next draft of the PLA."  Amended Answer ¶ 54.  Second, Hon

12  Hai claims that on August 9, 2012, one of Microsoft's representatives "represented to Hon Hai, in

13  response to Hon Hai's argument that Microsoft's proposed Android royalty rates were too high,

14  that Microsoft's prior licensees had set the pricing and that Microsoft would not play favorites."

15  *Id.* ¶ 58.

16        Hon Hai alleges that "it did not know Microsoft's representations were false and relied on

17  them in deciding not to make further attempts to negotiate the royalty rates downward and to enter

18  into the PLA containing those rates."  *Id.* ¶¶ 119, 125.  "[B]ased on conversations with Hon Hai

19  before and after the PLA was signed, the PLA's purposes could be achieved and Hon Hai could

20  enjoy the benefits of the [PLA] only if Microsoft continued its efforts, in good faith, to sign up

21  new Android licensees" and to make new licensees pay the same royalty rates that Hon Hai paid.

22  *Id.* ¶ 44.  "Nevertheless, once the PLA was signed, Microsoft sat on its hands and reneged on its

23  assurances."  *Id.* ¶ 85.  As a result, Hon Hai allegedly "suffered injury resulting in monetary

24  damage," including "claims by Microsoft for payment of excessive royalties, legal fees associated

25  with defending against Microsoft's royalty claims, and reputational harm."  *Id.* ¶ 67.

26  **B.  Procedural History**

27  4

Case No. 19-CV-01279-LHK
28  ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
PREJUDICE

United States District Court
Northern District of California

The instant case possesses a long unfortunate history of Hon Hai's failure to submit royalty reports and pay royalties to Microsoft; Hon Hai's refusal to provide information to, or to cooperate with, the independent auditor, Deloitte, even after Hon Hai entered into a non-disclosure agreement with Deloitte for the independent audit; and Hon Hai's extensive discovery gamesmanship in the instant litigation. For a fuller recounting of the instant case's procedural history, the Court directs readers to its order granting in part and denying in part Microsoft's motion for summary judgment and denying Hon Hai's motion for partial summary judgment. *See* ECF No. 260 at 5–12. Here, the Court recounts the instant case's procedural history only as necessary to decide the instant motion.

On March 8, 2019, Microsoft filed the instant lawsuit against Hon Hai, which asserts a single cause of action for breach of contract. ECF No. 1. Microsoft sought (1) specific performance of the provisions requiring Hon Hai to submit complete and accurate Royalty Reports; (2) specific performance of the provision requiring Hon Hai to cooperate with an audit; (3) "Court-supervised discovery of Hon Hai's books and records"; (4) "damages in the form of royalty payments and interest"; and (5) costs, including attorneys' fees. *Id.*

On May 3, 2019, Hon Hai moved to dismiss or, in the alternative, to strike several portions of the complaint. ECF No. 26. The Court denied Hon Hai's motion on August 16, 2019. ECF No. 46. In response, on August 30, 2019, Hon Hai filed an answer to Microsoft's complaint. ECF No. 51 ("Answer").

Hon Hai's Answer included 11 affirmative defenses and four counterclaims. Hon Hai pled the following affirmative defenses: (1) failure to state a claim; (2) "Plaintiff's conduct;" (3) failure to mitigate; (4) breach of the implied covenant of good faith and fair dealing; (5) failure of consideration; (6) frustration of performance; (7) fraudulent inducement; (8) mistake of fact; (9) statute of limitations; (10) mootness; and (11) "setoff." *Id.* at 5–13. Hon Hai's also pled four counterclaims for (1) breach of the implied covenant of good faith and fair dealing; (2) fraudulent inducement; (3) negligent misrepresentation; and (4) rescission. *Id.* at 18–22.

Case No. 19-CV-01279-LHK
ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH PREJUDICE

United States District Court
Northern District of California

1    Microsoft filed a motion to dismiss Hon Hai's counterclaims and to strike Hon Hai's

2    affirmative defenses.  ECF No. 52.  Specifically, Microsoft sought to dismiss Hon Hai's four

3    counterclaims and to strike Hon Hai's fourth, sixth, seventh, and eighth affirmative defenses.  On

4    October 4, 2019, Hon Hai filed its opposition, and on October 14, 2019, Microsoft filed its reply.

5    On October 31, 2019, the last day for the parties to amend the pleadings, Hon Hai filed a

6    motion for leave to file a first amended answer and counterclaims.  ECF No. 72.  Hon Hai sought

7    to add two new affirmative defenses of "unenforceability" and "patent misuse" and to add

8    additional allegations to its third, fifth, and eighth affirmative defenses.  *Id.* at 3.  Microsoft

9    opposed Hon Hai's motion for leave to file a first amended answer and counterclaims on

10    November 14, 2019, and on November 21, 2019, Hon Hai filed a reply.

11    On February 20, 2020, the Court granted Microsoft's motion to dismiss Hon Hai's

12    counterclaims with prejudice in part and with leave to amend in part; granted in part and denied in

13    part Microsoft's motion to strike Hon Hai's affirmative defenses; and granted Hon Hai's motion

14    for leave to amend the answer.  ECF No. 148.

15    As to Hon Hai's counterclaims, the Court dismissed Hon Hai's counterclaim for rescission

16    with prejudice because "rescission is not a cause of action; it is a remedy."  *Id.* at 11.

17    The Court next addressed Hon Hai's counterclaim for breach of the implied covenant of

18    good faith and fair dealing, and the Court dismissed that counterclaim with leave to amend.  The

19    Court explained that under California law, "the implied covenant of good faith and fair dealing

20    'cannot substantively *alter* [the] terms [of the contract]' or 'impose substantive duties or limits on

21    the contracting parties beyond those incorporated in the specific terms of their agreement.'"  *Id.* at

22    13 (quoting *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 327 (2000) (emphasis in original)).  Most

23    importantly, "'[t]he covenant of good faith and fair dealing protects against one party *interfering*

24    with another party's contract *rights*; it does not obligate a party to help another party perform that

25    other's contract obligations."  *Id.* at 14 (quoting *Openshaw v. FedEx Ground Package Sys., Inc.*,

26    576 Fed. App'x 685, 688 (9th Cir. 2014)).  Hon Hai argued "that an implied covenant of good

27

28

6

faith and fair dealing required Microsoft to license Hon Hai's competitors in order to help Hon Hai perform on its contractually obligated royalty payments to Microsoft," but the PLA "nowhere required Microsoft to license any of Hon Hai's competitors.  In other words, Hon Hai's counterclaim for breach of the implied covenant of good faith and fair dealing would effectively write in a requirement that Microsoft help Hon Hai perform its contract obligations."  *Id*. at 14. The Court therefore declined to permit Hon Hai's counterclaim to proceed because "[d]oing so would contravene the California Supreme Court's express admonition that the implied covenant of good faith and fair dealing 'cannot substantively *alter* [the] terms [of the contract]' or 'impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.'"  *Id*. at 14 (quoting *Guz*, 24 Cal. 4th at 327).

The Court then analyzed Hon Hai's counterclaims for fraudulent inducement and negligent misrepresentation.  The Court addressed both counterclaims together because negligent misrepresentation and fraudulent inducement share the same elements under California law, except that negligent misrepresentation "does not require knowledge of falsity but instead requires a misrepresentation of fact by a person who has no reasonable grounds for believing it to be true."  *Id*. at 16 (quotation marks omitted).

The Court dismissed both counterclaims with leave to amend because Hon Hai did not plead justifiable reliance on the two alleged oral misrepresentations made during contractual negotiations.  Specifically, Hon Hai alleged that it justifiably relied on Microsoft's statements that royalty rates were non-negotiable, but the Court concluded otherwise for four overlapping reasons.

First, Hon Hai "acknowledge[d] that royalty rates for Smartphones dropped by a small amount from the May 2012 draft to the final PLA."  *Id*. at 18 (quotation marks omitted).  Hon Hai attempted to argue that the small rate change was a "token gesture," but the Answer "contain[ed] no such allegations" explaining how the lower, negotiated rates were a "token gesture."  *Id*. Because Hon Hai itself acknowledged that the final version of the PLA contained lower royalty rates for some products, Hon Hai could not have justifiably relied on Microsoft's statements that

7

United States District Court
Northern District of California

royalty rates were non-negotiable.  *Id*. at 18–19.

Second, Hon Hai's justifiable reliance argument failed because Hon Hai conceded that it asked for a most-favored-nation provision in previous drafts of the PLA but that Microsoft rejected Hon Hai's requests.  "Such a provision would have guaranteed that Hon Hai would get the lowest net price offered or provided by Microsoft to another company during the entire term of the license."  *Id*. at 19.  However, that "Microsoft expressly denied Hon Hai's request to include a most-favored-nation provision in[] the PLA . . . [was] another factor that weigh[ed] against concluding that Hon Hai[] justifiably relied on Microsoft's alleged misrepresentations involving non-differential royalty fees."  *Id*. at 19–20.

Third, the PLA contained an integration clause, which weighed against Hon Hai's justifiable reliance argument.  The Court acknowledged that under California law, "a general integration clause does not make reliance on oral statements *automatically* unreasonable."  *Id*. at 20 (citing *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App. 4th 985, 987 (1995)).  However, though "the inclusion of an integration clause in the PLA is not determinative or conclusive in any regard," "certainly courts can take such a clause's existence into account in determining whether an allegation of justifiable reliance is adequately pled."  *Id*. (quotation marks, citations, and internal alterations omitted).  As a result, "[t]hough not determinative, the presence of [an] integration clause [in the PLA] [wa]s certainly relevant to the Court's justifiable reliance analysis and militate[d] in favor of finding that Hon Hai did not justifiably rely on Microsoft's alleged misrepresentations."  *Id*. at 21.

Finally, the Court held that "Hon Hai's reliance on Microsoft's alleged misrepresentations was unjustified because courts have consistently held that '[w]here a party is represented by counsel, or where the alleged misrepresentation was made by an adversary during the course of negotiations, . . . reliance is unjustifiable.'"  *Id*. (quoting *Borg v. Principal Life Ins. Co.*, 2008 WL 11453724 (N.D. Cal. July 24, 2008)); *see id*. at 21, 22–23 (collecting cases).  Because Microsoft's alleged misrepresentations took place during contractual negotiations for the PLA involving

8

United States District Court
Northern District of California

1   sophisticated corporate counsel, "these facts also weigh[ed] in favor of holding that Hon Hai was

2   not justified in relying on Microsoft's alleged misrepresentations."  *Id*. at 21–23.

3           The Court then turned to Hon Hai's affirmative defenses.  Microsoft moved to strike four

4   of Hon Hai's affirmative defenses for breach of the implied covenant of good faith and fair dealing

5   (fourth affirmative defense), frustration of performance (sixth affirmative defense), fraudulent

6   inducement (seventh affirmative defense), and mistake of fact (eighth affirmative defense).  *Id*. at

7   24.

8           The Court granted Microsoft's motion to strike as to the fourth affirmative defense of

9   breach of the implied covenant of good faith and fair dealing and the seventh affirmative defense

10  of fraudulent inducement because "[t]hese two affirmative defenses [we]re duplicative of Hon

11  Hai's counterclaims for breach of the implied covenant of good faith and fair dealing and

12  fraudulent inducement and [we]re insufficiently alleged for the reasons discussed."  *Id*. at 25.  The

13  Court granted Hon Hai leave to amend.

14          The Court, however, denied Microsoft's motion to strike Hon Hai's sixth affirmative

15  defense of frustration of performance and the eighth affirmative defense of mistake of fact.

16  Microsoft argued that these two affirmative defenses should be dismissed for the same reasons

17  that the Court dismissed Hon Hai's counterclaims.  However, because Microsoft did not explain

18  "whether these two affirmative defenses ha[d] the same elements or how they suffer[ed] from the

19  same legal deficiencies as Hon Hai's counterclaims," the Court declined at that time to grant

20  Microsoft's motion to strike regarding frustration of performance and mistake of fact.

21          Finally, the Court addressed Hon Hai's motion to amend the answer and counterclaims.

22  Hon Hai requested leave to plead additional allegations to support its third affirmative defense of

23  failure to mitigate, its fifth affirmative defense of failure of consideration, and its eighth

24  affirmative defense of mistake of fact.  *Id*. at 26.  Hon Hai also requested leave to add two

25  affirmative defenses of unenforceability by reason of ambiguity and patent misuse.  *Id*.  Microsoft

26  argued that Hon Hai's motion to amend was futile.  The Court noted that it was "sympathetic to

27                                                                  9

United States District Court
Northern District of California

1   Microsoft's argument[s]" that Hon Hai's affirmative defenses were legally insufficient and that

2   "these new allegations [were] not necessarily pled in a manner sufficient to withstand a motion to

3   dismiss or strike." *Id*. at 28, 30.  However, at "this interim stage of the proceedings," the Court

4   declined to make a merits decision and prohibit Hon Hai from amending its answer and

5   counterclaims.  *Id*. at 28–31.

6          Accordingly, the Court granted Microsoft's motion to dismiss Hon Hai's counterclaims

7   with prejudice in part and with leave to amend in part; granted in part and denied in part

8   Microsoft's motion to strike Hon Hai's affirmative defenses; and granted Hon Hai's motion for

9   leave to amend the answer.  *Id*.  The Court gave Hon Hai 30 days to file an amended answer and

10  counterclaims and explained that "failure to cure deficiencies identified herein or in Microsoft's

11  motions to dismiss or strike will result in dismissal of the deficient counterclaims and affirmative

12  defenses with prejudice."  *Id*. at 32.

13         On March 23, 2020, Hon Hai filed an amended answer and counterclaims.  ECF No. 190

14  ("Amended Answer").  Hon Hai dropped its rescission counterclaim such that the Amended

15  Answer only realleges three counterclaims for breach of the implied covenant of good faith and

16  fair dealing, fraudulent inducement, and negligent misrepresentation.  *Id*. at 24–27.  Hon Hai also

17  pleads ten affirmative defenses for (1) failure to mitigate; (2) breach of the implied covenant of

18  good faith and fair dealing; (3) failure of consideration; (4) frustration of performance;

19  (5) fraudulent inducement; (6) mistake of fact; (7) statute of limitations; (8)  "setoff";

20  (9) unenforceability by ambiguity; and (10) patent misuse.  *Id*. at 6–18.

21         On April 13, 2020, Microsoft filed a motion to dismiss Hon Hai's counterclaims and to

22  strike Hon Hai's affirmative defenses.  ECF No. 212 ("Mot.").  Microsoft seeks to dismiss all

23  three of Hon Hai's counterclaims and all of Hon Hai's affirmative defenses except its statute of

24  limitations affirmative defense.  On April 27, 2020, Hon Hai filed its opposition.  ECF No. 220

25  ("Opp.").  On May 4, 2020, Microsoft filed its reply.  ECF No. 227 ("Reply").

26  **II.      LEGAL STANDARD**

27                                                    10

United States District Court
Northern District of California

1

2

### A.  Motion to Dismiss

"A motion to dismiss a counterclaim brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated under the same standard as a motion to dismiss a plaintiff's complaint." *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d 943, 949 (N.D. Cal. 2015); *see also Boon Rawd Trading Inter'l v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 947 (N.D. Cal. 2010).  Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).  Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

### B.  Rule 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b)

11

United States District Court
Northern District of California

of the Federal Rules of Civil Procedure, which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotation marks omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." (internal quotation marks omitted)). The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks omitted).

### C. Motion to Strike

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A Rule 12(f) motion to strike serves "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *SidneyVinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983); *see also Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds,* 510 U.S. 517 (1994). A defense may be stricken as insufficient if it fails to give plaintiff "fair notice" of the defense. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *see generally* Fed. R. Civ. P. 8. A court may also strike from an answer matter that is immaterial, i.e., "that which has no essential or important relationship to the claim for relief or the defenses being plead," or matter that is impertinent, i.e., that which does not pertain, and is not necessary, to the issues in question. *Fantasy*, 984 F.2d at 1527. Motions to

12

Case No. 19-CV-01279-LHK
ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH PREJUDICE

United States District Court
Northern District of California

1   strike are generally disfavored and "should not be granted unless the matter to be stricken clearly

2   could have no possible bearing on the subject of the litigation" or "unless prejudice would result to

3   the moving party from denial of the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d

4   1048, 1057 (N.D. Cal. 2004) (citations omitted). "If there is any doubt whether the portion to be

5   stricken might bear on an issue in the litigation, the court should deny the motion." *Id.* (citations

6   omitted).

7        "As with motions to dismiss, when ruling on a motion to strike, the Court takes the

8   plaintiff's allegations as true and must liberally construe the complaint in the light most favorable

9   to the plaintiff." *Stearns v. Select Comfort Retail Corp.,* 763 F.Supp.2d 1128, 1140 (N.D. Cal.

10  July 21, 2010).Whether to grant a motion to strike is within the sound discretion of the district

11  court. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 963 (9th Cir. 2018).

12        **D.  Leave to Amend**

13        Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be

14  freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 .

15  . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v.

16  Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Accordingly, leave to amend generally

17  shall be denied only if allowing amendment would unduly prejudice the opposing party, cause

18  undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG

19  Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008). At the same time, a court is justified in denying

20  leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments

21  previously allowed." *See Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892 (9th Cir.

22  2010). Indeed, a "district court's discretion to deny leave to amend is particularly broad where

23  plaintiff has previously amended the complaint." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys.,

24  Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011) (quotation marks omitted).

25  **III.   DISCUSSION**

26        Hon Hai's Amended Answer pleads three counterclaims and ten affirmative defenses.

27                                                    13

28  Case No. 19-CV-01279-LHK
    ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
    PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
    PREJUDICE

1   Microsoft seeks to dismiss all three of Hon Hai's counterclaims and to strike all of Hon Hai's

2   affirmative defenses except Hon Hai's seventh affirmative defense for statute of limitations.

3        The Court begins by assessing whether Hon Hai's counterclaims survive Microsoft's

4   motion to dismiss.  The Court then turns to whether to strike Hon Hai's affirmative defenses.

5   **A. Counterclaims**

6        Hon Hai pleads three counterclaims in its Amended Answer: (1) breach of the implied

7   covenant of good faith and fair dealing; (2) fraudulent inducement; and (3) negligent

8   misrepresentation.  Amended Answer at 24–27.  Microsoft contends that all three counterclaims

9   should be dismissed.  The Court agrees, as Hon Hai's amendments in its Amended Answer fail to

10  cure the legal deficiencies previously identified in the Court's prior order.

11       The Court begins its analysis with Hon Hai's counterclaim for breach of the implied

12  covenant of good faith and fair dealing before addressing Hon Hai's fraudulent inducement and

13  negligent misrepresentation counterclaims.

14  **1. Breach of the Implied Covenant of Good Faith and Fair Dealing**

15       Under California law, the elements of a cause of action for breach of the covenant of good

16  faith and fair dealing are: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his

17  obligations under the contract [or was excused from nonperformance]; (3) any conditions

18  precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the

19  plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the

20  defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D.

21  Cal. 2010) (citations omitted); *see also Berkeley v. Wells Fargo* Bank, 2015 WL 6126815, at *4

22  (N.D. Cal. Oct. 19, 2015) ("To state a claim for breach of the implied covenant [of good faith and

23  fair dealing], a plaintiff must allege performance or excuse for nonperformance under the

24  contract." (internal alterations omitted)); *Enuke v. Am.'s Wholesale Lender*, 2011 WL 11651341,

25  at *9 (C.D. Cal. Dec. 18, 2011) ("Thus, to state a claim for a breach of the implied covenant of

26  good faith and fair dealing, a plaintiff must allege performance or excuse for nonperformance

27                                                14

28  ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
    PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
    PREJUDICE

United States District Court
Northern District of California

1   under the contract.").

2          As before, Hon Hai again alleges that Microsoft breached the implied covenant of good

3   faith and fair dealing by "failing to take reasonable and expected steps to get other manufacturers

4   and brand name sellers of Android products to enter into comparable patent license agreements

5   with Microsoft with respect to such products."  Amended Answer ¶ 112; *id*. ¶ 41 ("During the

6   PLA negotiations, to address Hon Hai's concerns . . ., Microsoft assured Hon Hai that after the

7   PLA was signed it would continue its efforts to get other Android manufacturers and brand name

8   companies (including in China) to sign Android license agreements.").  Hon Hai claims that its

9   "willingness to enter into the PLA[] was premised on obtaining these assurances" because "Hon

10  Hai and its subsidiaries lacked the leverage to get most of their brand name customers . . . to bear

11  the cost of the royalties demanded by Microsoft, particularly if Hon Hai's competitors were not

12  subject to comparable royalty obligations."  *Id*. ¶¶ 37, 85.  However, "once the PLA [was] signed,

13  Microsoft sat on its hands and reneged on its assurances despite Hon Hai's pleas."  *Id*. ¶ 85.

14         In effect, Hon Hai alleges that an implied covenant of good faith and fair dealing required

15  Microsoft to impose royalty fees on Hon Hai's competitors in order to lessen Hon Hai's own

16  royalty payments to Microsoft.  It is notable that these are the exact same allegations that the Court

17  found deficient in its prior order.  *See* ECF No. 148 at 12.  Hon Hai has added nothing new to its

18  Amended Answer that justifies a different conclusion.  Therefore, the Court again holds for the

19  following reasons that Hon Hai has failed to adequately plead that Microsoft unfairly interfered

20  with Hon Hai's rights to receive the benefits of the PLA.

21         Under California law, "[t]he covenant of good faith and fair dealing, implied by law in

22  every contract, exists merely to prevent one contracting party from unfairly frustrating the other

23  party's right to receive the *benefits of the agreement actually made*."  *Guz v. Bechtel Nat. Inc.*, 24

24  Cal. 4th 317, 349 (2000) (emphasis in original).  The implied covenant of good faith and fair

25  dealing requires each party to "do everything the contract presupposes [the party] will do to

26  accomplish [the agreement's] purpose."  *Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th

27  Case No. 19-CV-01279-LHK
28  ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
    PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
    PREJUDICE

United States District Court
Northern District of California

1   1089, 1093 (2004) (quotation marks omitted).  At the same time, the implied covenant of good

2   faith and fair dealing "cannot substantively *alter* [the] terms [of the contract]" or "impose

3   substantive duties or limits on the contracting parties beyond those incorporated in the specific

4   terms of their agreement.  *Guz*, 24 Cal. 4th at 327.  "The covenant thus cannot be endowed with an

5   existence independent of its contractual underpinnings," *id*., "is limited to assuring compliance

6   with the *express terms* of the contract, and cannot be extended to create obligations not

7   contemplated by the contract," *Pasadena Live*, 114 Cal. App. 4th at 1094 (quotation marks

8   omitted).

9       *Openshaw v. FedEx Ground Package System, Inc.*, 576 Fed. App'x 685 (9th Cir. 2014), is

10  particularly instructive to the instant case.  In *Openshaw*, the plaintiff sued FedEx for terminating

11  an operating agreement and alleged claims for breach of contract and breach of the implied

12  covenant of good faith and fair dealing.  A jury found in favor of Openshaw only on his claim for

13  breach of the implied covenant of good faith and fair dealing and awarded damages.  The district

14  court denied FedEx's Rule 50(b) motion for judgment notwithstanding the verdict, but on appeal,

15  the Ninth Circuit reversed and remanded with instructions to enter judgment for FedEx.  *Id.* at

16  686-87.

17      Among other things, Openshaw argued on appeal that FedEx breached the implied

18  covenant of good faith and fair dealing by "not offering Openshaw a spare truck when he needed

19  it, not telling Openshaw about a spare driver when he needed one, and not telling Openshaw in

20  advance how many packages he would have to deliver."  *Id.* at 688.  The Ninth Circuit ruled

21  against Openshaw because "[t]he covenant of good faith and fair dealing protects against one party

22  *interfering* with another party's contract *rights*; it does not obligate a party to help another party

23  perform that other's contract obligations."  *Id.*  Because "the Agreement explicitly obligated

24  Openshaw to provide trucks and drivers and to operate at a national standard," "[a] good faith and

25  fair dealing obligation [could not] be read into the Agreement to impose a substantive duty on

26  FedEx to *help* Openshaw provide trucks and drivers or to meet delivery standards."  *Id.*  "[T]hat

27                                          16

28  Case No. 19-CV-01279-LHK
    ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
    PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
    PREJUDICE

United States District Court
Northern District of California

1    obligation was placed solely on Openshaw by the specific terms of the Agreement." *Id.*

2           The logic of *Openshaw* applies here with equal force.  At bottom, Hon Hai's argument is

3    that an implied covenant of good faith and fair dealing required Microsoft to license Hon Hai's

4    competitors in order to help Hon Hai perform on its contractually obligated royalty payments to

5    Microsoft.  But the PLA specifically obligated Hon Hai to make royalty payments for products

6    containing Microsoft's patents (subject to limited exceptions) and nowhere required Microsoft to

7    license any of Hon Hai's competitors.  In other words, Hon Hai's counterclaim for breach of the

8    implied covenant of good faith and fair dealing would effectively write in a requirement that

9    Microsoft help Hon Hai perform its contract obligations.  *Pasadena Live*, 114 Cal. App. 4th at

10   1094 ("The implied covenant of good faith and fair dealing is limited to assuring compliance with

11   the *express terms* of the contract, and cannot be extended to create obligations not contemplated

12   by the contract." (quotation marks omitted)).  Like the Ninth Circuit, the Court will not read into

13   the PLA an obligation "to impose a substantive duty on [Microsoft] to *help* [Hon Hai]" meet its

14   payment obligations when "[t]hat obligation was placed solely on [Hon Hai] by the specific terms

15   of the Agreement."  *Openshaw*, 576 Fed. App'x at 688.  Doing so would contravene the California

16   Supreme Court's express admonition that the implied covenant of good faith and fair dealing

17   "cannot substantively *alter* [the] terms [of the contract]" or "impose substantive duties or limits on

18   the contracting parties beyond those incorporated in the specific terms of their agreement.  *Guz*, 24

19   Cal. 4th at 327.

20          Hon Hai's only response to this reasoning is to contend that its Amended Answer "pled

21   substantial additional facts in Paragraph 113" with respect to Section 4.7.4 of the PLA.  Opp. at 5.

22   According to Hon Hai, paragraph 113 contains new allegations and offers a new theory that

23   Microsoft failed to take reasonable and expected steps to license other manufacturers and brand

24   name sellers, thereby denying Hon Hai the benefits of the PLA.  *Id.* at 5–6.

25          Hon Hai is incorrect.  In Hon Hai's original Answer and previous opposition, Hon Hai

26   explicitly relied on Section 4.7.4. of the PLA to make its argument that Microsoft "denied Hon

27   Case No. 19-CV-01279-LHK

28   ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
     PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
     PREJUDICE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Hai the benefits of the PLA and interfered with and prevented accomplishment of the PLA's

2    purposes."  Answer ¶ 100; ECF No. 59 at 6 (arguing that Microsoft "interfer[ed] with Hon Hai's

3    ability to enjoy the benefits of several express contractual promises by Microsoft," including

4    Section 4.7.4).  The Court rejected this argument because though the PLA specifically obligated

5    Hon Hai to make royalty payments for products containing Microsoft's patents (subject to limited

6    exceptions), Section 4.7.4 did not require Microsoft to license any of Hon Hai's competitors.

7    Indeed, no express provision in the PLA required Microsoft to license any of Hon Hai's

8    competitors, and this is likely why Hon Hai brings only a counterclaim for breach of the implied

9    covenant of good faith and fair dealing rather than a claim for an express breach of contract.

10       Accordingly, the Court GRANTS Microsoft's motion to dismiss Hon Hai's counterclaim

11   for breach of the implied covenant of good faith and fair dealing.  Hon Hai failed to cure the exact

12   same deficiencies the Court previously identified in its prior order, and the Amended Answer

13   offers no new facts to justify a different conclusion.  As the Court previously warned, "failure to

14   cure deficiencies identified herein or in Microsoft's motions to dismiss or strike will result in

15   dismissal of the deficient counterclaims and affirmative defenses with prejudice."  ECF No. 148 at

16   32.  Furthermore, courts are justified in denying leave to amend when a plaintiff "repeated[ly]

17   fail[s] to cure deficiencies by amendments previously allowed."  *Carvalho*, 629 F.3d at 892.  This

18   is precisely the situation here, as the Court's prior order put Hon Hai on notice that Hon Hai's

19   counterclaim for breach of the implied covenant of good faith and fair dealing was deficient for

20   the same reasons as stated in this Order.  Accordingly, the Court GRANTS Microsoft's motion to

21   dismiss Hon Hai's counterclaim for breach of the implied covenant of good faith and fair dealing

22   with prejudice.

23           **2.  Fraudulent Inducement and Negligent Misrepresentation**

24       The Court next assesses Hon Hai's counterclaims for fraudulent inducement and negligent

25   misrepresentation.  Rule 9(b)'s heightened pleading standard applies to both Hon Hai's fraudulent

26   inducement and negligent misrepresentation causes of actions.  *See MegaFon PJSC v. Hewlett*

27                                                      18

28   Case No. 19-CV-01279-LHK
     ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
     PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
     PREJUDICE

1   *Packard Enter. Co.*, 2019 WL 1130481, at *5 (N.D. Cal. Mar. 12, 2019) (applying Rule 9(b) to

2   fraudulent inducement and negligent misrepresentation causes of action); *Gilmore v. Wells Fargo*

3   *Bank N.A.*, 75 F. Supp. 3d 1255, 1269-70 (N.D. Cal. 2014) ("[N]egligent misrepresentation is a

4   species of fraud, and, hence, must be [pled] in accordance with Rule 9(b)." (collecting cases)).

5   Rule 9(b)'s heightened pleading standard also applies to allegations involving justifiable reliance.

6   *Tabler v. Panera LLC*, 2019 WL 5579529, at *10 n.6 (N.D. Cal. Oct. 29, 2019) ("Rule 9(b), not

7   Rule 8(a), sets forth the pleading standard that a plaintiff's allegations of reliance must satisfy in

8   fraud cases." (citing *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab.*

9   *Litig.*, 349 F. Supp. 3d 881, 917 (N.D. Cal. 2018))); *see also Herskowitz v. Apple Inc.*, 940 F.

10  Supp. 3d 1131, 1148 (N.D. Cal. 2013) (applying Rule 9(b)'s heightened standard to allegations of

11  justifiable reliance).

12          "[F]raudulent inducement . . . has the same elements as fraud under California law."

13  *Romero v. San Pedro Forklift, Inc.*, 266 Fed. App'x 552, 556 n.2 (9th Cir. 2008) (citing *Lazar v.*

14  *Superior Court*, 12 Cal. 4th 631 (1996)).  Those elements are (1) a misrepresentation;

15  (2) knowledge of falsity; (3) intent to induce reliance; (4) actual and justifiable reliance; and

16  (5) resulting damage." *Lazar*, 12 Cal. 4th at 638; *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217,

17  230-231 (2013).  Similarly, "[t]he essential elements of a count for negligent misrepresentation are

18  the same except that it does not require knowledge of falsity but instead requires a

19  misrepresentation of fact by a person who has no reasonable grounds for believing it to be true."

20  *Chapman*, 220 Cal. App. 4th at 231; *GemCap Lending I, LLC v. Quarles & Brady, LLP*, 787 Fed.

21  App'x 369, 372 (9th Cir. 2019) ("The elements of negligent misrepresentation are the same as

22  those for intentional misrepresentation, except that a lower standard than knowledge of falsity

23  applies.").

24          Hon Hai alleges that Microsoft made a pair of false representations of fact that induced

25  Hon Hai to "accept Microsoft's proposed royalty rates and enter into the PLA containing those

26  rates."  Amended Answer ¶¶ 118, 124.  Specifically, Hon Hai asserts that on March 26, 2012,

27                                            19

during contractual negotiations, one of Microsoft's representatives allegedly told Hon Hai's counsel that "Microsoft's Android royalty rates were well set with other ODMs, that Microsoft did not have flexibility on those rates, and that Microsoft would provide its current pricing schedule to Hon Hai in its next draft of the PLA." *Id.* ¶¶ 116(a), 122(a).  Second, Hon Hai claims that on August 9, 2012—again, during contractual negotiations—one of Microsoft's representatives "represented to Hon Hai, in response to Hon Hai's argument that Microsoft's proposed Android royalty rates were too high, that Microsoft's prior licensees had set the pricing and that Microsoft would not play favorites." *Id.* ¶¶ 116(b), 122(b).  Hon Hai alleges that "it did not know Microsoft's representations were false and relied on them in deciding not to make further attempts to negotiate the royalty rates downward and to enter into the PLA containing those rates." *Id.* ¶¶ 119, 125.  Accordingly, Hon Hai claims that Microsoft is liable for fraudulent inducement and negligent misrepresentation.

As before, Microsoft challenges Hon Hai's allegations on two grounds.  First, Microsoft argues that Hon Hai failed to adequately allege justifiable reliance on any supposed misrepresentation.  Mot. at 11–13.  Second, Microsoft contends that Hon Hai has not adequately pled any misstatements by Microsoft because the alleged statements are non-actionable "puffery." Mot. at 13–15.  The Court agrees that Hon Hai failed to adequately allege justifiable reliance.  As a result, the Court does not reach Hon Hai's puffery argument.

To properly plead either a fraudulent inducement or negligent misrepresentation cause of action, a plaintiff must establish "'justifiable' reliance, i.e., circumstances were such to make it *reasonable* for the plaintiff to accept the defendant's statements without an independent inquiry or investigation." *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 794 (2013) (quotation marks and internal alterations omitted) (emphasis in original).  Put another way, justifiable reliance extends "beyond the plaintiff's *subjective* reliance to an *objective* requirement that a reasonable person in the plaintiff's shoes would have been justified in relying on the misrepresentation." *Dix v. Nova Benefit Plans, LLC*, 2015 WL 12859221, at *5 (C.D. Cal. Apr.

20

United States District Court
Northern District of California

28, 2015) (citing *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1066-67 (2012)). "The reasonableness of the plaintiff's reliance is judged by reference to the plaintiff's knowledge and experience." *West*, 214 Cal. App. 4th at 794 (quotation marks omitted).

First, Hon Hai's allegations that it justifiably relied on Microsoft's statements that royalty rates were non-negotiable fail because—as before, in Hon Hai's original Answer—Hon Hai concedes that Hon Hai obtained lower prices in subsequent negotiations. Hon Hai alleges that on March 26, 2012, one of Microsoft's representatives told Hon Hai's counsel that "Microsoft's Android royalty rates were well set with other ODMs, that Microsoft did not have flexibility on those rates." Amended Answer ¶¶ 116(a), 122(a). Hon Hai claims that Hon Hai "relied on" Microsoft's representation that royalty rates were non-negotiable "in deciding not to make further attempts to negotiate the royalty rates downward and to enter into the PLA containing those rates." *Id.* ¶ 119, 125.

The Court previously identified the problem with Hon Hai's argument in its prior order. Namely, Hon Hai's argument that it justifiably relied on Microsoft's representation that royalty rates were non-negotiable fails because Hon Hai acknowledges that it negotiated a "small reductions in rates" from the May 2012 draft to the final PLA. *Id.* ¶¶ 55, 56. Nothing in the Amended Answer alters this conclusion. Hon Hai again argues that though it was able to negotiate these small reductions in rates, there were just "a token gesture" such that "[i]t cannot be assumed that the small reduction in rates reflects Hon Hai's ability or Microsoft's willingness to negotiate the rates downward." *Id.* ¶ 56.

As before, this contention fails because Hon Hai explicitly grounds its fraudulent inducement and negligent misrepresentation claims on the allegation that Microsoft falsely represented that it "did not have flexibility on [the royalty] rates." *Id.* ¶ 116(a), 122(a). Hon Hai's Amended Answer—just like its original Answer—does not provide allegations that explain how these negotiated reductions were "a token gesture." *Id.* ¶ 56. Under Rule 9(b), this is insufficient, as Hon Hai "must state with particularity the circumstances constituting fraud," which in these

21

United States District Court
Northern District of California

1   circumstances, includes *how* the negotiated reductions were nothing more than "a token gesture."

2   *Id.*; *see also Semegen*, 780 F.2d at 731 (holding that allegations must be "specific enough to give

3   defendants notice of the particular misconduct which is alleged to constitute the fraud charged so

4   that they can defend against the charge and not just deny that they have done anything wrong").

5          Put simply, the Amended Answer provides no allegations that explain why Hon Hai could

6   have justifiably relied on Microsoft's statements that the royalty rates were non-negotiable when

7   Hon Hai itself acknowledges that the final version of the PLA contained lower royalty rates for

8   some products.  The absence of such allegations militates against concluding that Hon Hai's

9   reliance was reasonable and justified.

10         Second, Hon Hai's allegations of justifiable reliance fail because Hon Hai concedes that it

11  asked for a most-favored-nation provision in previous drafts of the PLA.  Traino Decl. Ex. A at 9

12  (deleted Section 4.2.2); Opp. at 21.  The rejected most-favored-nation provision would have read

13  as follows:

> MICROSOFT and its Affiliates shall treat Hon Hai as its most favored EMS Company licensee.  MICROSOFT represents, warrants and covenants to Hon Hai that the net price for each category of Covered Product ***shall be as low or lower***, after taking into account all credits, discounts and other offsets, ***than the net price MICROSOFT offers or provides at any time during the Term to any EMS Company for licensing of substantially similar types of covered products***.  If MICROSOFT offers or provides to any other EMS Company licensing net prices or terms that cause the representation, warranty or covenant in this section to be untrue, then MICROSOFT shall notify Hon Hai of, and offer to Hon Hai, the same aggregate better net pricing and terms.  MICROSOFT shall, upon Hon Hai's acceptance of the better net pricing and terms, promptly credit or reimburse Hon Hai, at Hon Hai's option, any amounts Hon Hai paid in excess of the better net pricing and terms after they were offered or provided to any other EMS Company.  An officer of MICROSOFT shall annually certify to Hon Hai in writing that MICROSOFT is in compliance with this section.

22  Traino Decl. Ex A at 9 (deleted Section 4.2.2. (emphasis added)).  Such a provision would have

23  guaranteed that Hon Hai would get the lowest net price offered or provided by Microsoft to

24  another company during the entire term of the license.  *Id*.  Nonetheless, Hon Hai expressly admits

25  that Microsoft did not agree to a most-favored-nation provision, and no such provision appears in

26  the final draft of the PLA.  Amended Answer ¶ 65.  This fact is important because Hon Hai alleges

22

United States District Court
Northern District of California

that the August 9, 2012 misrepresentation that induced Hon Hai to enter into the PLA involved a statement that "Microsoft would not play favorites" in pricing royalty fees. *Id.* ¶¶ 116(b), 122(b). That Microsoft expressly denied Hon Hai's request to include a most-favored-nation provision into the PLA—which would have guaranteed that "Microsoft would not play favorites" in royalty pricing—is another factor that weighs against concluding that Hon Hai's justifiably relied on Microsoft's alleged misrepresentations involving non-differential royalty fees.[3]

Third, that the PLA contains an integration clause also weighs against finding reasonable reliance. The Court previously raised this exact issue its prior order, but Hon Hai failed to allege new facts in its Amended Answer or to even offer any argument in its opposition that the integration clause has no bearing on the Court's analysis. *See* Amended Answer ¶¶ 53–69, 115–26; Opp. at 7–12.

Specifically, the integration clause in the PLA states that the PLA as written "constitutes the entire agreement between the Parties with respect to its subject matter and supersedes all prior and contemporaneous agreements, whether written or oral." ECF No. 19-4 § 7.3. Under California law, a general integration clause does not make reliance on oral statements *automatically* unreasonable. *Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp.*, 32 Cal. App. 4th 985, 987 (1995) ("The primary issue is whether a contract clause which states that the parties relied only on representations contained in the contract establishes, as a matter of law, that a party claiming fraud did not reasonably rely on representations not contained in the contract. We hold that such a per se rule is inconsistent with California law and reverse the summary judgment.").

Nonetheless, even if an integration clause does not make reliance on oral statements automatically unreasonable, "certainly [courts] can take such a clause's existence into account in

---

[3] Hon Hai again argues that the most-favored-nation provision was only "forward-looking [in] nature." *Id.* ¶ 65–66. The Court previously rejected that argument because as written, the most-favored-nation provision would have guaranteed that Hon Hai would get the lowest net price offered or provided by Microsoft to another company during the entire term of the license.

23

United States District Court
Northern District of California

determining whether an allegation of justifiable reliance" is adequately pled.  *Stretch Lab Franchise, LLC v. Stretch Lab, LLC*, 2019 WL 2279388, at *4 (C.D. Cal. Mar. 4, 2019); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F.Supp.2d 1163, 1176 n.15 (C.D. Cal. Oct. 5, 2009) ("[A]n integration clause may be relevant to reasonable reliance . . . .").  The Court notes that the inclusion of an integration clause in the PLA is not determinative or conclusive in any regard.  However, the fact of the matter is that the instant case involves sophisticated corporate entities who were represented by counsel and negotiated the PLA over the course of many months.  These entities agreed to the PLA with an integration clause that stated that the PLA as written "constitutes the entire agreement between the Parties with respect to its subject matter and supersedes all prior and contemporaneous agreements, whether written or oral."  ECF No. 19-4 § 7.3.  Though not determinative, the presence of that integration clause is certainly relevant to the Court's justifiable reliance analysis and militates in favor of finding that Hon Hai did not justifiably rely on Microsoft's alleged misrepresentations.

Finally, Hon Hai's reliance on Microsoft's alleged misrepresentations was unjustified because courts have consistently held that "[w]here a party is represented by counsel, or where the alleged misrepresentation was made by an adversary during the course of negotiations, . . . reliance is unjustifiable."  *Borg v. Principal Life Ins. Co.*, 2008 WL 11453724 (N.D. Cal. July 24, 2008).  The Court previously raised this exact issue in its prior order granting Microsoft's motion to dismiss Hon Hai's counterclaims.  ECF No. 148 at 21–23.  Hon Hai failed to respond to this reasoning in its Amended Answer or its opposition.  *See* Amended Answer ¶¶ 53–69, 115–26; Opp. at 7–12.

As previously explained, courts may find reliance unjustified as a matter of law even though the reasonableness of a party's reliance is ordinarily a question of fact.  *Hadland v. NN Inv'rs Life Ins. Co.*, 24 Cal. App. 4th 1578, 1586 (1994) ("[A]lthough the issue of justifiable reliance ordinarily presents a question of fact, there are cases in which it may be decided as a matter of law." (citations omitted)).  This is especially true where sophisticated parties represented

24

by counsel allegedly rely on misrepresentations made by an adversary during the negotiation of a contract. *Scognamillo v. Credit Suisse First Bos. LLC*, 2005 WL 2045807, at *7 (N.D. Cal. Aug. 25, 2005), *aff'd sub nom. Scognamillo v. Credit Suisse First Bos.*, 254 Fed. App'x 669 (9th Cir. 2007) (granting motion to dismiss fraud and negligent misrepresentation claims because as a matter of law, Plaintiffs did not allege facts demonstrating that reliance was justified); *N. California Collection Servs. Inc. of Sacramento v. Cent. Sierra Const., Inc.*, 2008 WL 3876266, at *5 (E.D. Cal. Aug. 20, 2008), *aff'd sub nom. N. Cal. Collection Servs. Inc. of Sacramento v. Cent. Sierra Const., Inc.*, 370 Fed. App'x 774 (9th Cir. 2010) (holding that "[a]lthough reasonableness of a party's reliance is usually a question of fact," reliance on the representations in that case "was unreasonable as a matter of law").

Here, Microsoft's alleged misrepresentations took place on March 26, 2012 and August 9, 2012, in the middle of negotiations for the PLA. According to Hon Hai, these representations "induc[ed] Hon Hai to accept Microsoft's proposed royalty rates and enter into the PLA containing those rates." Amended Answer ¶¶ 118, 124. Hon Hai entered into the PLA with Microsoft on April 1, 2013, many months after both alleged misstatements were made. *Id.* ¶ 16.

Furthermore, Hon Hai acknowledges that during at least one of the two negotiation sessions, Hon Hai was represented by "outside counsel" from "Haynes & Boone, LLP" and that Microsoft's representative made the alleged misrepresentation directly to Hon Hai's outside counsel. *Id.* ¶¶ 116(a), 122(a). In any event, throughout the PLA contract negotiations, Hon Hai was "represented by counsel." *Id.* ¶ 16. Additionally, Hon Hai also acknowledges that it is a sophisticated Taiwanese corporation engaged in electronics manufacturing with direct and indirect subsidiaries involved in the manufacture, assembly, and sale of electronic equipment and products such as computers and communication devices. *Id.* ¶¶ 3, 15.

These facts—*i.e.*, Hon Hai's knowledge and experience as a sophisticated corporation in the electronics industry, the fact that Hon Hai was represented by experienced outside counsel during negotiations, and the fact that any alleged misrepresentations were made during

25

United States District Court
Northern District of California

negotiations—indicate that Hon Hai's reliance was unjustified and unreasonable. *Borg*, 2008 WL 11453724 ("Where a party is represented by counsel, or where the alleged misrepresentation was made by an adversary during the course of negotiations, . . . reliance is unjustifiable."); *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1332 (1986) ("[I]t would not be 'reasonable' for [plaintiff] to accept [defense counsel's] representations as an *adversary* without an independent inquiry." (emphasis in original)); *Barkett v. Sentosa Properties LLC*, 2015 WL 3756348, at *7 (E.D. Cal. June 16, 2015), *aff'd,* 692 Fed. App'x 411 (9th Cir. 2017) ("This Court agrees with Defendants and those courts that have held that sophisticated parties represented by counsel are unjustified relying on misrepresentations made during the negotiations process."); *Signal Hill Serv., Inc. v. Macquarie Bank Ltd.*, 2011 WL 13220305, at *13 (C.D. Cal. June 29, 2011) ("While the transactions at issue were complicated, certain of the purported misrepresentations and/or omissions should not have misled [plaintiff] given the background of the officers and the hedge transactions in which it had previously engaged."); *Facebook, Inc. v. ConnectU, Inc.*, 2008 WL 8820476, at *5 (N.D. Cal. June 25, 2008), *aff'd sub nom. Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011) ("Where a party is represented by counsel, or where the alleged misrepresentation was made by an adversary during the course of negotiations, courts have held that reliance is unjustifiable."); *Scognamillo*, 2005 WL 2045807, at *7 ("Plaintiffs cannot demonstrate that, in the absence of a fiduciary relationship, reliance on statements made by individuals on the other side of a business transaction would have been justified in light of Plaintiffs' knowledge and experience.").

As a result, the Court holds that these facts—*i.e.*, Hon Hai's knowledge and experience as a sophisticated corporation in the electronics industry, the fact that Hon Hai was represented by experienced outside counsel during negotiations, and the fact that any alleged misrepresentations were made during negotiations—also weigh in favor of holding that Hon Hai was not justified in relying on Microsoft's alleged misrepresentations made on March 26, 2012 and August 9, 2012.

Accordingly, the Court concludes that Hon Hai did not adequately allege that Hon Hai

26

United States District Court
Northern District of California

1  justifiably relied on Microsoft's alleged March 26, 2012 and August 9, 2012 misrepresentations.

2  The Court therefore GRANTS Microsoft's motion to dismiss Hon Hai's fraudulent inducement

3  and negligent misrepresentation claims.  Hon Hai failed to cure the exact same deficiencies the

4  Court previously identified in its prior order, and the Amended Answer offers no new facts to

5  justify a different conclusion.  As the Court previously warned, "failure to cure deficiencies

6  identified herein or in Microsoft's motions to dismiss or strike will result in dismissal of the

7  deficient counterclaims and affirmative defenses with prejudice."  ECF No. 148 at 32.

8  Furthermore, courts are justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to

9  cure deficiencies by amendments previously allowed."  *Carvalho*, 629 F.3d at 892.  This is

10  precisely the situation here, as the Court's prior order put Hon Hai on notice that Hon Hai's

11  counterclaims for fraudulent inducement and negligent misrepresentation were deficient for the

12  same reasons as stated in this Order.  Accordingly, the Court GRANTS Microsoft's motion to

13  dismiss Hon Hai's counterclaims for fraudulent inducement and negligent misrepresentation with

14  prejudice.

15  **B.  Affirmative Defenses**

16      Federal Rule of Civil Procedure 8(b)(1) requires a party to "state in short and plain terms

17  its defenses to each claim asserted against it."  Rule 8(c) similarly requires that a party

18  "affirmatively state any avoidance or affirmative defense."  The United States Supreme Court in

19  *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, set a heightened "plausibility" pleading standard

20  for complaints.  This Court, as well as the vast majority of district courts, has held that the

21  heightened pleading standard for complaints articulated in *Twombly* and *Iqbal* applies to

22  affirmative defenses.  *See Perez v. Gordon & Wong Law Group, P.C.*, 2012 WL 1029425, at *8

23  (N.D. Cal. March 26, 2012) (collecting cases).

24      "This standard 'serve[s] to weed out the boilerplate listing of affirmative defenses which is

25  commonplace in most defendants' pleadings where many of the defenses alleged are irrelevant to

26  the claims asserted.'"  *Id.* (quoting *Barnes v. AT&T Pension Benefit Plan-Nonbargained*

27

Case No. 19-CV-01279-LHK

28  ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
PREJUDICE

1   *Program,* 718 F. Supp. 2d 1167, 1172 (N.D. Cal. 2010)). "This standard is also consistent with

2   *Iqbal*'s admonition that fair notice pleading under Rule 8 is not intended to give parties free

3   license to engage in unfounded fishing expeditions on matters for which they bear the burden of

4   proof at trial." *Id.* (citing *Iqbal*, 556 U.S. at 678-79).

5          Therefore, "[w]hile a defense need not include extensive factual allegations in order to give

6   fair notice, bare statements reciting mere legal conclusions may not be sufficient." *Id.* (internal

7   quotation marks omitted).  Additionally, courts may strike affirmative defenses that are redundant

8   of insufficiently pled counterclaims on the basis that those affirmative defenses are insufficient as

9   a matter of law.  *Int'l Test Sols., Inc. v. Mipox Int'l Corp.*, 2017 WL 2118314, at *1, 8 (N.D. Cal.

10  May 16, 2017) (dismissing counterclaim for unenforceability and striking affirmative defense of

11  unenforceability as insufficient as a matter of law); Fed. R. Civ. P. 12(f) (permitting courts to

12  "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

13  scandalous matter.").

14         Hon Hai's Amended Answer pleads ten affirmative defenses for (1) failure to mitigate;

15  (2) breach of the implied covenant of good faith and fair dealing; (3) failure of consideration;

16  (4) frustration of performance; (5) fraudulent inducement; (6) mistake of fact; (7) statute of

17  limitations; (8)  "setoff"; (9) unenforceability by ambiguity; and (10) patent misuse.  *Id.* at 6–18.

18  Microsoft moves to strike nine of Hon Hai's affirmative defenses—every affirmative defense

19  except Hon Hai's seventh affirmative defense for statute of limitations.

20         Specifically, Microsoft argues that Hon Hai's second, fifth, and eighth affirmative defenses

21  for breach of the implied covenant of good faith and fair dealing, fraudulent inducement, and

22  "setoff" are duplicative of Hon Hai's counterclaims.  Microsoft then contends that Hon Hai's

23  remaining affirmative defenses—except the seventh affirmative defense for the statute of

24  limitations—should be stricken for independent reasons.  The Court first analyzes Microsoft's

25  arguments as to Hon Hai's second, fifth, and eighth affirmative defense before addressing each

26  remaining affirmative defense in turn.

27                                                          28

28  ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
    PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
    PREJUDICE

### 1. The Court Strikes Hon Hai's Second, Fifth, and Eighth Affirmative Defenses for Breach of the Implied Covenant of Good Faith and Fair Dealing, Fraudulent Inducement, and "Setoff" With Prejudice

Microsoft and Hon Hai agree that Hon Hai's second, fifth, and eighth affirmative defenses for breach of the implied covenant of good faith and fair dealing, fraudulent inducement, and "setoff" rise and fall with Hon Hai's counterclaims.  *See* Opp. at 12 (agreeing with Microsoft's argument that these affirmative defenses are "analogs to" Hon Hai's counterclaims and that "[t]hese defenses are sufficiently set forth for the same reasons").

Hon Hai's second affirmative defense for breach of the implied covenant of good faith and fair dealing and fifth affirmative defense for fraudulent inducement are duplicative of Hon Hai's counterclaims and are insufficiently alleged for the reasons discussed above.  *Int'l Test Sols., Inc.*, 2017 WL 2118314, at *1, 8 (dismissing counterclaim for unenforceability and striking affirmative defense of unenforceability as insufficient as a matter of law).  With respect Hon Hai's "setoff" affirmative defense, because the Court granted Microsoft's motion to dismiss Hon Hai's counterclaims with prejudice, there can be no "setoff" for any damages awarded pursuant to the counterclaims.

Furthermore, because the Court granted Microsoft's motion to dismiss Hon Hai's counterclaims with prejudice, the same conclusion follows here.  Specifically, Hon Hai failed to cure the exact same deficiencies the Court previously identified in its prior order, and the Amended Answer offers no new facts to justify a different conclusion.  As the Court previously warned, "failure to cure deficiencies identified herein or in Microsoft's motions to dismiss or strike will result in dismissal of the deficient counterclaims and affirmative defenses with prejudice."  ECF No. 148 at 32.  Furthermore, courts are justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed."  *Carvalho*, 629 F.3d at 892.  This is precisely the situation here, as the Court's prior order put Hon Hai on notice that Hon Hai's counterclaims and related affirmative defenses were deficient for the same reasons as stated in this Order.

Case No. 19-CV-01279-LHK
ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH PREJUDICE

Accordingly, the Court GRANTS Microsoft's motion to strike Hon Hai's second, fifth, and eighth affirmative defenses for breach of the implied covenant of good faith and fair dealing, fraudulent inducement, and "setoff" with prejudice.

### 2. The Court Strikes Hon Hai's First Affirmative Defense for Failure to Mitigate With Prejudice

Hon Hai's first affirmative defense is for failure to mitigate damages.  Amended Answer ¶ 34.  Hon Hai alleges that Microsoft could have avoided damages by filing patent infringement actions against branded electronic companies, entering into patent licenses with them directly, or collecting royalties from them.  *Id*.  Hon Hai claims that this is exactly what the PLA required of Microsoft, but Microsoft failed to perform its duties.  Opp. at 13.

Under California law, "[t]he doctrine of mitigation of damages holds that 'a plaintiff who suffers damages as a result of a breach of contract has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided.'"  *Agam v. Gavra*, 236 Cal. App. 4th 91, 111 (2015) (quoting *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994)) (internal alterations omitted).  "Under the doctrine, 'a plaintiff may not recover for damages avoidable through ordinary care and reasonable exertion.'"  *Id*. (quoting *Valle de Oro*, 26 Cal. App. 4th at 1691) (internal alterations omitted). "However, the duty to mitigate damages does not require an injured party to do what is unreasonable or impracticable."  *Id.* (quotation marks, citations, and internal alterations omitted).

Typically, "[w]hether a plaintiff acted reasonably to mitigate damages . . . is a factual matter to be determined by the trier of fact."  *Powerhouse Motorsports Grp., Inc. v. Yamaha Motor Corp., U.S.A.*, 221 Cal. App. 4th 867, 884 (2013), *as modified on denial of reh'g* (Dec. 24, 2013).  At the same time, courts may dismiss the doctrine of mitigation of damages as an affirmative defense as a matter of law, such as when a defendant does not use the doctrine to "provide a shield against the unwarranted piling up of damages," but rather, attempts to use it as "a sword against [a plaintiff's] contractual right to recover damages resulting from [an] admitted

30

United States District Court
Northern District of California

breach of contract." *Valle de Oro*, 26 Cal. App. 4th at 1694.

Here, Hon Hai acknowledges in its opposition that this affirmative defense is mainly grounded in its contention that Microsoft was required to enter into license agreements with Hon Hai's competitors "as was specifically contemplated by the parties when negotiating the PLA." Opp. at 13.  As the Court has already explained at length, the PLA did not require Microsoft to enter into licenses with Hon Hai's competitors, to file patent infringement actions against them, or to collect royalties from them.  Hon Hai's first affirmative for failure to mitigate damages is "really a counterclaim in the guise of an affirmative defense," and the Court rejects it for this reason.  *See Logtale, Ltd. v. Ikor, Inc.*, 2014 WL 1247896, at *8 (N.D. Cal. Mar. 26, 2014).

In any event, the Court rejects Hon Hai's assertion that Microsoft had the legal obligation to lessen Hon Hai's liability for Hon Hai's clear breach of the PLA by suing Hon Hai's competitors, entering into license agreements with them, or collecting royalties from them.  Simply put, this is not the law.  As the *Valle de Oro* court noted, the doctrine of mitigation of damages simply "provide[s] a shield against the unwarranted piling up of damages"; it cannot "constitute[] a sword against [a plaintiff's] contractual right to recover damages resulting from [a defendant's] admitted breach of contract."  26 Cal. App. 4th at 1694.  "Simply put, there was no damage for [Microsoft] to mitigate," *id.*, and as a result, the Court concludes that Hon Hai's first affirmative defense for failure to mitigate fails as a matter of law.

Accordingly, the Court GRANTS Microsoft's motion to strike Hon Hai's first affirmative defense for failure to mitigate.  Courts are justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed," *Carvalho*, 629 F.3d at 892, and a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint," *Cafasso*, 637 F.3d at 1058.  That is precisely the situation here, as the Court has allowed Hon Hai multiple opportunities to amend its answer and affirmative defenses—both after the Court granted Microsoft's previous motion to dismiss and/or strike and after the Court granted Hon Hai's own motion to amend the answer.  Accordingly, the

31

United States District Court
Northern District of California

Court GRANTS Microsoft's motion to strike Hon Hai's first affirmative defense for failure to mitigate with prejudice.

### 3. The Court Strikes Hon Hai's Third Affirmative Defense for Failure of Consideration With Prejudice

Hon Hai's third affirmative defense is for failure of consideration.  Amended Answer ¶ 51. Hon Hai asserts there are two failures of consideration.  First, there was a material failure of consideration "for the reasons based on the facts and allegations set forth in Hon Hai's Second Affirmative Defense" for breach of the implied covenant of good faith and fair dealing.  *Id.* Because the Court dismissed Hon Hai's counterclaim and affirmative defense for breach of the implied covenant of good faith and fair dealing, it follows that Hon Hai cannot state an affirmative defense based on Microsoft's nonexistent breach of the implied covenant of good faith and fair dealing.

Second, Hon Hai alleges that "[a] further failure of consideration arises from the fact that Microsoft has provided no license, per the terms of the [PLA] sections 3.1 and 4.7.1."  *Id.* Specifically, Hon Hai alleges that the PLA gives Hon Hai the option to purchase a license for a Covered Product but does not require Hon Hai to purchase such a license.  *Id.*  Thus, Hon Hai contends that there was no consideration for the PLA because Microsoft would not provide a license for Covered Products if Hon Hai didn't pay royalties for those products.  According to Hon Hai, Microsoft thus never provided a license to Hon Hai, and there was therefore a failure of consideration.  *Id.*  Hon Hai raised this argument in its opposition to Microsoft's motion for summary judgment, and the Court rejected it there.  *See* ECF No. 260 at 15, 17–18.  The Court again finds that Hon Hai's argument is frivolous.  Simply put, Microsoft's primary obligations under the PLA were to grant Hon Hai a license to use Microsoft's patents in exchange for royalty payments and to refrain from suing Hon Hai for patent infringement.  The PLA obligated Hon Hai to submit completed and accurate royalty reports on products that included the Android/Chrome platform, subject to carefully designed exemptions.  PLA §§ 1, 3.1, 4.2.1, 4.2.2.  Indeed, the PLA

32

explicitly states that "[a]s consideration for the License, Covenants and other rights granted under this Agreement, for each unit of a Covered Product sold by Hon Hai or any of its Subsidiaries during the applicable Royalty Period, Hon Hai will pay MICROSOFT the applicable Device Fee for each such Covered Product unit."  PLA § 4.2.1.

Accordingly, the Court GRANTS Microsoft's motion to strike Hon Hai's third affirmative defense for failure of consideration.  Courts are justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed," *Carvalho*, 629 F.3d at 892, and a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint," *Cafasso*, 637 F.3d at 1058.  That is precisely the situation here, as the Court has allowed Hon Hai multiple opportunities to amend its answer and affirmative defenses—both after the Court granted Microsoft's previous motion to dismiss and/or strike and after the Court granted Hon Hai's own motion to amend the answer. Accordingly, the Court GRANTS Microsoft's motion to strike Hon Hai's third affirmative defense for failure of consideration with prejudice.

### 4. The Court Declines to Strike Hon Hai's Fourth Affirmative Defense for Frustration of Performance

Hon Hai's fourth affirmative defense is for frustration of performance.  Amended Answer ¶ 52.  However, Microsoft moves to strike an affirmative defense for "frustration of purpose," which Hon Hai does not plead.  Mot. at 17.  Microsoft's motion does not move to strike Hon Hai's actually pled affirmative defense for frustration of performance.  *Id*.  Accordingly, the Court declines to strike Hon Hai's fourth affirmative defense for frustration of performance.  The Court thus DENIES Microsoft's motion to strike Hon Hai's fourth affirmative defense for frustration of performance.

### 5. The Court Strikes Hon Hai's Sixth Affirmative Defense for Mistake of Fact With Prejudice

Hon Hai's sixth affirmative defense is for mistake of fact.  Amended Answer ¶ 70.  Hon Hai alleges two mistakes: (1) "the fact of whether Microsoft had granted prior Android licensees

Case No. 19-CV-01279-LHK
ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH PREJUDICE

United States District Court
Northern District of California

1   materially better royalty rates than Hon Hai"; and (2) "the fact of whether Microsoft had a

2   licensing program that it was pursuing against all major electronics corporations offering products

3   that operated on the Android or Chrome operating systems." *Id.*

4        For Hon Hai's first alleged mistake, the Amended Answer "incorporates herein by

5   reference" "the facts and allegations set forth [in] Hon Hai's Fifth Affirmative Defense" for

6   fraudulent inducement. *Id.* In other words, Hon Hai's first mistake regarding whether Microsoft

7   granted prior Android licensees is based on the same two alleged misrepresentations previously

8   addressed and rejected in Hon Hai's fraudulent inducement counterclaim. Microsoft and Hon Hai

9   acknowledge that this first alleged mistake of fact rises and falls with Hon Hai's counterclaim and

10   affirmative defense for fraudulent inducement. Mot. at 18 ("The mistake defense is simply

11   another way of trying to plead the defective fraudulent inducement claim and fails for the same

12   reasons . . . ."); Opp. at 16 (arguing that Hon Hai's first mistake of fact should not be stricken

13   because "Hon Hai's counterclaim and affirmative defense of fraudulent inducement meets the

14   pleading standards, as laid out in Sections V.A.2 and V.B.1"). Because the Court dismissed Hon

15   Hai's fraudulent inducement counterclaim and affirmative defense with prejudice, the Court also

16   strikes Hon Hai's affirmative defense for mistake of fact insofar as it relates to Hon Hai's first

17   alleged mistake—namely, "the fact of whether Microsoft had granted prior Android licensees

18   materially better royalty rates than Hon Hai." Amended Answer ¶ 70.

19        Hon Hai's second alleged mistake of fact concerns "whether Microsoft had a licensing

20   program that it was pursuing against all major electronics corporations offering products that

21   operated on the Android or Chrome operating systems." *Id.* Under Rule 9(b), "[i]n alleging fraud

22   or mistake, a party must state with particularity the circumstances constituting fraud or mistake."

23   Fed. R. Civ. P. 9(b); *Savage v. Citibank N.A.*, 2015 WL 4880858, at *2 (N.D. Cal. Aug. 14, 2015)

24   ("Nevertheless, both [affirmative] defenses constitute allegations of mistake, which must be stated

25   'with particularity' under Federal Rule of Civil Procedure 9(b)." (collecting cases)).

26        Here, Hon Hai simply alleges that "[i]t was Hon Hai's understanding that Microsoft did

27                                                34

28   ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
     PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
     PREJUDICE

United States District Court
Northern District of California

have such a [licensing] program, Microsoft knew that Hon Hai held that understanding, yet Microsoft did not have any such program and did not dissuade Hon Hai from believing that it did."  Amended Answer ¶ 70.  This plainly fails to meet Rule 9(b)'s heightened pleading standard, as Hon Hai fails to allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations."  *Swartz*, 476 F.3d at 764; *see also Semegen*, 780 F.2d at 731 (allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong").

Accordingly, the Court GRANTS Microsoft's motion to strike Hon Hai's sixth affirmative defense for mistake of fact.  Courts are justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure deficiencies by amendments previously allowed," *Carvalho*, 629 F.3d at 892, and a "district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint," *Cafasso*, 637 F.3d at 1058.  That is precisely the situation here, as the Court has allowed Hon Hai multiple opportunities to amend its answer and affirmative defenses—both after the Court granted Microsoft's previous motion to dismiss and/or strike and after the Court granted Hon Hai's own motion to amend the answer.  Accordingly, the Court GRANTS Microsoft's motion to strike Hon Hai's sixth affirmative defense for mistake of fact with prejudice.

### 6. The Court Strikes In Part Hon Hai's Ninth Affirmative Defense for Unenforceability by Ambiguity With Prejudice

Hon Hai's ninth affirmative defense is for unenforceability by ambiguity.  Amended Answer ¶¶ 73–75.  Hon Hai alleges that the PLA "is ambiguous in certain, specific instances such that cumulatively, it is not possible to conclude that the parties had, in fact, reached an agreement."  Hon Hai first asserts that the PLA is ambiguous as to what licensed products are covered under the Android/Chrome Platform.  *Id.* ¶ 73.  Hon Hai next alleges that the definition of "Covered Patents" in the PLA is impermissibly vague because "it identifies all Microsoft patents

35

United States District Court
Northern District of California

1    except for those excluded under two URLs owned by Microsoft." *Id.* ¶ 74. "However[,] neither

2    of those URLs identified any patents by patent number such that Hon Hai and Microsoft could

3    agree on which patents were included and which were excluded from the license.  Further,

4    Microsoft deleted the web pages located at these URLs around the time the parties signed the

5    PLA, further obscuring the precise scope of coverage." *Id.*

6            Under California law, "[a] proposal cannot be accepted so as to form a contract unless the

7    terms of the contract are reasonably certain.  The terms of a contract are reasonably certain if they

8    provide a basis for determining the existence of a breach and for giving an appropriate remedy."

9    *Bowers v. Raymond J. Lucia Co., Inc.*, 206 Cal. App. 4th 724, 734 (2012) (quotation marks

10   omitted); *see also Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761, 770 (1993) ("Where a

11   contract is so uncertain and indefinite that the intention of the parties in material particulars cannot

12   be ascertained, the contract is void and unenforceable.").  "If, by contract, a supposed 'contract'

13   does not provide a basis for determining what obligations the parties have agreed to, and hence

14   does not make possible a determination of whether those agreed obligations have been breached,

15   there is no contract." *Bowers*, 206 Cal. App. 4th at 734 (quotation marks omitted).  "Whether a

16   contract is certain enough to be enforced is a question of law for the court." *Patel v.*

17   *Liebermensch*, 45 Cal. 4th 344, 348 n.1 (2008).

18          As to Hon Hai's first set of allegations regarding unenforceability by ambiguity, the PLA

19   clearly defines "Android/Chrome Platform."  PLA § 1, at 1.  "Android/Chrome Platform" is

20   defined as:

21          [A]ny platform software that is capable of executing an Android/Chrome App and
              (a) is branded using the terms Android, Chrome, Chrome Browser, Chromium,
22          Chrome OS or Chromium OS, (b) is a fork of the foregoing, or (c) includes the Linux
              Kernel and one or more of the following elements; (i) Java platform software, in each
23          case (a), (b), and (c), including only software components available at
              http://source.android.com or http://chromium.org (or successor websites) or their
24          substantial equivalents or forks thereof.

25   *Id.*  Hon Hai does not specifically point to anything in this definition that "is so uncertain and

26   indefinite that the intention of the parties in material particulars cannot be ascertained." *Ladas*, 19

27                                                           36

28   Case No. 19-CV-01279-LHK
     ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
     PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
     PREJUDICE

1    Cal. App. 4th at 770.

2         The Court therefore GRANTS Microsoft's motion to strike Hon Hai's ninth affirmative

3    defense for unenforceability by ambiguity as it relates to whether the PLA is ambiguous as to what

4    licensed products are covered under the Android/Chrome Platform.

5         When Hon Hai requested leave to amend its Answer to add affirmative defenses of

6    unenforceability by reason of ambiguity and patent misuse, Microsoft argued that Hon Hai's

7    motion for leave to amend was futile.  When the Court granted Hon Hai leave to amend its

8    Answer, the Court stated that it was sympathetic to Microsoft's arguments that Hon Hai's

9    affirmative defenses were legally insufficient and that "these new allegations are not necessarily

10   pled in a manner sufficient to withstand a motion to dismiss or strike."  ECF No. 148 at 28, 30.

11   Hon Hai had the opportunity to add additional allegations to its unenforceability by ambiguity

12   affirmative defense in response to the Court's admonition.  Indeed, Hon Hai's filed Amended

13   Answer differs substantially from the one Hon Hai proposed and attached to its motion for leave

14   to amend its Answer.  *Compare* ECF No. 72-1 (proposed amended answer attached to motion for

15   leave to file amended answer), *with* ECF No. 190 (Amended Answer).  Nonetheless, even with the

16   Court's admonition and the opportunity to add additional allegations, Hon Hai failed to plead

17   sufficient factual material to support its unenforceability by ambiguity affirmative defense.

18        Courts are justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure

19   deficiencies by amendments previously allowed," *Carvalho*, 629 F.3d at 892, and a "district

20   court's discretion to deny leave to amend is particularly broad where plaintiff has previously

21   amended the complaint," *Cafasso*, 637 F.3d at 1058.  Accordingly, the Court GRANTS with

22   prejudice Microsoft's motion to strike Hon Hai's ninth affirmative defense for unenforceability by

23   ambiguity as it relates to whether the PLA is ambiguous as to what licensed products are covered

24   under the Android/Chrome Platform.

25        The same is not true, however, of Hon Hai's second set of allegations regarding what

26   patents are included under "Covered Patents."  Hon Hai alleges that the definition of "Covered

27                                                    37

28   Case No. 19-CV-01279-LHK
     ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
     PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
     PREJUDICE

United States District Court
Northern District of California

Patents" in the PLA is impermissibly vague because "it identifies all Microsoft patents except for those excluded under two URLs owned by Microsoft." Amended Answer ¶ 74. "However[,] neither of those URLs identified any patents by patent number such that Hon Hai and Microsoft could agree on which patents were included and which were excluded from the license. Further, Microsoft deleted the web pages located at these URLs around the time the parties signed the PLA, further obscuring the precise scope of coverage." *Id.*

Unfortunately, Microsoft's motion to strike does not address the specifics these allegations. Mot. at 19. Instead, Microsoft simply states that "it is feasible to interpret the License Agreement" and that terms such as "'Covered Patents' requires ordinary contract construction and provide no basis for vitiating the agreement." *Id.* (citation omitted). However, taking Hon Hai's allegations as true and drawing all reasonable inferences in Hon Hai's favor as the Court must on a motion to dismiss, *Manzarek*, 519 F.3d at 1031, the Court concludes that Hon Hai has adequately alleged an affirmative defense for unenforceability by ambiguity. Specifically, taking Hon Hai's allegations at face value, Hon Hai adequately pleads that it did not know which patents were included or excluded under the PLA, and therefore, what patents and products Hon Hai agreed to license from Microsoft may be indefinite and uncertain.

The Court again reiterates that it is sympathetic to Microsoft's argument. California "law does not favor but leans against the destruction of contracts because of uncertainty; and it will, if feasible, so construe agreements as to carry into effect the reasonable intentions of the parties if they can be ascertained." *Patel*, 45 Cal. 4th at 348 (quotation marks omitted). Moreover, the Court notes that it is extremely skeptical that Hon Hai and Microsoft never agreed to which patents were covered under the PLA. As the Court noted above, Hon Hai is a sophisticated corporation in the electronics industry and was represented by experienced outside counsel during its negotiations with Microsoft. Hon Hai's contention that it obligated itself to pay royalties on unknown patents strains credulity. Indeed, extrinsic evidence not evident on the face of Hon Hai's Amended Answer will likely demonstrate that the parties knew what patents and products were

38

Case No. 19-CV-01279-LHK
ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH PREJUDICE

United States District Court
Northern District of California

within the scope of the PLA.

Nonetheless, at this stage of the proceedings, based on Hon Hai's allegations alone and the arguments offered in the motion, Microsoft has failed to establish that its motion to strike Hon Hai's ninth affirmative defense should be granted.  Accordingly, the Court DENIES Microsoft's motion to strike Hon Hai's ninth affirmative defense for unenforceabiliy by ambiguity as it relates to what patents were included under "Covered Patents."  Therefore, the Court GRANTS in part with prejudice and DENIES in part Microsoft's motion to strike Hon Hai's ninth affirmative defense for unenforceability by ambiguity.

### 7.  The Court Strikes Hon Hai's Tenth Affirmative Defense for Patent Misuse With Prejudice

Hon Hai's tenth and final affirmative defense is for patent misuse.  Amended Answer ¶¶ 76–84.  Microsoft argues that the Court should strike Hon Hai's tenth affirmative defense for patent misuse.  "Patent misuse is an affirmative defense to an accusation of patent infringement, the successful assertion of which 'requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997) (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986)).  "The courts have identified certain specific practices as constituting *per se* patent misuse, including so-called 'tying' arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good, and arrangements in which a patentee effectively extends the terms of its patent by requiring post-expiration royalties." *Id.* at 869 (quotation marks and citations omitted).  Hon Hai does not contend that any of Microsoft's practices constitute *per se* patent misuse.

Additionally, "Congress . . . has established that other specific practices may not support a finding of patent misuse," *id.* (citing 35 U.S.C. § 271(d)), and here, Microsoft does not argue that Hon Hai's patent misuse affirmative defense is precluded by 35 U.S.C. § 271(d).  In these types of situations, "[w]hen a practice alleged to constitute patent misuse is neither *per se* patent misuse

39

United States District Court
Northern District of California

1  nor specifically excluded from a misuse analysis by § 271(d), a court must determine if the

2  practice is reasonably within the patent grant, *i.e.*, that it relates to subject matter within the scope

3  of the patent claims." *Id.* (quotation marks and citation omitted).

4         For such an affirmative defense for patent misuse to survive, a "defendant must plead more

5  than a conclusory allegation of patent misuse in order to provide fair notice of the nature of the

6  defense." *Raines v. Switch Mfg.*, No. C-96-2648 DLJ, 1997 WL 578547, at *4 (N.D. Cal. July 28,

7  1997). "Defendant must state how plaintiff has attempted to overbroadly and impermissibly

8  construe its patent such as to cause an anticompetitive effect, and defendant must provide some

9  factual basis for the allegation that plaintiff knew the patent was invalid or unenforceable . . . ."

10 *Id.*

11        Here, Hon Hai plainly fails to meet this standard. Hon Hai conclusorily states that

12 "Microsoft misuses its patents to expand the geographic scope of its patents beyond the United

13 States." Amended Answer ¶ 81. Hon Hai proffers but one country, Singapore, as an "example" of

14 where "Microsoft has far fewer and far less valuable patents," and where Hon Hai "does not need"

15 an Android patent. *Id.* Hon Hai claims that Hon Hai was nonetheless forced to purchase a

16 worldwide license, which ostensibly includes a license in Singapore.

17        To start, it is altogether unclear why Hon Hai's example of Singapore has any relevance to

18 the instant case when the gravamen of Hon Hai's allegations relate to China. *See, generally, id.*

19 ¶ 100 ("Hon Hai explained that, unlike Microsoft, Hon Hai and its subsidiaries lacked the leverage

20 to get most of their brand name customers—especially in China—to bear the cost of the royalties

21 demanded by Microsoft . . . ."). Hon Hai includes no allegations regarding patent misuse as it

22 relates to China.

23        In any event, Hon Hai's affirmative defense for patent misuse does not provide any

24 information regarding whether Microsoft's "practice is reasonably within the patent grant, *i.e.*, that

25 it relates to subject matter within the scope of the patent claims." *Virginia Panel Corp.*, 133 F.3d

26 at 869 (quotation marks and citation omitted). Hon Hai merely provides conclusory allegations

40

1    that Microsoft "lacked extra-territorial patent coverage" without providing additional allegations

2    supporting this conclusion.

3            Furthermore, a "defendant must provide some factual basis for the allegation that plaintiff

4    knew the patent was invalid or unenforceable." *Raines*, 1997 WL 578547, at *4. Here, Hon Hai

5    does the exact opposite by conceding that "Microsoft may have believed that it had patents

6    covering the 2013 versions of the Android/Chrome Platform (at the time the parties entered the

7    PLA)." Amended Answer ¶ 82. Hon Hai does allege that Microsoft could not have known with

8    certainty "that any of its patents would cover future versions of the Android/Chrome Platform,"

9    *id.*, but this is not an "allegation that plaintiff knew the patent was invalid or unenforceable."

10   *Raines*, 1997 WL 578547, at *4.

11           Finally, Microsoft correctly notes that courts have consistently approved the use of

12   worldwide patent licensing agreements even in the face of patent misuse affirmative defenses. For

13   example, in *Eastman Kodak Co. v. Asia Optical Co., Inc*., the court noted that in the context of

14   patent licensing agreements, "'if convenience of the parties rather than patent power dictates a

15   total sales royalty provision, there are no misuse of the patents and no forbidden conditions

16   attached to the license.'" *Eastman Kodak Co. v. Asia Optical Co.*, No. 11-CIV-6036-DLC, 2012

17   WL 917393, at *8 (S.D.N.Y. Mar. 16, 2012), *aff'd* 518 Fed. App'x 23 (2d Cir. 2013) (quoting

18   *Engel Indus., Inc. v. Lockformer Co.*, 96 F.2d 1398, 1408 (Fed. Cir. 1996)) (internal alterations

19   omitted). "'[T]he voluntariness of the licensee's agreement to the royalty provisions is a key

20   consideration' in determining whether a total-sales royalty provision resulted from the patentee's

21   economic coercion, constituting patent misuse, or whether the parties agreed to the terms based on

22   mutual convenience." *Id.* (quoting *Engel*, 96 F.3d at 1408).

23           In that case, because a provision in the relevant patent licensing agreement "specifically

24   state[d] that the parties agree to royalties . . . for their 'mutual convenience,' citing the

25   'administrative burden and cost of determining' what constitutes 'Licensed Product[s],'" the court

26   concluded that "the worldwide royalties provision . . . [did] not constitute patent misuse," "[e]ven

27                                                        41

28   Case No. 19-CV-01279-LHK
     ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
     PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
     PREJUDICE

United States District Court
Northern District of California

1   assuming [Plaintiff] [did] not have relevant . . . patents in China." *Id.* at *9.

2        That same conclusion follows here.  Hon Hai attempts to distinguish the instant case from

3   *Eastman Kodak Co.* by arguing that Hon Hai did not voluntarily agree to pay royalties and was

4   instead "coerced by Microsoft to enter a worldwide license based on Microsoft's market power."

5   Opp. at 19.  The problem with Hon Hai's argument is that the PLA contains a provision strikingly

6   similar to the one in *Eastman Kodak Co.*  Specifically, Section 4.6 of the PLA states that "[t]he

7   Parties understand and agree that the Device Fees are reduced fees applicable to worldwide Sales

8   that were chosen for the mutual convenience of the Parties and convenience of accounting."  PLA

9   § 4.6.  As a result, the PLA itself notes that Hon Hai agreed to a worldwide license for reasons of

10  "mutual convenience," which provides an additional reason that justifies striking Hon Hai's patent

11  misuse affirmative defense.  *See Eastman Kodak Co.*, 2012 WL 917393, at *8–9.

12       Accordingly, the Court GRANTS Microsoft's motion to strike Hon Hai's tenth affirmative

13  defense for patent misuse.  When Hon Hai requested leave to amend its Answer to add affirmative

14  defenses of unenforceability by reason of ambiguity and patent misuse, Microsoft argued that Hon

15  Hai's motion for leave to amend was futile.  When the Court granted Hon Hai leave to amend its

16  Answer, the Court stated that it was sympathetic to Microsoft's arguments that Hon Hai's

17  affirmative defenses were legally insufficient and that "these new allegations are not necessarily

18  pled in a manner sufficient to withstand a motion to dismiss or strike."  ECF No. 148 at 28, 30.

19  Hon Hai had the opportunity to add additional allegations to its patent misuse affirmative defense

20  in response to the Court's admonition.  Indeed, Hon Hai's filed Amended Answer differs

21  substantially from the one Hon Hai proposed and attached to its motion for leave to amend its

22  Answer.  *Compare* ECF No. 72-1 (proposed amended answer attached to motion for leave to file

23  amended answer), *with* ECF No. 190 (Amended Answer).  Nonetheless, even with the Court's

24  admonition and the opportunity to add additional allegations, Hon Hai failed to plead sufficient

25  factual material to support its patent misuse affirmative defense.

26       Courts are justified in denying leave to amend when a plaintiff "repeated[ly] fail[s] to cure

27  42

28  Case No. 19-CV-01279-LHK
ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
PREJUDICE

1   deficiencies by amendments previously allowed," *Carvalho*, 629 F.3d at 892, and a "district

2   court's discretion to deny leave to amend is particularly broad where plaintiff has previously

3   amended the complaint," *Cafasso*, 637 F.3d at 1058.  Accordingly, the Court GRANTS

4   Microsoft's motion to strike Hon Hai's tenth affirmative defense for patent misuse with prejudice.

5   **IV.    CONCLUSION**

6          For the foregoing reasons, the Court issues the following rulings:

7   •   The Court GRANTS with prejudice Microsoft's motion to dismiss Hon Hai's

8       counterclaims.

9   •   The Court GRANTS with prejudice Microsoft's motion to strike Hon Hai's following

10      affirmative defenses:

11          o   Failure to mitigate (first affirmative defense);

12          o   Breach of the implied covenant of good faith and fair dealing (second affirmative

13              defense);

14          o   Failure of consideration (third affirmative defense);

15          o   Fraudulent inducement (fifth affirmative defense);

16          o   Mistake of fact (sixth affirmative defense);

17          o   "Setoff" (eight affirmative defense); and

18          o   Patent misuse (tenth affirmative defense).

19  •    The Court GRANTS with prejudice Microsoft's motion to strike Hon Hai's ninth

20       affirmative defense for unenforceability by ambiguity as to Hon Hai's claim that the PLA

21       is ambiguous as to what licensed products are covered under the "Android/Chrome

22       Platform."  The Court DENIES Microsoft's motion to strike Hon Hai's ninth affirmative

23       defense for unenforceability by ambiguity as to Hon Hai's claim that the Patent License

24       Agreement is ambiguous as to what patents are included under "Covered Patents."

25  •    The Court DENIES Microsoft's motion to strike Hon Hai's fourth affirmative defense for

26       frustration of performance.

27
                                            43

United States District Court
Northern District of California

United States District Court
Northern District of California

1   **IT IS SO ORDERED.**

2   Dated: August 31, 2020

3                                          _Lucy H. Koh_____

4                                          LUCY H. KOH
                                           United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                          44

28  Case No. 19-CV-01279-LHK
    ORDER GRANTING MOTION TO DISMISS COUNTERCLAIMS WITH PREJUDICE AND GRANTING IN
    PART AND DENYING IN PART MOTION TO STRIKE HON HAI'S AFFIRMATIVE DEFENSES WITH
    PREJUDICE